## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRANDI JAMISON, individually and on behalf of all others similarly situated, | ) Case No.: _____ <br> ) <br> ) **CLASS ACTION COMPLAINT** |
| Plaintiff, | ) <br> ) **DEMAND FOR JURY TRIAL** |
| v. | ) <br> ) |
| POLYGROUP NORTH AMERICA, INC. and POLYGROUP SERVICES N.A. INC., | ) <br> ) <br> ) |
| Defendants. | ) |

Plaintiff Brandi Jamison ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants Polygroup North America, Inc. and Polygroup Services N.A. Inc. (collectively, "Polygroup" or "Defendants") and alleges the following based on personal knowledge as to herself, and as to all other matters, upon information and belief, including investigation conducted by their attorneys:

## NATURE OF THE ACTION

1.      This proposed class action involves hundreds of thousands of dangerously defective above-ground pools designed, manufactured, marketed and sold by Defendants, Polygroup (hereinafter, the "Pool(s)"[1]).

2.      Polygroup, a self-proclaimed "trusted authority and world leader in best-in-class[2]" consumer products, marketed and sold the Pools as safe for families and children. In actuality, the

---

[1] The Pools include Polygroup-branded pools 48 inches and taller, with round and oval frames, models: *Summer Waves* (2015-2025), *Summer Escapes* (2006-2015), *Funsicle* (2023-2025), *Sand n Sun* (2008-2011), and *Blue Wave* (2014-2025), sold between 2006 and June 2025 under the Polygroup name. *See* CPSC Press Release. Plaintiff reserves the right to amend this Complaint to include all products arising from the discovery.

[2] *See* https://www.polygroup.com/ (last accessed August 25, 2025).

1

Pools are dangerously defective and pose such a significant risk of drowning for children that Polygroup was forced to recall the Pools.

3.     The safety of children, an incredibly vulnerable population, is paramount. A company, such as Polygroup, that touts itself as a trusted consumer product industry leader that sells products for use by families and their children, has a legal obligation to honestly and adequately represent the safety of their products and to provide adequate warnings about safety hazards. As shown herein, Polygroup—before and after multiple drowning deaths in pools with the same or similar design as the Pools—wholly failed to deliver safe Pools to Plaintiff and Class Members, failed to provide adequate warnings about safety hazards, and offered an inadequate and ineffective recall that fails to provide Plaintiff and Class Members with proper relief.[3]

4.     This action arises from the dangerous design and prolonged concealment of a known defect in certain Polygroup-branded Pools, and a belated, inefficient and inadequate recall of the Pools. The Pools were dangerously defective at the point of purchase, which was unknown to reasonable consumers, but known to Polygroup. Now, following multiple child deaths, Polygroup concedes through its deficient Recall Notice that the Pools pose a drowning hazard and cannot be safely used as sold.



What exactly is the issue?                                              −

Affected products have compression straps that wrap around the pool on the outside of the supporting poles. A child may use the compression straps as a foothold to gain access to the pool, posing a drowning hazard.

[4]

---

[3] *See* Recall Notice ("Recall Notice"), https://polygrouprecall.com/faq (last accessed August 22, 2025).

[4] *See Id.*

5.     As Polygroup admits in the Recall Notice, Polygroup designed, manufactured, marketed, distributed, and sold the Pools with compression straps located external to the Pools' vertical support poles (hereinafter, the "Defect")—design elements that created an accessible foothold for children to climb into the Pool, posing a drowning hazard for vulnerable children.[5]



*Image 1*[6]

6.     On July 21, 2025, the CPSC, together with Polygroup and other manufacturers, announced ("CPSC Press Release") the voluntary recall of approximately 5 million above-ground pools sold at major retailers nationwide since 2002 that resulted in at least nine deaths of children aged 22 months and 3 years old between the years 2007 and 2022 ("Recall").[7]

---

[5] *Id.*

[6] U.S. Consumer Product Safety Commission ("CPSC") example of a child using the compression strap to stand on the Pool, illustrating the Defect and associated hazard. https://www.cpsc.gov/Recalls/2025/Polygroup-Intex-and-Polygroup-Recall-Certain-Above-Ground-Pools-48-Inches-and-Taller-Due-to-Drowning-Hazard-Nine-Deaths-Reported-Five-Million-Pools-Sold-Since-2002.

[7] *See* CPSC Press Release, https://www.cpsc.gov/Recalls/2025/Polygroup-and-other-manufacturers-recall-pools-after-drownings (last accessed July 24, 2025); *see also* Houston Chronicle – *5 million above ground pools recalled after 9 children drowned in 15 years, US agency*

7.     The CPSC's Acting Chairman Peter A. Feldmann and Commissioner Douglas Dziak described the Recall as "long-overdue" and stated the Defect was "a textbook example of a dangerous design flaw, plainly visible and clearly hazardous."[8] However, the Recall is not a form of adjudication and, as alleged herein, was at all times, and continues to be, inadequate and ineffective.

8.     The CPSC Press Release and the Recall Notice evidence that the Defect was not inherent or unavoidable since other pool models not subject to the Recall contained an internal compression strap that cannot be used as a foothold and pose a drowning hazard for children.[9]



*Image 2*[10]

*reports* (published on July 21, 2025), https://www.houstonchronicle.com/news/houston-texas/trending/article/millions-above-ground-pools-recalled-9-children-20778185.php (last accessed August 22, 2025).

[8] *See Statement of Acting Chairman Peter A. Feldman and Commissioner Douglas Dziak: Deadly Design in Chinese Pools Triggers Massive Recall; CPSC Leaders Cite Years of Inaction* (published on July 21, 2025), https://www.cpsc.gov/About-CPSC/Commissioner/Douglas-Dziak-Peter-A-Feldman/Statement/Statement-of-Acting-Chairman-Peter-A-Feldman-and-Commissioner-Douglas-Dziak-Deadly-Design-in-Chinese-Pools-Triggers-Massive-Recall-CPSC-Leaders-Cite-Years-of-Inaction (last accessed July 24, 2025).

[9] *See* CPSC Press Release; Polygroup Recall Notice.

[10] Polygroup illustration of the recalled versus the non-recalled pool models. https://polygrouprecall.com/.

4

9.    Per the Recall Notice, customers with and without children were instructed to identify if their pool was part of the Recall and submit the model number through the website for approval. If confirmed, the customer was instructed to order a "repair kit" on the next screen.[11]

10.    The repair kit consists of a mere rope that allegedly substitutes the compression straps to maintain the Pool's structural integrity, along with a "tightener" and plastic "rope holders" that are designed to be placed at the base of each leg of the Pool frame.[12] According to the Recall Notice, "[t]he strap maintains structural integrity and helps the legs of the [P]ool remain upright. The strap should only be cut after the repair kit is installed."[13]

11.    Installation of the repair kit requires a 10-step process.[14] As Polygroup admits in the Recall Notice, it does not have technicians available to assist with installation of the repair kit, despite the required multi-step installation process.



*Image 3*[15]

---

[11] *See* Polygroup Notice Recall; *see also* https://polygrouprecall.com/faq (last accessed August 22, 2025).

[12] *Id.*

[13] *Id.*

[14] *See* Polygroup instructional video, https://polygrouprecall.com/repair_kit (last accessed August 22, 2025).

[15] Image taken from Polygroup's Repair Kit Instructional Video, demonstrating the placement of the rope that will allegedly substitute the external compression straps to maintain the Pool's structural integrity. https://youtu.be/DFXLWCJKEFs (last accessed August 22, 2025).



*Image 4*[16]

12. Notably, ***Polygroup fails to recall the entire Pool***, ***or provide any monetary remedy*** to Plaintiff and Class Members who purchased the defective Pools. Instead, Polygroup only offers an inadequate repair kit without the assistance of a qualified technician. Even if customers express concerns over repairing the Pools themselves, Polygroup denies on-site repairs, exclusively offering "further guidance" through a call center or email.[17] With limited instruction and no professional assistance, a consumer must thread a rope behind the vertical legs of the Pool, through a tightener and plastic rope holders at the base of the Pool legs. While Polygroup maintains that the rope is a convenient and easy-to-apply solution that ensures the structural integrity of the Pool, this representation is a farce. Ultraviolet rays from the sun, particularly direct sunlight to which the rope will be exposed, can cause a breakdown of the fibers that make up the rope, which

---

[16] Polygroup Repair Kit guide illustrations, https://polygrouprecall.com/repair_kit.

[17] *See* https://polygrouprecall.com/faq (last accessed August 22, 2025).

6

can weaken the fibers over time, making them prone to fraying. In addition, the rope is likely to loosen over time, which requires constant tensioning that may result in premature failure, which is not disclosed to consumers in the Recall Notice or otherwise.

13. Moreover, research shows that response rates are lower for recalls that require complicated steps and fail to provide consumers with a full refund.[18]

14. The inadequacy of the repair kit is further evidenced by the other above-ground pools sold by Polygroup. These pools continue to include the strap wrapped close to the midsection of the pool behind the support poles, which prevents the pool legs from sliding, and not a rope on the ground that can fray and requires constant attention, confirming that the rope is not an adequate substitute for maintaining the structural integrity of the Pool. Instead, the rope is a cheap way for Polygroup to avoid replacing the Pools or providing refunds, costing Polygroup just a few dollars rather than impacting Polygroup's significant revenue gained at the expense of consumers.[19]

15. Moreover, the Recall was announced far too late. The CPSC confirmed that the Pools' Defect and associated risks were known since 2007. As detailed in the CPSC Press Release:

> CPSC believes that nine children between the ages of 22 months and 3 years old have drowned after gaining access to the pools via the footholds. The incidents occurred in California, Texas, Florida, Michigan, Wisconsin and Missouri between 2007 and 2022.

> CPSC is also aware of three other incidents in 2011 and 2012 where children who gained access to the recalled pools were reported to have previously used the compression strap to gain entry to the pool.[20]

---

[18] RECALL EFFECTIVENESS RESEARCH: A REVIEW AND SUMMARY OF THE LITERATURE ON CONSUMER MOTIVATION AND BEHAVIOR, (July 2003), CPSC.gov, https://www.cpsc.gov/s3fs-public/pdfs/foia_RecallEffectiveness.pdf, at page 25 (last accessed August 25, 2025).

[19] Plaintiff reserves the right to amend the complaint pertaining to the inadequacy of the repair kit following expert discovery and disclosures.

[20] *See* CPSC Press Release.

16.     Prior to the Recall and despite the serious dangers to child safety presented by the Pools, Polygroup intentionally marketed and sold the Pools as safe for families and children and failed to effectively disclose to consumers that the Pools posed a drowning hazard for children.

17.     Polygroup knew, or should have known, of these incidents, yet it did nothing. Indeed, despite reported incidents dating back to 2007 in pools with the same Defect, Polygroup failed to issue any warning or make design changes to remedy the Defect and continued profiting from its sales throughout the United States.

18.     The Defect existed at the point of purchase. Due to Polygroup's marketing of the Pools, along with Polygroup's failure to disclose to consumers at the time of purchase that the Pools contained the Defect, Plaintiff and Class Members trusted Polygroup and its representations that the Pools would be safe to use as intended and paid a premium for that important quality. Additionally, despite the Recall, defects in the Pool persist, rendering it unfit and worth less than advertised and warranted.

19.     The existence of the Defect is a material fact that reasonable consumers, including Plaintiff and Class Members, would have considered when deciding whether to purchase the Pools. Before purchasing the Pools, Plaintiff and Class Members did not know the Pools had the Defect and that using the Pools for their intended and foreseeable purpose would place children at risk of drowning.

20.     Every Pool suffers from the uniform Defect, which, unknown to consumers but known to Polygroup, exists at the point of purchase and poses an unreasonable safety hazard to children. As such, Plaintiff and all reasonable consumers are victims of the unfair bargaining power between them and Polygroup based on Polygroup's superior industry knowledge.

21.     The Pools were sold at stores nationwide, including Walmart, Lowe's, Kmart, Toys "R" Us, Sam's Club, The Home Depot, Big Lots, and Costco.[21] They were also sold on Polygroup's website and other internet platforms, including Amazon.com, Wayfair.com, Walmart.com and, the Funsicle website.[22]

22.     Polygroup made significant revenue from the sale of the Pools, which were sold nationwide for approximately $400.00 to over $1,000.00.[23] Polygroup sold at least 912,000 Pools subject to the Recall across the United States and Canada.[24] Using an average of these figures, Polygroup's revenue from the sale of the Pools was more than $600 million.

23.     Polygroup was able to charge this premium price for the Pools due to its marketing, and its failure to disclose to consumers that the Pools contain the Defect, because Polygroup knew that safety and suitability of the Pools for use (which naturally includes structural integrity and lack of a risk of harm or death to themselves and their children) are paramount for consumers.

24.     Further, Polygroup is well aware that if it truthfully informed consumers of the dangers of the Pools' Defect, it would significantly impact its sales as consumers would have made different purchasing decisions.

25.     No reasonable consumer would have purchased the Pools on the same terms or conditions if they knew of the Defect. Polygroup chose to put consumers' and children's lives at risk to sell more Pools and now, after the inevitable deaths have been brought to light, Polygroup still opted for decisions that put profit over people. Despite its belated acknowledgment of the

---

[21] *Id.*

[22] *Id.*

[23] *See* CPSC Press Release.

[24] *See* Polygroup Recall Notice.

Defect, Polygroup still has not provided a meaningful remedy to consumers, including Plaintiff and Class Members.

26.     Had Plaintiff and Class Members known about the Defect at the time of purchase and the associated fatal risks caused by the Defect, they would not have purchased the Pools or would have paid less for them.

27.     Plaintiff, on behalf of herself and Class Members, seeks damages and all other relief available under law and equity from Polygroup, including punitive damages for Polygroup's appalling and unconscionable misconduct. Plaintiff also seeks classwide injunctive relief, including: (i) a state-of-the-art notice program for the wide dissemination of a factually accurate recall notice for the Pool; (ii) the implementation of a corrective advertising campaign to better alert consumers to the dangers of the Defect; (iii) an offer to replace the Pools with a reasonable and safe product; and/or (iv) a full refund for the purchase price of the Pools. Plaintiff provided Polygroup with notice of the breach of express warranty via service upon Polygroup's registered agents of service on August 25, 2025.

28.     This action seeks to hold Polygroup accountable for its conscious decision to use a defective design, conceal the known Defect and for its insufficient recall remedy.

## PARTIES

### I.    Plaintiff Brandi Jamison

29.     At all relevant times, Plaintiff Jamison was and is a resident and citizen of Rockford, Illinois, who purchased a Polygroup Funsicle 22ft x 52ft Round Oasis Above Ground Pool, with SkimmperPlus Filter Pup and Ladder above-ground Pool on June 22, 2023, from Amazon.com for $971.99. The Pool purchased by Plaintiff Jamison is subject to the Recall.

30. Plaintiff Jamison used the Pool as instructed, including removing the ladder when the Pool was not in use, in order to maintain a safe environment for her family and others. Plaintiff Jamison was unaware of the Defect until she learned of the Recall on or around July 22, 2025.

31. Upon receipt of the repair kit, Plaintiff Jamison attempted to install the rope but was unable to complete the installation despite reviewing the repair kit video and instructions, which were confusing.

32. Had Plaintiff Jamison known of the Defect and associated risks, she would not have purchased the Pool or would have paid less for it.

33. Plaintiff Jamison is unable to safely use and maintain her Pool because the repair kit is ineffective and inadequate, and she was unable to install it due to the confusing nature of the repair kit and instructions. However, had Plaintiff Jamison been able to install the repair kit, it would have remained an ineffective and insufficient remedy because, among other things: (1) the rope itself poses further risks to consumers and their children; (2) the rope, by its nature and by its positioning in relation to the Pool and the Pool legs, is wholly inadequate to maintain the structural integrity of the Pool; and (3) the Recall fails to offer any monetary relief to Plaintiff and Class Members who purchased the defective Pools.

II. **Defendant Polygroup North America, Inc.**

34. Defendant Polygroup North America, Inc. is a Delaware corporation with a principal place of business in Bentonville, Arkansas.

35. Upon belief or information, until July 2025, Defendant Polygroup North America, Inc. directly or through third-party entities, designed, manufactured, distributed, marketed, advertised and sold at least 912,000 Pools in the United States and Canada, subject to the Recall.

36.     The Pools were sold at stores nationwide, including Walmart, Lowe's, Kmart, Toys "R" Us, Sam's Club, The Home Depot, Big Lots, and Costco. They were also sold on Polygroup's website and other internet platforms, including Amazon.com, Wayfair.com, Walmart.com, and the Funsicle website.

### III.    **Defendant Polygroup Services N.A. Inc.**

37.     Defendant Polygroup Services N.A. Inc. is a Delaware corporation with a principal place of business in Bentonville, Arkansas.

38.     Upon belief or information, until July 2025, Defendant Polygroup Services N.A. Inc. directly or through third-party entities, designed, manufactured, distributed, marketed, advertised, and sold at least 912,000 Pools in the United States and Canada subject to the Recall.

39.     The Pools were sold at stores nationwide, including Walmart, Lowe's, Kmart, Toys "R" Us, Sam's Club, The Home Depot, Big Lots ,and Costco. They were also sold on Polygroup's website and other internet platforms, including Amazon.com, Wayfair.com, Walmart.com, and the Funsicle website.

### JURISDICTION AND VENUE

40.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act because: (1) there are 100 or more putative Class Members; (2) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (3) there is diversity because Plaintiff and at least one Defendant are citizens of different states.

41.     This Court has personal jurisdiction over Defendants because Defendants do substantial business in this State and within this District, receive substantial compensation and profits from the marketing, distribution, and sale of the Pools in this District, and engaged in the unlawful practices described in this Complaint within this District.

42.     Under 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, as Defendants regularly transact business in this District, and Defendants have intentionally availed themselves of the laws and markets within this District.

43.     Venue is also proper because Plaintiff is a resident and citizen of this District.

## COMMON FACTUAL ALLEGATIONS

I.     **Polygroup Markets its Pools and Itself as Industry Leaders in Safety, Contrary to Its Actual Business Practices**

44.     Polygroup represents itself as a global, diversified leading manufacturer of above-ground swimming pools that designs, manufactures, markets, distributes, and sells outdoor recreation products.[25] Since its founding over 30 years ago, Polygroup emphasizes its manufacturing and design of pool products, presenting itself as a trusted brand in pool safety and quality.[26]

45.     Polygroup is a self-proclaimed global consumer goods leader that is "the most trusted authority and world leader in best-in-class, imaginative, trend-driven, and tech-smart products that make lives more fun" with an award-winning product portfolio of above-ground pools sold through mass retailers across 50+ countries.[27]

46.     In an effort to ensure consumers of the quality and safety of its products, including the Pools, Polygroup proudly markets: "[w]e have been able to ensure quality by owning our entire process, from start to finish;" and "[w]ith a focus on lean manufacturing, we've been able to pass

---

[25] *See* Polygroup site - About Us, https://polygroupstore.com/about-us/?srsltid=AfmBOorK4m0Or35YfiaaXddXgDKjF3mDZ5y7wDuPu5ybJAEz9eu0wGMA&utm (last accessed August 22, 2025).

[26] *See* Polygroup site, https://www.polygroup.com/ (last accessed August 22, 2025).

[27] *See* Polygroup site, https://www.polygroup.com/ourstory (last accessed August 22, 2025).

down savings while continuing our tradition of creating top-level products and delivering excellent service." [28]

47.     From approximately 2006 through 2025, Polygroup manufactured and sold above-ground Pool models, including but not limited to: *Summer Waves* (2015-2025); *Summer Escapes* (2006-2015); *Funsicle* (2023-2025); *Sand n Sun* (2008-2011); and *Blue Wave* (2014-2025), which featured exterior "compression straps" or support belts designed to maintain circular Pool wall stability.[29]

48.     Polygroup marketed the Pools for the intended use of children and adults, stating, for example: "Polygroup's outdoor recreational brand, Funsicle, offers best-selling above ground pools for any space, lifestyle or family size" and "[p]remium-made and affordable products that can be enjoyed by everybody, and any body, all summer long."[30]

49.     Polygroup's marketing of the Pools explicitly highlights the Pools' safety and durability compared to others in the market, stating, for example, "[b]est-in-class pools designed for outdoor lifestyles, and **trusted** for being durable, **tested**, **reliable & safe**," "SmartConnect Pro frame: More durable and easier setup with the T-Cup Connector," and "Ultra-strong oval metal tubes - Stronger than traditional round tubes with protective matte finish."[31]

50.     Similarly, Polygroup utilizes additional safety representations in the Pools' Owner's Manuals further ensuring consumers that the safety and wellbeing of its customers and

---

[28] *See* Polygroup site, https://www.polygroup.com/factories (last accessed August 22, 2025).

[29] *See* CPSC Press Release.

[30] *See* Polygroup site, https://www.polygroup.com/ (last accessed August 22, 2025); and Funsicle site, https://funsicle.com/pages/we-are-funsicle.

[31] *Id.*; *see also* https://funsicle.com/collections/above-ground-pools (last accessed August 22, 2025) (emphasis added); https://funsicle.com/products/funsicle-14-ft-oasis-pool (last accessed August 21, 2025)

their children is of paramount concern. By way of example, the *Summer Waves* Owner's Manual has a section titled "Safety Care for Children – Drowning Risk." Shockingly however, neither this, nor any section of any Owner's Manual, gives proper warning or notice that children can use the external compression straps to access the pool. Instead, Polygroup only states the following: "[p]osition furniture (for example, tables, chairs) away from pool, so that children cannot climb on it to gain access to the pool," "[l]ocate pumps and filters in such a way that children cannot climb on them and gain access to the pool" and "[t]oys, chairs, tables, or similar objects that a young child could climb should be at least four feet (4') [121.92 cm] from the pool. The pump filter system should be positioned so as to prevent it from being used as a means of access to the pool by young children."[32] This leads reasonable consumers to believe that if they follow these instructions, any drowning hazard will be eliminated.

51.    Contrary to Polygroup's representations—promising the safety and durability of its Pools—Polygroup chose to ignore the uniform Defect present in each Pool. In doing so, Polygroup revealed that it is, in reality, committed to its own profits—not people and Defect-free Pools.

## II.    **Polygroup Knew, or Should Have Known, of the Defect**

52.    Prior to the design and introduction of the Pools into the consumer marketplace, Polygroup knew, or should have known, that the Pools had similar design elements as those of its above-ground pool competitors that reported drowning incidents beginning in 2007, also subject to the Recall. Consequently, Polygroup was aware of, or should have been aware of, the Pools' Defect. However, Polygroup continued to market, sell, and profit from the defective Pools.

---

[32] *See Summer Waves* Owner's Manual, Manual #09C3A4USA031, https://www.usermanuals.au/summer-waves/active-frame/manual?p=3 (last accessed August 22, 2025).

15

53.     At least **nine children between the ages of 22 months and 3 years** drowned in pools with the same or similar Defect to the Polygroup Pools between 2007 and 2022. These deaths occurred in six different states: California, Florida, Michigan, Missouri, Texas, and Wisconsin.[33]

54.     The CPSC also confirmed at least **three near-drowning incidents** associated with the recalled pool design in 2011 and 2012.[34]

55.     Furthermore, in January 2022, one of Polygroup's competitors, Bestway (USA), Inc., was subject to a wrongful death lawsuit resulting from a death caused by an identical Defect that was found in the Pools.[35] Notably, the Bestway (USA), Inc. pool subject to the lawsuit is also part of the Recall because it has an identical Defect to that of the Polygroup Pools subject to this action.

56.     In the Bestway (USA), Inc. lawsuit, the plaintiffs alleged that "[t]he design of the pool rendered it defective. The lack of adequate warnings accompanying the pool rendered it defective. Defendants failed in their acts and omissions related to the pool to use reasonable care to avoid injuring E. M. J. and [p]laintiffs. Defendants breached express warranties made about the pool. The defective nature of the pool and [d]efendants' negligent conduct and breach of warranties proximately caused E. M. J.'s horrific suffering and death by drowning and caused [p]laintiffs to sustain pecuniary loss, including funeral expenses and burial expenses for their daughter E. M. J., as well as loss of consortium, companionship, comfort, guidance, and counsel of their daughter E. M. J."[36]

---

[33] *Id.*

[34] *Id.*

[35] *Justice, et al. v. Bestway (USA), Inc., et al*., No. 4:22-cv-00050-AGF, ECF No. 5 (E.D. Mo. Jan. 18, 2022).

[36] *Id*. at ¶ 2.

57.     In March 2025, after a weeklong trial, the jury ruled that Bestway (USA), Inc. was liable for E.M.J.'s death, primarily due to its defective pool design and failure to provide adequate warnings about the risk. The verdict found that the 51-inch-tall pool was designed in a way that allowed toddlers to climb into it using a nylon strap wrapped around the pool's exterior and ordered Bestway (USA), Inc. to pay $25 million in damages—the very design flaw that results in the Defect and the associated risk of drowning at issue here with Polygroup's Pools.

58.     Indeed, the Defect existed throughout the 19-year span of the Pools' availability. Notably, Polygroup has access to incident data, consumer feedback, and industry standards for pool safety and design that should have led to corrective design action far earlier, and long before so many children died.[37] The fact that Polygroup sold other pool models, not subject to the Recall, that do not feature an exterior compression strap, indicates that Polygroup was well aware of a corrective and alternative design long before the Recall was issued.

59.     The known risks due to the Defect, the decades-long availability of safer designs, Polygroup's dominant position in the pool market, and the likelihood that a substantial portion of defective Pools remain in use, all support Plaintiff's allegations that Polygroup acted with knowledge of the Defect yet still represented, marketed, distributed, and sold defective Pools.

## III.     The Recall was Untimely and is Inadequate, Ineffective, Creates New Hazards, and was Designed to Fail

60.     On July 21, 2025, the CPSC announced a voluntary nationwide recall of approximately **5 million** above-ground pool units sold in the United States by Bestway, Intex, and Polygroup, which contain the identical Defect (*e.g.*, compression straps on the exterior poles of

---

[37] *Id.*

17

the above-ground pools that are 48 inches or taller, which pose a drowning hazard). Within this Recall, Polygroup sold 912,000 Pools in the United States and Canada between 2006 and 2025.

61.     However, the Recall is nothing short of perilous due to its inexcusable delay in notice and the wholly inadequate repair kit. Despite the Defect rendering the Pools unsafe and unsuitable for their intended use, the Pools remained on the market following multiple deaths and remain on the market after a weak Recall that does not provide proper remedies, includes incredibly complicated and confusing instructions, continues to put consumers and their children at risk, and was ultimately designed to fail.

62.     Despite having the capability and expertise to identify and mitigate the Defect, Polygroup failed to redesign the Pools, remove the external strap, or issue sufficient consumer warnings for over two decades. This delay contributed to the continued availability of defective Pools and the repeated loss of lives. As stated by CPSC's Acting Chairman Peter A. Feldmann and Commissioner Douglas Dziak, the Recall was "long-overdue."[38] Further, Chairman Feldmann and Commissioner Dziak of the CPSC summarized the Defect as "a textbook example of a dangerous design flaw, plainly visible and clearly hazardous."[39] Nevertheless, Polygroup prioritized profit over the integrity and safety of the Pools and pushed the Pools into the marketplace with the Defect.

63.     Polygroup's actions and priorities in delaying the Recall clearly indicate a prioritization of profit over safety of consumers and their children. Polygroup made significant

---

[38] *See Statement of Acting Chairman Peter A. Feldman and Commissioner Douglas Dziak: Deadly Design in Chinese Pools Triggers Massive Recall; CPSC Leaders Cite Years of Inaction* (published on July 21, 2025),https://www.cpsc.gov/About-CPSC/Commissioner/Douglas-Dziak-Peter-A-Feldman/Statement/Statement-of-Acting-Chairman-Peter-A-Feldman-and-Commissioner-Douglas-Dziak-Deadly-Design-in-Chinese-Pools-Triggers-Massive-Recall-CPSC-Leaders-Cite-Years-of-Inaction (last accessed July 24, 2025).

[39] *Id.*

revenue from the sale of the Pools, which were sold nationwide resulting in hundreds of millions of dollars in revenue.

64.     Further, as detailed herein, the Recall and corresponding repair kit offered to consumers is wholly inadequate and is designed to fail in that: (1) the rope, by its nature and by its positioning in relation to the Pool and the Pool legs, is wholly inadequate to maintain the structural integrity of the Pool; (2) the instructions for installing the repair kit are prohibitively confusing to reasonable consumers; (3) the Recall fails to offer any monetary relief to Plaintiff and Class Members who purchased the defective Pools; and (4) Polygroup has not removed or destroyed all defective Products available for purchase.

65.     As detailed herein, the Recall remedy is a repair kit with a rope to replace the compression strap and installation instructions. However, this purported remedy requires affirmative consumer action and creates further risks to consumers and their children.[40] Ultraviolet rays from the sun (particularly direct sunlight which these ropes are inevitably exposed) can cause a breakdown of the fiber that make up the rope, which can weaken the fibers over time and make them prone to fraying. A frayed rope can become a rough surface that can injure children's feet when stepped on or create a trip hazard.

66.     In addition, the repair entails the customer placing a piece of rope as an alleged substitute for the structural integrity capability of the compression straps. However, the rope may loosen over time, which could require constant tension adjustment, adversely impacting the structural integrity of the Pool.

67.     Although the repair kit is not an adequate substitute for a compression strap running internally to the support poles around the pool, installation of the repair kit itself is another failure

---

[40] *See* CPSC Press Release.

of the Recall. Installation of the rope requires a 10-step process.[41] As Polygroup admits in the Recall Notice, it does not have technicians available to assist with installation of the repair kit despite the required multi-step installation process. As evidenced by Plaintiff's experience, the instructions provided, Image 4, *supra*, place the onus of ensuring the structural integrity of the Pools upon the consumer in a spectacularly convoluted and intricate manner—the result of which is a very low likelihood that a reasonable consumer could properly install the repair kit as instructed.

68.      Given the confusing instructions provided to install the repair kit and the likelihood of consumers in need of support to follow the installation instructions, Polygroup knew, or should have known, that it needed to provide consumers with support in installing the repair kit. However, in continuing its pattern of prioritizing profits over the structural integrity of its Pools and the safety and wellbeing of its consumers and their children, Polygroup refuses to provide consumers with the option to schedule a technician to assist with the installation. Instead, Polygroup provides consumers with an 800 number and an email address—neither of which provide reasonable support to consumers.

69.      A study conducted by Kids in Danger found that product recalls generally have a low level of participation when the recall includes cognitive overload, requires significant time and effort, offers a repair (versus a refund which has higher participation), and when consumers are asked to repair, deconstruct, and/or physically destroy parts of the product, but to continue using them in this destructed form rather than a safe replacement product.[42]

---

[41] *See* Polygroup instructional video, https://polygrouprecall.com/repair_kit (last accessed August 22, 2025).

[42] New KID Report and Consumer Survey Reveal Need for Improvements in Children's Product Recall Process, Kids In Danger, Press Release, (September 12, 2024) https://kidsindanger.org/wpcontent/uploads/2024/09/Recall-Effectiveness-and-Survey-Report-

70.     As noted by a study prepared for the CPSC, response rates for recalls are significantly reduced when it involves cognitive or task overload, and when they do not adequately motivate consumers to participate.[43]

71.     Thus, the Polygroup's design of the Recall instructions, as well as its choice to require the surgical removal of parts of the Pools by their consumers—who trusted Polygroup to sell them a Product safe and suitable for their and their children's use—renders the Recall's ability to inspire participation a dismal prospect at best. Furthermore, Polygroup's failure to offer consumers with a monetary refund further culls the Recall's effectiveness resulting in a Recall that is inherently stunted and designed to fail.

72.     Furthermore, Polygroup has not removed or destroyed all defective Pools available for purchase, exposing unknowing families and their children to the Defect. Below is an example of how some websites still advertise and sell the Recalled Pools with the Defect:

---

PressRelease.pdf#:~:text=%5BChicago%2C%20IL%5D%20%E2%80%93%20Kids%20In%20Dange r%20%28KID%29%2C%20a,new%20reports%20looking%20to%20better%20assess%20recall %20effectiveness          and          htttps://kidsindanger.org/wp-content/uploads/2024/09/KID-ConsumerRecall-Survey-Report.pdf (last accessed August 22, 2025).

[43] RECALL EFFECTIVENESS RESEARCH: A REVIEW AND SUMMARY OF THE LITERATURE ON CONSUMER MOTIVATION AND BEHAVIOR, (July 2003), CPSC.gov, https://www.cpsc.gov/s3fs-public/pdfs/foia_RecallEffectiveness.pdf, at page 25 (last accessed August 22, 2025).



*Image 5*[44]

73.     Polygroup intentionally chose the route more profitable for its business and assumingly less damaging to its branding and purported commitment to safe and durable Pools.

74.     Further, it is well known that product recalls generally have a low level of participation when consumers are not provided with a full remedy:

> Generally, firms should offer full remedy to achieve high recall effectiveness. While this seems like an obvious suggestion, our data shows that firms do not always follow that suggestion, even when the product and defect are the same. This is particularly puzzling as research also indicates that offering full remedy is the

---

[44] The Funsicle website was selling a round, 48in. Funsicle above-ground pool for $649.99. As shown in the image, the compression straps are external to the vertical poles on the pool wall, displaying the hazard. The arrows in the image were included to demonstrate the Defect. https://funsicle.com/products/funsicle-14-ft-oasis-designer-pool-double-rattan (last accessed August 22, 2025).

dominant strategy to preserve customer satisfaction after a product recall (Mafael *et al*., 2022) and protects firm reputation after the recall (Germann *et al*., 2014).[45]

75.     Despite the knowledge that full remedies lead to higher recall rates, and a serious risk the Defect presents and the additional risks the repair kit presents, Polygroup offered a minimal remedy in its Recall, ensuring lower participation rates that will put more consumers and their children at risk as the Pools remain at homes throughout the country.

## IV.     The Unconscionability and Failure of Essential Purpose of the Warranties

76.     Polygroup expressly warranted, via Owner's Manuals, advertisements, pamphlets, brochures, circulars, samples, and models, that the Pools are fit for the ordinary purpose for which they are sold.

77.     Prior to the point of sale, Polygroup also warrants that its Pools are safe and durable, as evidenced by its advertisements and warning in the Owner's Manuals regarding the removal of the ladder and objects adjacent to the Pools when not in use.

78.     Moreover, Polygroup's Pools are covered by the warranty of merchantability, which guarantees that a seller who deals in particular goods by their occupation promises that the goods sold are fit for their ordinary purpose for which they are intended to be used.

79.     Polygroup clearly intended its warranties to apply directly to these consumers who depend on Polygroup to provide safe and durable Pools.

80.     Polygroup manifests intent that its warranties apply to Plaintiff and Class Members as third-party beneficiaries is evident from the statements in its product literature, which begins on the date of the consumers' purchases and excludes commercial, non-residential use.

---

[45] Sascha Raithel, *et al*., Product recall effectiveness and consumers' participation in corrective actions, Journal of the Academy of Marketing Science (Aug. 19, 2023) (online at https://link.springer.com/article/10.1007/s11747-023-00967-x).

81. However, despite these warranties, as described herein, the Pools contain a uniform Defect prior to and at the time of purchase, causing them to commonly and consistently fail in their primary purpose.

82. Polygroup knew, or should have known, of the Defect and dangers posed in its Pools prior to and at the time of sale of the Pools to consumers.

83. Plaintiff and Class Members, on the other hand, had no way of knowing of the Defect or the dangers presented by the Pools prior to purchase.

84. The express warranties relating to the Pools are collectively and individually the result of surprise and oppression and are so one-sided and overly harsh that they are both procedurally and substantively unconscionable.

85. Polygroup knew, or should have known, of the Defect in its Pools prior to and at the time of sale, including from its design of the Pools, knowledge of industry pool safety guidance and recommendations, receipt of CPSC complaints, as well as from warranty claims made directly to Defendants.

86. Polygroup was in a superior position to know of, remedy, and disclose the Defect in its Pools to Plaintiff and Class Members, who could not have known of their defective nature at the time of purchase.

87. There was a substantial disparity between the parties' bargaining power such that Plaintiff was unable to derive a substantial benefit from these express warranties.

88. A disparity existed because Polygroup was aware that the Pools were defective, while Plaintiff and Class Members had no notice or ability to detect said Defect, and had no reason to believe such a Defect existed due to Polygroup's marketing of itself and the Pools as industry leaders in pool safety.

24

89.     Polygroup abused the special relationship it created with consumers through its marketing and through its designing, manufacturing, marketing, and selling the Pools as products specifically safe and durable that consumers had no choice other than to trust Polygroup's representations and thus accept the terms of the warranties.

90.     Polygroup knew Plaintiff and Class Members had no notice or ability to detect the Pools' uniform Defect, and Polygroup knew that Plaintiff and Class Members would bear the cost of remedying or replacing the Pool.

91.     Polygroup knew of the Defect at the time of sale, while Plaintiff and Class Members had no ability to discover the Defect at the time of sale.

92.     Polygroup was in breach of the warranties at the time Plaintiff and Class Members purchased the Pools because they were defective when they came off the assembly line. Thus, at the time the defective Pools were sold to consumers, Polygroup was already in violation of its warranties.

93.     Polygroup sold the Pools knowing that they were not capable of being repaired or replaced with a non-defective Pool.

94.     Plaintiff and Class Members would have negotiated better terms in the purchase of the Pools had they been aware of the Defect.

95.     Polygroup sold the Pools with knowledge of the Defect and of the fact that the Pools failed to conform to Polygroup's marketing of itself and the Pools as industry leaders in safety and failed to be safe and suitable for the Pools' foreseeable and intended purpose and use.

96.     The terms of the express warranties unreasonably favor Polygroup over Plaintiff and Class Members.

97.     In addition, the express warranties failed in their essential purpose in that: (1) the Defect existed at the time the Pools left the manufacturing facility; and (2) Polygroup failed to disclose its knowledge of the Defect at any time and even when contacted by customers about the Pools.

98.     Accordingly, recovery by Plaintiff and Class Members is not restricted to the promise in any express warranties, and they seek all remedies that may be allowed.

## V.     Injury to the Public at Large, the Potential for Future Harm and Need for Injunctive Relief

99.     Polygroup's wrongful conduct harms the public-at-large. Namely, by misrepresenting the Pools as safe and durable and by failing to disclose that the Pools contain a uniform Defect and exposes consumers and their children to the risk of serious injury and death, the harm extends to all Class Members and consumers who may purchase the Pools.

100.    In addition, because Polygroup continues to encourage consumers to use the Pools as described herein, Polygroup's actions pose an ongoing risk to the public.

101.    As such, a public injunction is necessary to enjoin Polygroup's continued harm of consumers and the public-at-large.

102.    Similarly, should Polygroup not be enjoined from its unlawful and deceptive conduct, Plaintiff and Class Members face the potential for irreparable future harm, including purchasing the Pools which are not safe or durable and instead, contain a uniform Defect and exposes consumers and their children to the risk of serious injury and death.

## VI.    Polygroup's Actual or Constructive Knowledge of the Defect and Duty to Disclose the Defect

103.    Polygroup knew, or should have known, when it sold the Pools to the public that they suffered from the Defect.

104.    Additionally, Polygroup knew, or should have known, that the Defect caused the Pools to fail in their regular and intended purpose including that they were unsafe, unstable, and unsuitable for consumers' and their children's use.

105.    Polygroup's knowledge of the Defect is established through its design of the Pools, knowledge of industry guidance, and recommendations regarding pool safety, receipt of multiple reports of infant death in the Pools, and lastly, the Recall, which further confirms that children have been dying as a result of the Defect since at least 2007.

106.     Despite its knowledge, upon information and belief, Polygroup did not remedy or eliminate the Defect in the Pools or remove them from the stream of commerce.

107.    Instead, Polygroup continued to unlawfully advertise the Pools as safe and durable and continued to sell the unreasonably dangerous Pools to consumers.

108.    The Recall, for the reasons stated above, does not absolve Polygroup of liability, especially given its position is a worldwide leader in the above-ground pool market.

109.    In conjunction with Polygroup's vast experience with above-ground pools, these facts and reports of children's deaths illustrate that Polygroup knew, or should have known, of the Defect and the resulting incapability of the Pools to conform to its marketing of itself and the Pools as industry leaders in pool safety.

110.    Polygroup had a duty to disclose the Defect and to not conceal the Defect from Plaintiff and Class Members.

111.    Polygroup's failure to disclose, and/or active concealment of, the Defect places Plaintiff and Class Members' and their children at risk of serious injury and/or death.

112.    Polygroup, even in light of the Recall, is currently still allowing the use of the defective Pools.

27

113.    Had Plaintiff, Class Members, and the consuming public known that the Pools were defective, unsuitable for their marketed and intended use, and risk their children's lives, they would not have purchased them.

114.    Polygroup wrongly placed on Plaintiff and Class Members the burden, expense, and difficulty involved in discovering the Defect and determining that the Pools are unsafe and paying for the cost of damages caused by the Defect.

## TOLLING AND ESTOPPEL OF THE STATUTE OF LIMITATIONS

115.    Polygroup continuously manufactured, marketed and sold the defective Pools to unsuspecting customers. At all times relevant, it continuously represented that the Pools were fit for their intended use.

116.    By continuously repeating these false representations and failing to disclose that the Pools contain the Defect, Polygroup engaged in a continuing wrong sufficient to render inapplicable any statute of limitations that Polygroup might seek to apply.

117.    As the designer and manufacturer of the Pools, Polygroup had actual knowledge since at least 2007 that the Pools are defectively designed.

118.    Polygroup's knowledge of the Defect is evidenced by, amongst other things, the Recall Notice and reports of at least nine deaths as a direct result of the Defect.

119.    Thus, at all relevant times, Polygroup indisputably possessed continuous knowledge of the Defect, and yet Polygroup knowingly continued to allow the sale of the Pools. Plaintiff's and other Class Members' claims are therefore not time-barred.

120.    Moreover, even after the Recall, there is no evidence that news of the Polygroup Recall Notice or Defect reached all Pool owners.

121.    Plaintiff and other Class Members could not reasonably discover and could not know facts that would cause a reasonable person to suspect that Polygroup knowingly failed to disclose material information within its knowledge about the Defect to consumers in the United States and elsewhere. Therefore, no potentially relevant statute of limitations applies.

122.    Throughout the time period relevant to this action, Polygroup concealed from, and failed to disclose to, Plaintiff and the other Class Members vital information about the Defect described herein.

123.    Polygroup kept Plaintiff and the other Class Members ignorant of vital information essential to pursue their claims. As a result, neither Plaintiff nor the other Class Members could have discovered the Defect, even upon reasonable exercise of due diligence.

124.    Polygroup had a duty to disclose to Plaintiff and the Class Members the true quality and nature of the Pool and that the Pool has a uniform Defect.

125.    Instead, Polygroup continued to market the Pools as suitable for their intended purpose to further profit from the sale of its popular Pool products and prevent Plaintiff and other Class Members from seeking redress.

126.    Plaintiff and the other Class Members justifiably relied on Polygroup to disclose the true nature of the Pool they purchased and/or owned because the Defect was not discoverable by Plaintiff and the other Class Members through reasonable efforts.

127.    Polygroup's affirmative acts of concealment, including its continued marketing of the defective Pool as safe, reliable and fit for its intended purpose while possessing knowledge of the hazard, further support estoppel and tolling of any applicable limitations period.

## FED. R. CIV. P. 9(b) ALLEGATIONS

128.     Although Polygroup is in the best position to know information about the design, manufacture, distribution, and sale of the Pools as well as the facts surrounding the Defect during the relevant timeframe, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

129.     **WHO**: Polygroup made material misrepresentations and/or omissions of fact through its marketing, on its website, product packaging, warranties, Owner's Manuals and labeling, through warranty claims, through reports of injuries and death associated with the Pools and the Defect and through authorized retailers of the Pools, which include statements such that the Pools are not defective and are safe and suitable for their intended use.

130.     **WHAT**: Polygroup's conduct here was, and continues to be, fraudulent because it omitted and concealed that the Pools are defective, unsafe, and unsuitable for their intended use in that the Pools contain a uniform Defect. Polygroup's employees and representatives made affirmative misrepresentations as a part of Polygroup's marketing of the Pools to Plaintiff and Class Members at the time of purchase regarding the same qualities. Polygroup failed to adequately warn Plaintiff and Class Members that the Pools contained the Defect, were not suitable for their intended use, and the Pools' Defect has caused injury and death. Further, Polygroup's conduct has the effect of deceiving Plaintiff and Class Members into believing that the Pools are not defective, and instead, are suitable for their intended use. Polygroup knew, or should have known, the existence of the Defect is material to the reasonable consumer, including Plaintiff and Class Members, and impacts their purchasing decisions, and yet Polygroup omits a necessary warning that the Pools are defective and are unsafe and unsuitable for their intended use.

30

131.     **WHEN**: Polygroup made material misrepresentations and/or omissions during the putative class periods and at the time Plaintiff and Class Members purchased the Pools, prior to and at the time Plaintiff and Class Members made claims after realizing the Products contained a uniform Defect and continuously throughout the applicable class periods.

132.     **WHERE**: Polygroup's marketing message and omissions were uniform and pervasive, carried through material misrepresentations and omissions on the Pools' labeling and packaging, its website(s) and the websites of authorized retailers.

133.     **HOW**: Polygroup made material misrepresentations of material facts regarding the Pools, including, but not limited to, the existence of the uniform Defect as well as the associated risks.

134.     **WHY**: Polygroup made the material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiff, Class Members, and all reasonable consumers to purchase and/or pay a premium price for the Pools, the effect of which was Polygroup profited by selling the Pools to many thousands of consumers.

**INJURY**: Plaintiff and Class Members purchased, paid a premium, or otherwise paid more for the Pools when they otherwise would not have absent Polygroup's misrepresentations and omissions.

## CLASS ACTION ALLEGATIONS

135.     Plaintiff brings this action individually and on behalf of all others similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3), on behalf of herself and the members of the following proposed nationwide class ("Nationwide Class"):

> During the fullest period allowed by law, all persons who purchased a Pool in the United States, within the applicable statute of limitations, for personal use and not resale, until the date notice is disseminated.

136.    Plaintiff brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3), on behalf of herself and the members of the following proposed multi-state class ("Multi-State Consumer Protection Class"):[46]

> During the fullest period allowed by law, all persons who purchased a Pool in the state of Illinois or any state with similar laws,[47] within the applicable statute of limitations, for personal use and not resale, until the date notice is disseminated.

137.    Plaintiff further brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) on behalf of herself and the members of the following class ("Illinois Class"):

> During the fullest period allowed by law, all persons who purchased a Pool in the State of Illinois, within the applicable statute of limitations, for personal use and not resale, until the date notice is disseminated.

138.    Members of the Nationwide Class, Multi-State Consumer Protection Class, and Illinois Class are referred to collectively as the "Class Members."

---

[46] Unless otherwise specified, all references in this Complaint to "Classes" or the "Class" refer collectively to the Nationwide Class, Multi-State Consumer Protection Class and Illinois Class.

[47] While discovery may alter the following, Plaintiff asserts that the other states with similar consumer fraud laws under the facts of this case include, but are not limited to: Alaska (AS §§ 45.50.471, *et seq.*), Arkansas (Ark. Code §§ 4-88-101, *et seq.*), California (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), Connecticut (Conn. Gen. Stat. §§ 42-110, *et seq*), Delaware (Del. Code tit. 6, §§ 2511, *et seq.*), District of Columbia (D.C. Code §§ 28-3901, *et seq.*), Florida (Fla. Stat. §§ 501.201, *et seq.*), Hawaii (Haw. Rev. Stat. §§ 480-1, *et seq.*), Illinois (815 ICLS §§ 501/1, *et seq.*), Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*), Michigan (Mich. Comp. Law §§ 445.901, *et seq.*), Minnesota (Minn. Stat. §§ 325F.67, *et seq.*), Missouri (Mo. Rev. Stat. §§ 407.010, *et seq.*), New Jersey (N.J. Stat. §§ 56:8-1, *et seq.*), New York (N.Y. Gen. Bus. Law. §§ 349, *et seq.* and §§ 350, *et seq.*), Rhode Island (R.I. Gen. Laws §§ 6-13.1-1, *et seq.*), Vermont (Vt. Stat. tit. 9, §§ 2451, *et seq.*), Washington (Wash. Rev. Code §§ 19.86.010, *et seq.*), and Wisconsin (Wis. Stat. §§ 100.18, *et seq.*). *See Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 96 (2d Cir. 2018); *Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 201, 204 (W.D.N.Y. 2020); *see also Benson v. Newell Brands, Inc.*, No. 19 C 6836, 2021 WL 5321510, *9-10 (N.D. Ill. Nov. 16, 2021) (certifying a similar multi-state consumer protection class).

139.    Excluded from the Class are: (a) any officers, directors or employees, or immediate family members of the officers, directors or employees of Polygroup or any entity in which Polygroup has a controlling interest; (b) any legal counsel or employee of legal counsel for the Polygroup; (c) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members; and (d) any person who has previously settled claims related to the Defect with Polygroup.

140.    Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

141.    **Numerosity**. Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains currently unknown, Polygroup sold hundreds of thousands of Pools throughout the United States and upon information and belief, there are thousands, if not hundreds of thousands, of putative Class Members. Moreover, the number of members of the Class may be ascertained from Polygroup's books and records, as well as third-party retailers. Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

142.    **Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist for all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

    a.      Whether the Pools contain the Defect alleged herein;

    b.      Whether Polygroup knew, or should have known, of the Defect;

    c.      Whether Polygroup had a duty to disclose the Defect to consumers;

d.   Whether Polygroup's conduct alleged herein violated the consumer protection statutes alleged herein;

e.   Whether Polygroup failed to adequately warn Plaintiff and Class Members that the Pool contained the Defect and drowning hazard;

f.   Whether Polygroup's representations and omissions were misleading or deceptive;

g.   Whether Polygroup omitted or failed to disclose material information to Plaintiff and Class Members regarding the Pools;

h.   Whether Polygroup concealed from and/or failed to disclose to Plaintiff and Class Members that the Pools contain the Defect;

i.   Whether Polygroup's conduct was unfair or illegal;

j.   Whether Plaintiff and Class Members suffered economic injury;

k.   Whether Polygroup's conduct violates public policy;

l.   Whether Polygroup was unjustly enriched;

m.   Whether Plaintiff and putative members of the Class suffered an ascertainable loss of monies or property or other value as a result of Polygroup's acts and omissions of material facts;

n.   Whether Polygroup was unjustly enriched at the expense of Plaintiff and members of the putative Class in connection with selling the Pools with the Defect;

o.   Whether Plaintiff and members of the putative Class are entitled to monetary damages and, if so, the nature of such relief; and

p.   Whether Plaintiff and Class Members are entitled to injunctive, declaratory, or other equitable relief including modification of the Recall.

143.   **Typicality.** Plaintiff's claims are typical of those of the absent Class Members in that Plaintiff and the Class Members each purchased and used the Pool, and each sustained damages arising from Polygroup's wrongful conduct, as disclosed herein. Plaintiff shares the aforementioned facts and legal claims or questions with the putative Class Members. Plaintiff and all members of the putative Class are similarly affected by Polygroup's common misconduct

alleged herein. Plaintiff and all members of the putative Class sustained monetary and economic injuries including—but not limited to—ascertainable losses resulting from Polygroup's deceptive representations and omissions concerning the Pool, the existence of the Defect, the risks attributable to the Defect and the Pool's fitness for its intended purpose, as well as the proposed repair's ability to function as intended.

144. **Adequacy**. Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Class. Plaintiff has retained counsel with substantial experience in handling complex, class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and her counsel are committed to the vigorous prosecution of this action. Plaintiff has no conflicts of interest or interests adverse to those of putative Class.

145. **Insufficiency of Separate Actions**. Absent a class action, Plaintiff and members of the Class will continue to suffer the harm described herein, for which they would have no remedy. Even if individual consumers could bring separate actions, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Polygroup.

146. **Injunctive/Declaratory Relief**: The elements of Rule 23(b)(2) are met. Polygroup will continue to commit the unlawful practices alleged herein, and Plaintiff and Class Members will continue to be deceived by Polygroup's marketing of the Pool and unknowingly be exposed to the Defect and associated risks thereto. Polygroup acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief, public injunctive relief, and corresponding

declaratory relief are appropriate respecting the Class as a whole. Injunctive relief, and specifically public injunctive relief, are necessary in this action.

147.     Plaintiff further seeks injunctive and declaratory relief requiring Polygroup to cease its unfair, deceptive and unlawful conduct, including a complete recall of the Pool and full reimbursement for the Pool's full purchase price.

148.     Plaintiff also seeks a declaration that the Pools suffer from the Defect and that all warranties cover the Defect, which existed at the time of sale of the Pool to consumers, which was known to Polygroup and unknown to consumers.

149.     Plaintiff and Class Members were harmed and will experience irreparable future harm should Polygroup's conduct not be enjoined because they will continue to use the Pool, which still contains the Defect even if the repair kit is installed as instructed by the Recall.

150.     **Superiority**. A class action is superior to any other available method for the fair and efficient adjudication of the present controversy for at least the following reasons:

a.     The damages suffered by each individual member of the putative Class do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Polygroup's conduct;

b.     Even if individual members of the Class had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

c.     The claims presented in this case predominate over any questions of law or fact affecting individual members of the Class;

d.     Individual joinder of all members of the Class is impracticable;

e.     Absent a Class, Plaintiff and members of the putative Class will continue to suffer harm as a result of Polygroup's unlawful conduct; and

f.     This action presents no manageability concerns that would impede its treatment as a class action and, in fact, is the most appropriate and efficient method by which Plaintiff and the members of the

36

putative Class can obtain redress for the harm caused by Polygroup's misconduct.

151.     In the alternative, the Class may be certified for the following reasons:

a.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication concerning individual members of the Class, which would establish incompatible standards of conduct for Polygroup; and

b.     Adjudications of claims of the individual members of the Class against Polygroup would, as a practical matter, be dispositive of the interests of other members of the putative Class who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests.

## CAUSES OF ACTION

## COUNT I

## COMMON LAW FRAUD
*(By Plaintiff, individually, and on behalf of the Nationwide Class, or in the Alternative, the Illinois Class)*

152.     Plaintiff, individually, and on behalf of the Nationwide Class, or in the alternative, the Illinois Class, realleges paragraphs 1 through 151 as if fully set forth herein.

153.     Polygroup's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing the safe and durable marketing related to the Pools, when in fact the Pools contain the Defect.

154.     Polygroup knowingly, willfully, fraudulently, and/or recklessly concealed and suppressed material facts regarding the Pools.

155.     As detailed *supra*, Polygroup made false or misleading statements to Plaintiff and Class Members regarding the safety of the Pools. These uniform and pervasive representations were made through Polygroup's marketing of itself and the Pools as industry leaders in pool safety, including on the Pools themselves, label and packaging materials, the websites of Polygroup and its authorized retailers and other promotional materials for the Pools.

37

156. Polygroup's representations were false and misleading because the Pools contain the Defect and the associated risks to consumers and their children, including injury and death.

157. As describe herein, prior to and after distributing the Pools into the consumer marketplace, Polygroup knew that the Pools contained the Defect and presented the associated risks to consumers and their children, including injury and death. Polygroup also knew that the Pool's design, manufacture, and marketing were inconsistent with industry guidance and standards, including from the CPSC. Nonetheless, Polygroup, through its misrepresentations, misleading statements, and omissions detailed herein, continued to sell the Pools in the United States, in order to increase its own profits, and garner market share, while putting the lives of more consumers and their children at risk.

158. Polygroup knew the representations were false and intended that Plaintiff and Class Members rely on them.

159. These misrepresentations and omissions were material to Plaintiff's and Class Members' decision to acquire the Pools. Plaintiff and members of the Classes justifiably relied on Polygroup's misrepresentations of material facts and omissions regarding the Pools, as described *supra*.

160. Polygroup's conduct was further fraudulent because Polygroup failed to disclose the Defect associated with the Pools. Specifically, Polygroup failed to adequately warn Plaintiff and Class Members that the Pools contained the Defect, were not safe or durable and could cause and had caused children to suffer injury and death.

161. Polygroup has a duty to disclose the truth regarding the safety of the Pools, because the safety of the Pools has a direct impact on the health and safety of the children who utilize them. This duty arose from the fact that Polygroup: had exclusive and/or far superior knowledge and

access to knowledge regarding the safety and durability of the Pools; affirmatively and intentionally concealed material facts from Plaintiff and Class Members; and knew that the Pools were not safe for their marketed and intended use.

162.    The material facts Polygroup represented and omitted to disclose were made to Plaintiff and members of the Classes when they purchased the Pools.

163.    Polygroup intended that its misrepresentations and omissions of material fact would deceive or mislead Plaintiff and members of the Classes and induce them to purchase the Pools.

164.    Plaintiff and members of the Classes justifiably relied on Polygroup's misrepresentations and omissions of material facts regarding the Pools, as described *supra*.

165.    Polygroup's conduct showed malice, motive, and a reckless disregard of the truth such that an award of punitive damages is appropriate. Because Polygroup's deceptive and unfair conduct is ongoing, injunctive relief is necessary and proper.

166.    Polygroup's misrepresentations and omissions of material facts directly and proximately caused the damages suffered by Plaintiff and members of the Classes.

167.    As a result of Polygroup's misrepresentations and omissions of material facts, Plaintiff and members of the Classes were damaged in an amount to be proven at trial.

<u>**COUNT II**</u>

**NEGLIGENT MISREPRESENTATION**
***(By Plaintiff, individually, and on behalf of the Nationwide Class, or in the Alternative, the Illinois Class)***

168.    Plaintiff, individually, and on behalf of the Nationwide Class, or in the alternative, on behalf of the Illinois Class, realleges paragraphs 1 through 151 as if fully set forth herein.

169.    As a seller of the Pool, Polygroup had a duty to give correct information to Plaintiff and Class Members regarding the truth and accuracy of the material facts, including knowledge of

the Defect. Polygroup had sole possession and control of this information and had a duty to disclose it accurately to Plaintiff and Class Members.

170.     Polygroup created a special relationship with Plaintiff and Class Members through its misrepresentations and omissions regarding safety and through its designing, manufacturing, marketing, and selling the Pool as a product specifically suitable for people, including children to use, climb in, and swim in despite the presence of the Defect.

171.     Polygroup intended the sale of the Pool not only to affect Plaintiff and Class Members, but Polygroup actually considered the particular needs of consumers and designed, manufactured, and sold the Pool for those consumers to meet their particular needs.

172.     Polygroup held, or appeared to hold, unique or special expertise and knowledge of the Pools. Polygroup and Plaintiff, as well as Class Members, had a special relationship of trust and confidence, and Polygroup persuaded Plaintiff and Class Members to purchase the Pool based on its misrepresentations and reputation of having expertise and knowledge.

173.     Polygroup affirmatively misrepresented and omitted material facts regarding the Pool's safety, including but not limited to explicit or implicit assurances that the Pool was safe and suitable for use. These false and misleading representations were made for the express purpose of inducing Plaintiff and Class Members to purchase the Pool. Polygroup knew, or should have known, that the Pool posed serious safety risks, and yet marketed and sold it as appropriate for use by children, thereby misleading reasonable consumers into believing it met applicable safety standards.

174.     Because Polygroup purposefully concealed the defective nature of the Pool and the serious safety risks caused by the Defect, Plaintiff and the Class Members were not reasonably able to discover the Defect, despite their exercise of due diligence.

40

175.    Polygroup knew, or otherwise should have known, that the Pool contained the Defect and posed serious safety risks based upon: (1) Polygroup's own internal testing, data and surveys; (2) Polygroup's Recall; (3) the multiple incident reports dated from 2007; and (4) the $25 million lawsuit in 2019 for the drowning of the 2-year-old girl that Bestway (USA) Inc. was found liable concerning similar above-ground pool models with the same Defect, per the CPSC Press Release.

176.    Despite Polygroup's knowledge of material facts concerning the existence of the serious safety risks posed by the Pool, Polygroup actively concealed the serious safety risks from consumers by failing to disclose the serious safety risks to consumers.

177.    Polygroup omitted, concealed, and failed to disclose to consumers that the Pool poses serious safety risks to children, including that the Pool's design is inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; and/or is capable of causing serious injury and death to children. Rather than disclose this information, Polygroup marketed the Pool as safe and suitable for their intended purpose.

178.    The facts concealed and/or not disclosed by Polygroup to consumers, including Plaintiff and other Class Members, were material, in part, because they concerned an essential aspect of the Pool, including the intended use and safety. Such facts affect the conduct of purchasers, and a reasonable person would have considered those facts to be important in deciding whether to purchase the Pool. Rather than disclose this information, Polygroup marketed the Pool as complying with safety standards and regulations, with the utmost manufacturing and design.

179.    Polygroup intentionally concealed and/or failed to disclose such material facts for the purpose of inducing consumers, including Plaintiff and other Class Members, to purchase the Pool.

180.     Plaintiff and other Class Members, without knowledge of the true nature of the Pool, justifiably acted or relied upon the concealed and/or nondisclosed material facts to their detriment, as evidenced by their purchase of the Pool.

181.     As a direct and proximate result of Polygroup's concealment and/or nondisclosure of material facts, consumers, including Plaintiff and other Class Members were damaged as alleged herein, and are entitled to recover damages. Plaintiff and other Class Members would not have purchased the Pool on the same terms had they known that it contained the Defect and posed serious safety risks.

182.     Plaintiff and Class Members are entitled to all relief the Court finds proper as a result of Polygroup's conduct described herein.

## COUNT III

### VIOLATION OF STATE CONSUMER PROTECTION STATUTES
*(By Plaintiff, individually, and on behalf of the Multi-State Consumer Protection Class)*

183.     Plaintiff, individually, and on behalf of the Multi-State Consumer Protection Class, realleges paragraphs 1 through 151 as if fully set forth herein.

184.     Plaintiff and the Multi-State Consumer Protection Class members were injured as a result of Polygroup's violations of the state consumer protection statutes listed in paragraph 136, footnote 47, *supra*. These state consumer protection statutes provide a basis for redress to Plaintiff and the Multi-State Consumer Protection Class based on Polygroup's fraudulent, deceptive, unfair, and unconscionable acts, practices, and conduct.

185.     Polygroup's conduct, as alleged herein, violates the consumer protection, unfair trade practices and deceptive laws of each of the jurisdictions encompassing the Multi-State Consumer Protection Class.

186.     Polygroup's marketing of the Pool violates these prohibitions by deceiving consumers into believing that the Pool is fit for their intended purpose despite the presence of the Defect.

187.     Polygroup engaged in fraudulent, unfair and/or deceptive conduct which creates the likelihood of confusion or misunderstanding in violation of applicable law.

188.     Specifically, Polygroup advertised in a misleading and deceptive manner that the Pools are fit for their intended purpose and did not contain the Defect that presents the associated risks. Polygroup chose to package, label and market the Pool in this way to impact consumer choices, extract price premiums and gain market dominance, as it is aware that all reasonable consumers who purchase the Pool would be impacted by, and would reasonably believe, its false and misleading representations.

189.     Polygroup intended for Plaintiff and Multi-State Consumer Protection Class Members to reasonably rely upon the material misrepresentations concerning the true nature of the Pool.

190.     Polygroup's misrepresentations and other deceptive conduct were likely to deceive and cause misunderstanding and/or, in fact, did cause Plaintiff and Multi-State Consumer Protection Class Members to be deceived about the true nature of the Pool.

191.     Further, despite Polygroup's knowledge of material facts concerning the existence of the serious safety risks posed by the Pool, Polygroup actively concealed the serious safety risks from consumers by failing to disclose the serious safety risks to consumers.

192.     Polygroup knew, or otherwise should have known, that the Pool contained the Defect and posed serious safety risks based upon: (1) Polygroup's own internal testing, data and surveys; (2) Polygroup's Recall; (3) the multiple incident reports dated from 2007; and (4) the $25

million lawsuit in 2019 for the drowning of the 2-year-old girl that Bestway (USA) Inc. was found liable concerning similar above-ground pool models with the same Defect, per the CPSC Press Release.

193.    Polygroup omitted, concealed, and failed to disclose to consumers that the Pools pose serious safety risks to children, including that the Pool's design is inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; and/or is capable of causing serious injury and death to children. Rather than disclose this information, Polygroup marketed the Pool as safe and suitable for their intended purpose.

194.    The facts concealed and/or not disclosed by Polygroup to consumers, including Plaintiff and other Class Members, were material, in part, because they concerned an essential aspect of the Pool, including the intended use and safety. Such facts affect the conduct of purchasers, and a reasonable person would have considered those facts to be important in deciding whether to purchase the Pool. Rather than disclose this information, Polygroup marketed the Pool as complying with safety standards and regulations, with the utmost manufacturing and design.

195.    Polygroup intentionally concealed and/or failed to disclose such material facts for the purpose of inducing consumers, including Plaintiff and other Class Members, to purchase the Pool.

196.    As a direct and proximate result of Polygroup's misrepresentations, Plaintiff and Multi-State Consumer Protection Class Members suffered ascertainable losses.

197.    Had they been aware of the true nature of the Pool, Plaintiff and Multi-State Consumer Protection Class Members either would have paid less for the Pool or would not have made the purchases at all.

198.     Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Multi-State Consumer Protection Class Members are entitled to recover compensatory, restitution, punitive and special damages, including, but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted by relevant law.

## COUNT IV

### UNJUST ENRICHMENT/QUASI CONTRACT
### *(By Plaintiff, individually, and on behalf of the Illinois Class)*

199.     Plaintiff, individually, and on behalf of the Illinois Class, realleges paragraphs 1 through 151 as if fully set forth herein.

200.     Plaintiff and the putative Class Members conferred a benefit on Polygroup by purchasing the Pool—payments that Polygroup knowingly accepted while aware of the Pool's Defect and unfitness for its intended use.

201.     Polygroup either knew, or should have known, that the payments rendered by Plaintiff and Class Members were given with the expectation that the Pool had the qualities, characteristics, and suitability for the use represented and warranted by Polygroup. As such, it would be inequitable for Polygroup to retain the benefit of the payments under these circumstances.

202.     By its wrongful acts and omissions described herein, including selling the Pool, which contained both a Defect and was inoperative for the intended use, Polygroup was unjustly enriched at the expense of Plaintiff and putative Class Members. The Pool could not even be assembled and filled with water, as it would inherently become a drowning hazard.

45

203. Polygroup's wrongful conduct directly caused Plaintiff's detriment and resulted in Polygroup's unjust enrichment, as the benefit it received flowed directly from the misconduct alleged in this Complaint.

204. Polygroup unjustly profited from its unlawful, unfair, and deceptive conduct at the expense of Plaintiff and the putative Class Members. It would be inequitable and contrary to principles of justice for Polygroup to retain the profits, benefits, and other compensation obtained through the sale of the Pool, as such enrichment was directly tied to the misconduct alleged herein.

205. Polygroup was unjustly enriched by retaining revenue from Class Members' purchases of the Pool. Such enrichment is unjust and inequitable because Polygroup knowingly manufactured, marketed, and sold a defective Pool while omitting material facts, causing Plaintiff and Class Members to purchase Pools they otherwise would not have purchased had the truth been disclosed.

206. Polygroup continued to manufacture the Pool with its inherent Defect even after knowing—and concealing—at least three incidents that occurred over two decades ago. Even after these known incidents, Polygroup continued to tout the safety of its Pool, considerably profiting for decades.

207. Polygroup's conduct allows it to knowingly realize substantial revenue from selling the Pool at the expense of, and to the detriment of, Plaintiff and Class Members, and Polygroup's benefit and enrichment. Polygroup's retention of these benefits violates fundamental justice, equity and good conscience principles.

208. Under common law principles of unjust enrichment and quasi-contract, it is inequitable for Polygroup to retain the benefits conferred by Plaintiff's and Class Members' overpayments.

209.     Plaintiff and Members of the Class seek disgorgement of all profits resulting from such overpayment.

## COUNT V

### NEGLIGENCE
### *(By Plaintiff, individually, and on behalf of the Illinois Class)*

210.     Plaintiff, individually, and on behalf of the Illinois Class, realleges paragraphs 1 through 151 as if fully set forth herein.

211.     Polygroup directly or indirectly, caused the Pools to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by Plaintiff and the other Class Members.

212.     At all times relevant, Polygroup had a duty to exercise reasonable care in the design, testing, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale, and distribution of the Pools, including the duty to take all reasonable steps necessary to manufacture, promote, and/or sell a product that was not unreasonably dangerous to consumers and users of the Pools.

213.     At all times relevant, Polygroup had a duty to exercise reasonable care in the marketing, advertisement, and sale of the Pools. Polygroup's duty of care owed to consumers and the general public included providing accurate, true, and correct information concerning the risks of using the Pools and appropriate, complete, and accurate warnings concerning the potential safety risks regarding the use of the Pool, and, in particular, their uniform Defect.

214.     At all times relevant, Polygroup knew or, in the exercise of reasonable care should have known, of the Defect and the corresponding risks associated thereto.

215.     Polygroup knew, or otherwise should have known, that the Pools posed serious safety risks to consumers and their children, because of, among other things, their own internal

testing, data and surveys, the Recall and the multiple reports of infant children's deaths associated with the Defect.

216.    Accordingly, at all times relevant, Polygroup knew or, in the exercise of reasonable care should have known, that use of the Pools created a dangerous and unreasonable risk of injury and death to consumers and their children when using the Pool, including Plaintiff and the other Class Members.

217.    Polygroup also knew or, in the exercise of reasonable care should have known, that users and consumers of the Pools were unaware of the Defect of the Pools and the associated risks.

218.    Polygroup omitted, concealed, and failed to disclose to consumers that the Pools poses serious safety risks to consumers and their children, including that the Pools were inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; and contained a Defect. Polygroup failed to adequately warn Plaintiff and Class Members that the Pools contained the Defect, were not safe or suitable for their marketed and intended use, and could have caused consumers and their children to be placed in the risk of harm and death. Rather than disclose this information, Polygroup, through its marketing of itself and its Pools as industry leaders in pool safety, *inter alia*, marketed the Pools as safe and durable for their marketed and intended use.

219.    A reasonable manufacturer, distributor or seller of the Pools, under the same or similar circumstances, would have warned of the Defect.

220.    Polygroup did not warn of the particular risks associated with the Pools as detailed *supra*, for reasons which fell below the acceptable standard of care, *i.e.*, what a reasonably prudent manufacturer would have known and warned about.

221.    As such, Polygroup breached the duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply,

promotion, advertisement, packaging, sale and distribution of the Pools, in that Polygroup manufactured, marketed, promoted and sold the Pools with the uniform Defect, knew or had reason to know of the Defect inherent in the Pools, knew or had reason to know that consumers' and their children's use of the Pools created a significant risk of serious injury and death and is unreasonably dangerous for consumers and their children and failed to prevent or adequately warn of these risks and injuries.

222. In breach of its duties, Polygroup negligently: failed to design, manufacture, formulate, and package the Pools without the uniform Defect; designed, manufactured, and formulated the Pools such that they contained the uniform Defect; failed to conduct adequate research, and testing to determine the extent to which the Pools were likely to present a serious risk of harm and/or death to consumers and their children; and failed to warn that the Pools could and have caused children to be placed in dangerous situations resulting in injury and death.

223. Despite an ability and means to investigate, study, and test the Pools and to provide adequate warnings, Polygroup failed to do so. Indeed, Polygroup wrongfully concealed information and further made false and/or misleading statements concerning the safety of the Pool.

224. Polygroup was negligent in the following respects:

    a. Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing the Pools without thorough and adequate pre-and post-market testing;

    b. Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing the Pools while negligently and/or intentionally concealing and failing to disclose the results of trials tests, and, consequently, the risk of serious injury and death associated with use of the Pools;

    c. Failing to undertake sufficient studies and conduct necessary testing and adverse event analysis to determine whether the Pools were safe for their intended use;

49

d. Failing to use reasonable and prudent care in the design, research, manufacture, and development of the Pools to avoid the risk of serious harm and death to consumers and their children associated with the prevalent use of the Pools;

e. Failing to provide adequate instructions, guidelines, and safety precautions to those consumers who Polygroup could reasonably foresee would use the Pools;

f. Failing to disclose to Plaintiff, Class Members, users/consumers and the general public that use of the Pools presented risks or serious injury of death to consumers and their children;

g. Failing to warn Plaintiff and Class Members, consumers and the general public that the Pools' risk of harm was unreasonable and that there were safer and effective alternative pools available to Plaintiff and other consumers;

h. Systematically suppressing or downplaying contrary evidence about the risks, incidence and prevalence the Defect uniformly present in the Pools;

i. Representing that its Pools were safe for their intended use when, in fact, Polygroup knew, or should have known, that the Pools were not safe for their intended purpose;

j. Failing to make and/or submit any changes to the Pools' labeling or other promotional materials that would alert the consumers and the general public of the risks of the Pools and related Defect;

k. Advertising, marketing, and recommending the use of the Pools while concealing and failing to disclose or warn of the dangers known by Polygroup to be associated with or caused by the use of the Pools and/or Defect;

l. Continuing to disseminate information to its consumers, which indicates or implies that Polygroup's Pools are safe and suitable for their advertised and intended use; and

m. Continuing the manufacture and sale of its Pool with the knowledge that the Pools were unreasonably unsafe and dangerous to consumers and their children.

225.    Polygroup knew, or otherwise should have known, that it was foreseeable that consumers and their children, including Plaintiff and the other Class Members, would be placed at

50

risk of serious injury and death as a result of Polygroup's failure to exercise ordinary care in the manufacturing, marketing, promotion, labeling, distribution and sale of the Pools.

226. Plaintiff and the other Class Members did not know the nature and extent of the injuries that could result from the intended use of the Pools.

227. Polygroup's negligence was the proximate cause of the injuries, harm, and economic losses that Plaintiff and the other Class Members suffered, as described herein.

228. Polygroup's failure to warn or instruct was a substantial factor in causing Plaintiff's and other Class Members' harm.

229. Polygroup's conduct, as described *supra*, was reckless. Polygroup regularly risked the lives of consumers and users of the Pools, including Plaintiff and the other Class Members and their children, with full knowledge of the dangers of the Pools. Polygroup made conscious decisions not to redesign, re-label, warn, or inform the unsuspecting public, including Plaintiff and the other Class Members.

230. Polygroup further made the decision to issue the ineffective, insufficient, and inadequate Recall, as described herein.

231. Polygroup's reckless conduct therefore warrants an award of aggravated or punitive damages.

232. As a direct and proximate result of Polygroup's wrongful acts and omissions in placing the defective Pools into the stream of commerce without adequate warnings of the risks of serious injury and death, Plaintiff and the other Class Members were damaged.

<u>**COUNT VI**</u>

**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND
DECEPTIVE TRADE PRACTICES ACT 815 ILCS 505/1,** *et seq.*
*(By Plaintiff, individually, and on behalf of the Illinois Class)*

233.     Plaintiff, individually, and on behalf of the Illinois Class, realleges paragraphs 1 through 151 as if fully set forth herein.

234.     Plaintiff and other Class Members are persons within the context of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1(c).

235.     Polygroup is a person within the context of the ICFA, 815 ILCS 505/1(c).

236.     At all times relevant hereto, Polygroup was engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f).

237.     Plaintiff and the proposed Class are "consumers" who purchased the Pool for personal, family, or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

238.     The ICFA prohibits engaging in any "unfair or deceptive acts or practices … in the conduct of any trade or commerce…." *See,* ICFA, 815 ILCS 505/2.

239.     The ICFA prohibits any deceptive, unlawful, **<u>unfair</u>**, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act. *See* 815 ILCS § 505/2.

240.     Plaintiff and the other Illinois Class Members reasonably relied upon Polygroup's representation that the Pool was safe for personal use and did not present a drowning hazard. Additionally, Polygroup concealed the life-threatening Defect even after knowing of prior drowning incidents at its Pools and its competitors' pools of similar build and structure.

52

241.    Polygroup's conduct, as described herein, took place within the State of Illinois and constitutes unfair or deceptive acts or practices in trade and commerce, violating 815 ICFA 505/1, *et seq.*

242.    Polygroup violated the ICFA by representing that the Pool has characteristics or benefits that they do not have. *See* 815 ILCS § 505/2; 815 ILCS § 510/2(7).

243.    Polygroup did not intend to sell the products as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

244.    Polygroup engaged in fraudulent and/or deceptive conduct which creates a likelihood of confusion or misunderstanding in violation of 815 ILCS § 505/2; 815 ILCS § 510/2(3).

245.    Prior to placing the Pools into the stream of commerce and the hands of consumers, Polygroup knew, or should have known, that the Pools contained the life-threatening Defect. Still, Polygroup failed to test and quality-check its Pool properly and further misrepresented, omitted, and concealed this fact to consumers, including Plaintiff and Class Members, by not warning about the Defect and associated risks.

246.    Plaintiff and Class Members were damaged economically as a proximate result of Polygroup's violations of the ICFA and have suffered damages as a direct and proximate result of purchasing the Pools.

247.    As a direct and proximate result of Polygroup's violations of the ICFA, as set forth *supra*, Plaintiff and the Illinois Class Members suffered ascertainable losses of money caused by Polygroup's misrepresentations and material omissions regarding the Defect inherent to the Pools.

248.    Had they been aware of the Pool's Defect, Plaintiff and Class Members either would have paid less for the Pool or would not have purchased them at all.

249. While the joint CPSC Press Release was placed on July 21, 2025, Polygroup has yet to provide any monetary remedy for its ICFA violations stated herein.

250. Based on Polygroup's unfair and/or deceptive acts or practices, Plaintiff and the Illinois Class Members are therefore entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs and attorney's fees, under 815 ILCS 505/10a.

## COUNT VII

### VIOLATIONS OF THE ILLINOIS DECEPTIVE TRADE PRACTICES ACT
### 815 ILCS 505/1, *et seq.*
### *(By Plaintiff, individually, and on behalf of the Illinois Class)*

251. Plaintiff individually, and on behalf of the Illinois Class, realleges paragraphs 1 through 151 as if fully set forth herein.

252. The Illinois Deceptive Trade Practices Act, 815 ILCS 505/1, *et seq*. ("UDTPA") prohibits deceptive trade practices in the course of a business, vocation, or occupation. 815 ILCS 510/2(a).

253. In the course of its business, Polygroup, through itself, its agents, employees, and/or subsidiaries, violated the Illinois UDTPA by knowingly and intentionally misrepresenting, omitting, concealing and failing to disclose material facts regarding the reliability, safety, and performance of the Pools, as detailed herein.

254. Specifically, by misrepresenting the Pools as safe and suitable for their marketed and intended use, and by failing to disclose and actively concealing the dangers and risk posed by the Defect, Polygroup engaged in one or more of the following unfair or deceptive business practices prohibited by 815 ILCS 510/2(a):

    a. Representing that the Pools have characteristics, uses, benefits, and qualities which they do not have;

    b. Representing that the Pools are of a particular standard, quality, and grade when they are not;

54

      c.   Advertising the Pools with the intent not to sell them as advertised; and

      d.   Engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding.

815 ILCS 510/2(a)(5), (7), (9) and (12).

255.    Polygroup's unfair or deceptive acts or practices, including misrepresentations, concealments, omissions and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Plaintiff and Class Members, about the true safety and reliability of the Pools, the quality of the Pools and the true value of the Pools.

256.    Polygroup's scheme and concealment of the true characteristics of the Pools were material to the Plaintiff and Class Members, as Polygroup intended.

257.    Had they known the truth, Plaintiff and Class Members would not have purchased Pools or would have paid significantly less for them.

258.    Plaintiff and Class Members had no way of discerning that Polygroup's representations were false and misleading, or otherwise learning the facts that Polygroup concealed or failed to disclose.

259.    Plaintiff and Class Members did not, and could not, unravel Polygroup's deception on their own.

260.    Polygroup had an ongoing duty to the Plaintiff and Class Members to refrain from unfair or deceptive practices under the Illinois UDTPA in the course of its business.

261.    Specifically, Polygroup owed the Plaintiff and Class Members a duty to disclose all the material facts concerning the Pools because Polygroup possessed exclusive knowledge, intentionally concealed the true characteristics of the Pools from the Plaintiff and Class Members,

and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

262.    Plaintiff and Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Polygroup's concealment, misrepresentations, and/or failure to disclose material information.

263.    Polygroup's violations present a continuing risk to the Plaintiff and Class Members, as well as to the general public.

264.    Polygroup's unlawful acts and practices complained of herein affect the public interest.

265.    Pursuant to 815 ILCS 510/3, the Plaintiff and Class Members seek an order enjoining Polygroup's unfair or deceptive acts or practices and any other just and proper relief available under the Illinois UDTPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests that this Court:

a.    Declare that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

b.    Award Plaintiff and Class Members compensatory, statutory, actual, and/or monetary damages, including interest, in an amount to be determined at trial;

c.    Declare that Polygroup must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits it received from the sale of the Pools;

     d.      Order Polygroup to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Classes;

     e.      Award punitive damages where permitted by statute, in an amount to be determined at trial, due to Polygroup's willful and reckless disregard for the safety of consumers despite its knowledge of the Defect; and

     f.      Order such other and further relief as may be just and proper.

**<u>JURY DEMAND</u>**

Plaintiff hereby demands a trial by jury of all claims so triable.

DATED: August 26, 2025          Respectfully submitted,

          */s/ Russell Busch*

          Russell Busch (IL Bar No. 6329500)
          **BRYSON HARRIS SUCIU**
          **& DEMAY PLLC**
          900 W. Morgan St.
          Raleigh, NC 27603
          Tel: (630) 796-0903
          rbusch@brysonpllc.com

          Rachel Soffin (FL Bar No. 18054)
          rsoffin@pwfirm.com
          **PEARSON WARSHAW, LLP**
          15165 Ventura Boulevard, Suite 400
          Sherman Oaks, California 91403
          Telephone: (818) 788-8300
          Facsimile: (818) 788-8104

          Melissa S. Weiner
          mweiner@pwfirm.com
          Ryan T. Gott
          rgott@pwfirm.com
          **PEARSON WARSHAW, LLP**
          328 Barry Avenue S., Suite 200
          Wayzata, Minnesota 55391
          Telephone: (612) 389-0600
          Facsimile: (612) 389-0610

Nick Suciu III
**BRYSON HARRIS SUCIU
& DEMAY PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
Email: nsuciu@brysonpllc.com

Trenton R. Kashima
**BRYSON HARRIS SUCIU
& DEMAY PLLC**
402 West Broadway, Suite 1760
San Diego, CA 92101
Tel: (619) 810-7047
Email: tkashima@brysonpllc.com

*On Behalf of Plaintiff and the Proposed Classes*