## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRANDI JAMISON, individually and on behalf of all others similarly situated, | ) Case No.: 1:25-cv-10222 |
| | ) |
| | ) Hon. Jeremy C. Daniel |
| Plaintiff, | ) |
| | ) |
| v. | ) **FIRST AMENDED CLASS ACTION** |
| | ) **COMPLAINT** |
| POLYGROUP NORTH AMERICA, INC. and | ) |
| POLYGROUP SERVICES N.A. INC., | ) **DEMAND FOR JURY TRIAL** |
| | ) |
| Defendants. | ) |

Plaintiff Brandi Jamison ("Plaintiff"), individually and on behalf of all others similarly situated, brings this First Amended Class Action Complaint against Defendants Polygroup North America, Inc. and Polygroup Services N.A. Inc. (collectively, "Polygroup" or "Defendants")[1] and alleges the following based on personal knowledge as to herself, and as to all other matters, upon information and belief, including investigation conducted by her attorneys:

### NATURE OF THE ACTION

1. This proposed class action involves hundreds of thousands of dangerously defective above-ground pools designed, manufactured, marketed and sold by Polygroup with a safety defect and later subject to a delayed, deficient and inadequate recall (the "Recall").[2] The Pools include Polygroup-branded above ground pools that are 48-inches and taller, with round and oval frames and include the following models: *Summer Waves* (sold 2015-2025), *Summer Escapes* (sold 2006-

---

[1] Plaintiff reserves the right to amend the First Amended Class Action Complaint to include any additional responsible parties or entities as evidence or information is uncovered throughout discovery.

[2] *See* https://www.cpsc.gov/Recalls/2025/Polygroup-and-other-manufacturers-recall-pools-after-drownings (hereinafter "CPSC Press Release") (last accessed December 1, 2025), and https://polygrouprecall.com/ (hereinafter "Recall Notice") (last accessed December 1, 2025).

2015), *Funsicle* (sold 2023-2025), *Sand n Sun* (sold 2008-2011) and *Blue Wave* (sold 2014-2025), collectively all sold between 2006 and June 2025 (the "Products" or "Pools").

2.     Polygroup, a self-proclaimed "trusted authority and world leader in best-in-class"[3] consumer products, marketed and sold the Pools as safe for families and children. In actuality, the Pools are dangerously defective and pose such a significant risk of drowning for children that Polygroup was forced to recall the Pools.

3.     The safety of children, an incredibly vulnerable population, is paramount. Companies such as Polygroup, that tout themselves as trusted consumer product industry leaders— and sell products for use by families and their children—have a legal obligation to honestly and adequately represent the safety of their products and to provide adequate warnings about safety hazards. As shown below, both before and after multiple drowning deaths in pools with the same or similar design as the Pools at issue in this litigation, Polygroup wholly failed to deliver safe Pools to Plaintiff and Class Members, failed to provide adequate warnings about safety hazards and offered an inadequate and ineffective Recall that fails to provide Plaintiff and Class Members with proper relief.

4.     This action arises from the dangerous design and prolonged concealment of a known defect in the Pools and a belated, inefficient and inadequate recall of the Pools. The Pools were dangerously defective at the point of purchase, which was unknown to reasonable consumers but known to Polygroup.

5.     On July 21, 2025, the U.S. Consumer Product Safety Commission ("CPSC"), together with Polygroup and other manufacturers, announced the voluntary recall of approximately 5 million above-ground pools sold at major retailers nationwide since 2002 that resulted in at least

---

[3] *See* https://www.polygroup.com/ (last accessed December 1, 2025).

2

nine deaths of children between 22 months and 3 years old, from 2007 to 2022, and other incidents of near drownings.[4] Polygroup sold nearly one million of these recalled Pools.

6.    In a July 21, 2025, statement, the CPSC's Acting Chairman Peter A. Feldmann and Commissioner Douglas Dziak described the Recall as "long-overdue" and stated the Defect was "a textbook example of a dangerous design flaw, plainly visible and clearly hazardous" and, with respect to the multiple drownings and near drownings, further stated "[y]ears of inaction allowed these tragedies to occur."[5]

7.    Now, following multiple child deaths, Polygroup concedes through its deficient Recall Notice that the Pools pose a drowning hazard and cannot be safely used as sold:[6]



What exactly is the issue?

Affected products have compression straps that wrap around the pool on the outside of the supporting poles. A child may use the compression straps as a foothold to gain access to the pool, posing a drowning hazard.

8.    As Polygroup admits in the Recall Notice, Polygroup designed, manufactured, marketed, distributed and sold the Pools with compression straps located external to the Pools'

---

[4] *See* CPSC Press Release, https://www.cpsc.gov/Recalls/2025/Polygroup-and-other-manufacturers-recall-pools-after-drownings (last accessed Oct. 9, 2025).

[5] *See* Statement of Acting Chairman Peter A. Feldman and Commissioner Douglas Dziak: Deadly Design in Chinese Pools Triggers Massive Recall; CPSC Leaders Cite Years of Inaction (published on July 21, 2025), https://www.cpsc.gov/About-CPSC/Commissioner/Douglas-Dziak-Peter-A-Feldman/Statement/Statement-of-Acting-Chairman-Peter-A-Feldman-and-Commissioner-Douglas-Dziak-Deadly-Design-in-Chinese-Pools-Triggers-Massive-Recall-CPSC-Leaders-Cite-Years-of-Inaction (last accessed Dec. 1, 2025).

[6] *See* https://polygrouprecall.com/faq.

vertical support poles (hereinafter, the "Defect")—design elements that created an accessible foothold for children to climb into the Pool, posing a drowning hazard for vulnerable children.[7]



*Image 1*[8]



*Image 2*[9]

---

[7] *Id.*

[8] U.S. Consumer Product Safety Commission ("CPSC") example of a child using the compression strap to stand on the Pool, illustrating the Defect and associated hazard. https://www.cpsc.gov/Recalls/2025/Polygroup-Intex-and-Polygroup-Recall-Certain-Above-Ground-Pools-48-Inches-and-Taller-Due-to-Drowning-Hazard-Nine-Deaths-Reported-Five-Million-Pools-Sold-Since-2002.

[9] https://www.saferproducts.gov/Common/DisplayDocument?documentId=150996 (image on saferproducts.gov of the same child from the CPSC press release climbing into a pool with the Defect and associated hazard).



*Image 3*[10]

9.      Through the Recall Notice, Polygroup admits that the Defect was not inherent or unavoidable since other similar pool models not subject to the Recall, which were manufactured and sold to consumers long before Polygroup issued the Recall, contained an internal compression strap that cannot be used as a foothold and does not pose an associated drowning hazard for children.[11]



*Image 4*[12]

---

[10]    https://www.saferproducts.gov/Common/DisplayDocument?documentId=150997  (image on saferproducts.gov of the same child from the CPSC press release climbing into a pool with the Defect and associated hazard).

[11]    *See* CPSC Press Release; Polygroup Recall Notice.

[12]    Polygroup illustration of the recalled versus the non-recalled pool models. https://polygrouprecall.com/.

10. Notably, the Recall is not a form of adjudication and, as alleged in this First Amended Class Action Complaint, was at all times, and continues to be, inadequate and ineffective.

11. ***Polygroup fails to recall the entire Pool***, ***or provide any monetary remedy*** to Plaintiff and Class Members who purchased the defective Pools. Instead, Polygroup only offers an inadequate repair kit without providing the assistance of a qualified technician. Even if customers express concerns over repairing the Pools themselves, Polygroup denies on-site repairs, exclusively offering "further guidance" through a call center or email.[13] With limited instruction and no professional assistance, a consumer must thread a rope behind the vertical legs of the Pool, through a *de minimus* tightener and plastic rope holders at the base of the Pool legs. While Polygroup maintains that the rope is a convenient and easy-to-apply solution that ensures the structural integrity of the Pool, this representation is a farce as detailed further below.

12. In addition, the Recall was announced far too late. The CPSC confirmed that the Pools' Defect and associated risks were known since 2007. As detailed in the CPSC Press Release:

> CPSC believes that nine children between the ages of 22 months and 3 years old have drowned after gaining access to the pools via the footholds. The incidents occurred in California, Texas, Florida, Michigan, Wisconsin and Missouri between 2007 and 2022.
>
> CPSC is also aware of three other incidents in 2011 and 2012 where children who gained access to the recalled pools were reported to have previously used the compression strap to gain entry to the pool.[14]

13. Prior to the Recall and despite the serious danger to child safety presented by the Pools, Polygroup intentionally marketed and sold the Pools as safe for families and children and failed to effectively disclose to consumers that the Pools posed a drowning hazard for children.

---

[13] *See* https://polygrouprecall.com/faq (last accessed Dec 1, 2025).

[14] *See* CPSC Press Release.

6

14.     Polygroup knew, or should have known, of these incidents, yet it did nothing. Indeed, despite reported incidents dating back to 2007 in pools with the same Defect, Polygroup failed to issue any warning or make design changes to remedy the Defect and continued profiting from its sales throughout the United States.

15.     In fact, according to minutes from a March 14, 2024, CPSC meeting regarding above-ground pool safety, two drowning incidents occurred in Polygroup pools with the Defect in 2011 and 2014, respectively. The individuals involved in these drownings included a 3-year-old little boy and a 2-year-old little girl.[15] Both of these children climbed into the Pools, which had the Defect, using the external compression straps as a foothold.

16.     Polygroup was well aware that if it truthfully informed consumers of the dangers of the Pools' Defect, it would significantly impact its sales, as consumers would have made different purchasing decisions.

17.     Due to Polygroup's marketing of the Pools, along with Polygroup's failure to disclose to consumers at the time of purchase that the Pools contained the Defect, Plaintiff and Class Members trusted Polygroup and its representations that the Pools would be safe to use as intended and paid a premium for that important quality. Additionally, despite the Recall, defects in the Pools persist, rendering them unfit and worth less than advertised and warranted.

18.     Every Pool suffers from the uniform Defect, which, unknown to consumers but known to Polygroup, exists at the point of purchase and poses an unreasonable safety hazard to consumers and their children. Likewise, every Pool is subject to the delayed, deficient and inadequate Recall. As such, Plaintiff and all reasonable consumers are victims of the unfair

---

[15]     2024-03-14-Commissioner-Feldman-Call-with-J-Mohorovic-Meeting-Log.pdf     (last accessed Dec. 1, 2025).

bargaining power between them and Polygroup based on Polygroup's superior industry knowledge.

19.     The existence of the Defect, as well as the delayed, deficient and inadequate Recall, is a material fact that reasonable consumers, including Plaintiff and Class Members, would have considered when deciding whether to purchase the Pools.

20.     Before purchasing the Pools, Plaintiff and Class Members did not know that (a) the Pools had the Defect, (b) using the Pools for their intended and foreseeable purpose would place children at risk of drowning and (c) in the event of such risk, Polygroup would offer a delayed, deficient and inadequate remedy.

21.     No reasonable consumer would have purchased Pools on the same terms or conditions if they knew of the Defect and of the subsequent inadequate response from Polygroup. Polygroup chose to put consumers' and their children's lives at risk to sell more Pools and now, after the inevitable deaths are brought to light, Polygroup still opts for decisions that put profit over people. Despite their belated acknowledgment of the Defect, Polygroup still has not provided a meaningful remedy to consumers, including Plaintiff and Class Members.

22.     The Pools were sold at stores nationwide, including Walmart, Lowe's, Kmart, Toys "R" Us, Sam's Club, The Home Depot, Big Lots and Costco. They were also sold on Polygroup's website and other internet platforms, including Amazon.com, Wayfair.com, Walmart.com and the Funsicle website.

23.     Polygroup made significant revenue from the sale of the Pools, which were sold nationwide for approximately $400.00 to over $1,000.00.[16] Polygroup sold at least 912,000 Pools

---

[16] *See* CPSC Press Release.

subject to the Recall across the United States and Canada.[17] Using an average of these figures, Polygroup's revenue from the sale of the Pools was more than $600 million.

24. Polygroup was able to charge this premium price for the Pools due to its marketing, and its failure to disclose to consumers that the Pools contain the Defect and associated hazard. Polygroup knew that safety and suitability of the Pools for use (which naturally includes structural integrity and lack of a risk of harm or death to themselves and their children) are paramount for consumers.

25. Polygroup's refusal to provide refunds, replacements or professional repair underscores its ongoing disregard for consumer safety and demonstrates that the Recall remedy is inadequate.

26. A recall does not moot economic loss claims where the remedy is inadequate, incomplete or fails to restore product value. Polygroup's Recall remedy is materially inadequate, leaving consumers with unsafe, unusable Pools worth less than what they paid for the Pools.

27. This action seeks to hold Polygroup accountable for its dangerous design, decades of concealment and its knowingly inadequate Recall remedy.

28. Polygroup acted with reckless disregard and conscious indifference to known, life-threatening risks.

29. Plaintiff, on behalf of herself and Class Members, seeks damages and all other relief available under law and equity from Polygroup, including punitive damages, for Polygroup's appalling and unconscionable misconduct. Plaintiff also seeks classwide injunctive relief, including: (i) a state-of-the-art notice program for the wide dissemination of a factually accurate recall notice for the Pool; (ii) the implementation of a corrective advertising campaign to alert

---

[17] *See* Polygroup Recall Notice.

consumers to the dangers of the Defect; (iii) an offer to replace the Pools with a reasonable and safe product; and/or (iv) a full refund for the purchase price of the Pools.

## PARTIES

### I.     Plaintiff Brandi Jamison

30.     At all relevant times, Plaintiff Jamison was and is a resident and citizen of Rockford, Illinois, who purchased a Polygroup Funsicle 22ft x 52ft Round Oasis Above Ground Pool, with SkimmperPlus Filter Pup and Ladder on June 22, 2023, from Amazon.com for $971.99. The Pool purchased by Plaintiff Jamison is subject to the Recall.

31.     Plaintiff Jamison used the Pool as instructed, including removing the ladder when the Pool was not in use, in order to maintain a safe environment for her family and others.

32.     Plaintiff Jamison was unaware of the Defect until she learned of the Recall on or around July 22, 2025.

33.     After learning of the Recall, Plaintiff Jamison registered for the repair kit.

34.     Upon receipt of the repair kit, Plaintiff Jamison attempted to install the rope but was unable to complete the installation despite reviewing the repair kit video and instructions, which were confusing.

35.     Had Plaintiff Jamison known, prior to purchase, of the Defect and Polygroup's response to the Defect with a delayed, ineffective and inadequate Recall, she would not have purchased the Pool or would have paid less for it.

36.     Plaintiff Jamison considered Polygroup a reputable company with a strong reputation for producing safe and reliable pools and believed that her Pool would be no different.

37.     Plaintiff Jamison relied on Polygroup's representations that the Pool was safe for family use and was unaware of the Defect and associated hazard in the Pool at the time of purchase.

38.     Plaintiff Jamison is unable to safely use and maintain her Pool because the repair kit is ineffective and inadequate, and she was unable to install it due to the confusing nature of the repair kit and instructions. However, had Plaintiff Jamison been able to install the repair kit, it would have remained an ineffective and insufficient remedy because, among other things: (1) the rope itself poses further risks to consumers and their children; (2) the rope, by its nature and by its positioning in relation to the Pool and the Pool legs, is wholly inadequate to maintain the structural integrity of the Pool; and (3) the Recall fails to offer any monetary relief to Plaintiff and Class Members who purchased the defective Pools.

**II.     Defendant Polygroup North America, Inc.**

39.     Defendant Polygroup North America, Inc. is a Delaware corporation with a principal place of business in Bentonville, Arkansas.

40.     Upon belief or information, until July 2025, Defendant Polygroup North America, Inc. directly or through third-party entities, designed, manufactured, distributed, marketed, advertised and sold at least 912,000 Pools in the United States and Canada, subject to the Recall.

41.     The Pools were sold at stores nationwide, including Walmart, Lowe's, Kmart, Toys "R" Us, Sam's Club, The Home Depot, Big Lots and Costco. They were also sold on Polygroup's website and other internet platforms, including Amazon.com, Wayfair.com, Walmart.com and the Funsicle website.

**III.     Defendant Polygroup Services N.A. Inc.**

42.     Defendant Polygroup Services N.A. Inc. is a Delaware corporation with a principal place of business in Bentonville, Arkansas.

43.     Upon belief or information, until July 2025, Defendant Polygroup Services N.A. Inc. directly or through third-party entities, designed, manufactured, distributed, marketed, advertised, and sold at least 912,000 Pools in the United States and Canada subject to the Recall.

44.     The Pools were sold at stores nationwide, including Walmart, Lowe's, Kmart, Toys "R" Us, Sam's Club, The Home Depot, Big Lots and Costco. They were also sold on Polygroup's website and other internet platforms, including Amazon.com, Wayfair.com, Walmart.com and the Funsicle website.

## JURISDICTION AND VENUE

45.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act because: (1) there are 100 or more putative Class Members; (2) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (3) there is diversity because Plaintiff and at least one Defendant are citizens of different states.

46.     This Court has personal jurisdiction over Defendants because Defendants do substantial business in this State and within this District, receive substantial compensation and profits from the marketing, distribution and sale of the Pools in this District, and engaged in the unlawful practices described in this First Amended Class Action Complaint within this District.

47.     Under 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, as Defendants regularly transact business in this District and Defendants intentionally availed themselves of the laws and markets within this District.

48.     Venue is also proper because Plaintiff is a resident and citizen of this District.

## COMMON FACTUAL ALLEGATIONS

**I.** **Polygroup Markets its Pools and Itself as an Industry Leader in Safety, Contrary to Its Actual Business Practices**

49. Polygroup represents itself as a global, diversified leading manufacturer of above-ground swimming pools that designs, manufactures, markets, distributes and sells outdoor recreation products.[18] Since its founding over 30 years ago, Polygroup emphasizes its manufacturing and design of pool products, presenting itself as a trusted brand in pool safety and quality.[19]

50. Polygroup is a self-proclaimed global consumer goods leader that is "the most trusted authority and world leader in best-in-class, imaginative, trend-driven and tech-smart products that make lives more fun" with an award-winning product portfolio of above-ground pools sold through mass retailers across 50+ countries.[20]

51. In an effort to ensure consumers of the quality and safety of its products, including the Pools, Polygroup proudly markets: "[w]e have been able to ensure quality by owning our entire process, from start to finish;" and "[w]ith a focus on lean manufacturing, we've been able to pass down savings while continuing our tradition of creating top-level products and delivering excellent service." [21]

52. From approximately 2006 through 2025, Polygroup manufactured and sold above-ground Pool models, including but not limited to: *Summer Waves* (sold 2015-2025); *Summer*

---

[18] *See* Polygroup site - About Us, https://polygroupstore.com/about-us/?srsltid=AfmBOorK4m0Or35YfiaaXddXgDKjF3mDZ5y7wDuPu5ybJAEz9eu0wGMA&utm (last accessed Dec. 1, 2025).

[19] *See* Polygroup site, https://www.polygroup.com/ (last accessed Dec. 1, 2025)*.*

[20] *See* Polygroup site, https://www.polygroup.com/ourstory (last accessed Dec. 1, 2025).

[21] *See* Polygroup site, https://www.polygroup.com/factories (last accessed Dec. 1, 2025).

*Escapes* (sold 2006-2015); *Funsicle* (sold 2023-2025); *Sand n Sun* (sold 2008-2011); and *Blue Wave* (sold 2014-2025), all of which featured the including exterior "compression straps" or support belts designed to maintain circular Pool wall stability.[22]

53.     Polygroup marketed the Pools for the intended use of children and adults, stating, for example: "Polygroup's outdoor recreational brand, Funsicle, offers best-selling above ground pools for any space, lifestyle or family size" and "[p]remium-made and affordable products that can be enjoyed by everybody, and any body, all summer long."[23]

54.     On the Funsicle website's FAQ page, Polygroup states:

**Who are Oasis pools best for?**

Funsicle Oasis pools provide the most spacious and luxurious all-in-one experience. They are the popular go-to for families, parties and swimmers who love elevated fun and luxury. Check out our available Funsicle Oasis Pools.[24]

55.     Polygroup further boasts about the QuickSet design of the Oasis Pools, which are subject to the Recall, stating:

Just like the name suggests, the QuickSet pool is the fastest above ground pool to set up and fill. If you're looking for a pool to quickly lounge in or play some water games, it's the fastest and easiest way to have instant outdoor fun![25]

56.     On Amazon.com, where Plaintiff Jamison purchased her Pool, the Pools are marketed as being "reliable over an extended period of time," "made to last" and having a quick and easy setup, as follows:

---

[22] *See* CPSC Press Release.

[23] *See* Polygroup site, https://www.polygroup.com/ (last accessed Dec. 1, 2025); and Funsicle site, https://funsicle.com/pages/we-are-funsicle (last accessed Dec. 1, 2025).

[24] https://web.archive.org/web/20240225004524/https://support.funsicle.com/docs/funsicle-oasis-pools (last accessed Dec. 1, 2025).

[25] *Id.*

SmartConnect technology setup with ultra-strong oval poles for a quick, efficient, and durable assembly for a process that remains smooth and reliable over an extended period of time.[26]

\*\*\*

- LUXURY POOL EXPERIENCE: Ideal for up to 8 people – Perfect for families, socializing & swimming
- SIMPLE SETUP: SmartConnect poles with convenient snap-in design
- MADE TO LAST: Ultra-strong oval metal frame with anti-corrosive matte finish & durable non-phthalates liner[27]

\*\*\*

Setup is a snap, thanks to Funsicle's SmartConnect™ technology: Simply connect the poles together until there's a "click", and the pool's structure will remain sturdy. The modern matte finish on all ultra-strong oval poles protects against scratches and corrosion, making the pool more durable year after year. This premium pool comes with a strong 2-in-1 skimmer filter pump and a pool cover, ensuring the water stays debris-free. For keeping your pool extra clean, the deluxe maintenance kit is provided. A SureStep™ ladder is included to safely enter and exit the pool while a ground cloth can be used for extra puncture protection. The Funsicle Oasis Pool is especially best for growing families, party enthusiasts and active swimmers looking for the best value outdoor pool.[28]

57.     These representations are contrary to the highly complicated and confounding nature of the repair kit subject to the Recall, which is neither easy nor fast, and is inadequate to maintain the structural integrity of the Pools.

58.     Polygroup's marketing of the Pools on its website also explicitly highlights the Pools' safety and durability compared to others in the market, stating, for example, "[b]est-in-class pools designed for outdoor lifestyles, and trusted for being durable, tested, reliable & safe,"

---

[26]https://www.amazon.com/Funsicle-Designer-Outdoor-Swimming-SkimmerPlus/dp/B0BVSKLDD1?ref_=ast_sto_dp&th=1 (last accessed Dec. 1, 2025).

[27]  https://web.archive.org/web/20240103004855/https://www.amazon.com/Funsicle-Ground-SkimmerPlus-Filter-Ladder/dp/B09WF7NMX5

[28]                                 https://www.amazon.com/Funsicle-Ground-SkimmerPlus-Filter-Ladder/dp/B09WF7NMX5 (last accessed Nov. 11, 2025, and no longer available online).

"SmartConnect Pro frame: More durable and easier setup with the T-Cup Connector," and "Ultra-strong oval metal tubes - Stronger than traditional round tubes with protective matte finish."[29]

59.     Similarly, Polygroup utilizes additional safety representations in the Pools' Owner's Manuals further ensuring consumers that the safety and wellbeing of its customers and their children is of paramount concern. By way of example, the *Summer Waves* Owner's Manual has a section titled "Safety Care for Children – Drowning Risk." Shockingly however, neither this, nor any section of any Owner's Manual, gives proper warning or notice that children can use the external compression straps to access the pool. Instead, Polygroup only states the following: "[p]osition furniture (for example, tables, chairs) away from pool, so that children cannot climb on it to gain access to the pool," "[l]ocate pumps and filters in such a way that children cannot climb on them and gain access to the pool" and "[t]oys, chairs, tables, or similar objects that a young child could climb should be at least four feet (4') [121.92 cm] from the pool. The pump filter system should be positioned so as to prevent it from being used as a means of access to the pool by young children."[30] This leads reasonable consumers to believe that if they follow these instructions, any drowning hazard will be eliminated.

60.     Contrary to Polygroup's representations—promising the safety and durability of its Pools—Polygroup chose to ignore the uniform Defect present in each Pool. In doing so, Polygroup revealed that it is, in reality, committed to its own profits—and not to providing Defect-free Pools to its consumers.

---

[29] *Id.*; *see also* https://funsicle.com/collections/above-ground-pools (last accessed Dec. 1, 2025) (emphasis added); https://funsicle.com/products/funsicle-14-ft-oasis-pool (last accessed Dec 1, 2025); https://funsicle.com/products/funsicle-16-ft-oasis-designer-pool-double-rattan (last accessed Dec. 1, 2025).

[30] *See Summer Waves* Owner's Manual, Manual #09C3A4USA031, https://www.usermanuals.au/summer-waves/active-frame/manual?p=3 (last accessed August 22, 2025).

## II.    Polygroup's Actual or Constructive Knowledge of the Defect and Duty to Disclose the Defect

61.     Polygroup knew, or should have known, when it sold the Pools to the public that they suffered from the Defect.

62.     Prior to the design and introduction of the Pools into the consumer marketplace, Polygroup knew, or should have known, that the Pools had similar design elements as those of its above-ground pool competitors that reported drowning incidents beginning in 2007, also subject to the Recall. Consequently, Polygroup was aware of, or should have been aware of, the Pools' Defect. However, Polygroup continued to market, sell and profit from the defective Pools.

63.     Between 2007 and 2022, at least **nine children between the ages of 22 months and 3 years** drowned in pools with the same or similar Defect to the Polygroup Pools. These deaths occurred in six different states: California, Florida, Michigan, Missouri, Texas and Wisconsin.[31]

64.     The CPSC also confirmed at least **three near-drowning incidents** associated with the recalled pool design in 2011 and 2012.[32]

65.     Indeed, the Defect existed throughout the 18-year-span of the Pools' availability. Notably, Polygroup has access to incident data, consumer feedback and industry standards for pool safety and design that should have led to corrective design action far earlier, and long before so many children died.[33] The fact that other above-ground pool models not subject to the Recall did not feature an exterior compression strap indicates that Polygroup was well aware of a corrective and alternative design long before the Recall was issued.

---

[31] *See* CPSC Press Release and Recall Notice.

[32] *Id.*

[33] *Id.*

66.     The known risks and deaths due to the Defect, the decades-long availability of safer designs, Polygroup's dominant position in the above-ground pool market and the likelihood that a substantial portion of defective Pools remain in use, all support Plaintiff's allegations that Polygroup acted with knowledge of the Defect yet still represented, marketed, distributed and sold defective Pools as safe for use by families and children.

67.     During a March 14, 2024, CPSC meeting regarding above ground pool safety, CPSC staff discussed the Defect in the Pools and in-depth investigations ("IDIs") regarding the "design defect hazard whereby support strap serves as a step to climb into the pool." This included:

      a.  "Witnesses regularly watched child 'climb up the strap' to access pool."

      b.  "Caregiver witnessed child stand on strap and climb into pool unattended."

      c.  "Caregivers witnessed child using strap to get into the pool."

      d.  "Parents noticed footprints up the side of pool above the strap."

      e.  "Visible evidence of strap being used as foothold."[34]

68.     Even more egregious, CPSC and Polygroup were aware of drowning incidents with the Polygroup Pools that had the Defect since at least 2011:

**5 Examples of Pools Demonstrating Strap Hazard**

IDI 140812CWE0002

3-year-old male drowned (2014)

Pool brand Summer Escapes (Polygroup) (no pictures available)

Fenced yard Pool ladder next to pool, but not in pool (ladder was dry, and did not appear to have been used recently)

Children were playing in backyard; parents were in the front holding a rummage sale.

---

[34]     2024-03-14-Commissioner-Feldman-Call-with-J-Mohorovic-Meeting-Log.pdf     (last accessed Dec. 1, 2025).

Witnesses said child could climb the side of the pool using the straps meant to hold the poles close to the pool and put his chest on top to play in the water (dirt marks on pool side corroborate) – it is possible that he was trying to retrieve a flotation device he had thrown into the pool.

"It appears that while the ladder was not in the pool, the victim was able to climb a strap connected to the pool's frame and pull himself up high enough to access the water."[35]

***

IDI 120411HCC3601

2 year-old girl drowned (2011)

Poly Pools Pro Series Brand (Polygroup)



Photo 1—A view of the Pro-Series round steel frame pool similar to the incident pool in the investigation. The victim may have used the support strap around the pool as a foothold to gain access to the water. The ladder was not in place at the time of the incident.

Ladder not in place at the time of incident.

2-3 days prior to incident, maternal grandmother saw child stand on support strap and use it to climb into pool – child previously rescued my mom and maternal GM.

---

[35] *Id.*

All doors leading to pool closed and locked. GM's sliding door open, but screen door closed and locked. Child's bedroom window open, but dust undisturbed and space too confined to allow child to exit.

Child had in past used dog door to exit the property.

Strap was compressed at the top consistent with being used as a foothold.[36]

69.     Furthermore, in January 2022, one of Polygroup's competitors, Bestway (USA), Inc., was subject to a wrongful death lawsuit resulting from a death caused by an identical Defect that is found in the Pools.[37] Notably, the Bestway (USA), Inc. pool subject to the lawsuit is also part of the Recall and has an identical Defect to that of the Polygroup Pools subject to this action.

70.     In the Bestway (USA), Inc. lawsuit, the plaintiffs alleged that "[t]he design of the pool rendered it defective. The lack of adequate warnings accompanying the pool rendered it defective. Defendants failed in their acts and omissions related to the pool to use reasonable care to avoid injuring E. M. J. and [p]laintiffs. Defendants breached express warranties made about the pool. The defective nature of the pool and [d]efendants' negligent conduct and breach of warranties proximately caused E. M. J.'s horrific suffering and death by drowning and caused [p]laintiffs to sustain pecuniary loss, including funeral expenses and burial expenses for their daughter E. M. J., as well as loss of consortium, companionship, comfort, guidance, and counsel of their daughter E. M. J."[38]

71.     In March 2025, after a weeklong trial, the **jury ruled that Bestway (USA), Inc. was liable for E.M.J.'s death**, primarily due to its defective pool design and failure to provide adequate warnings about the risk. The verdict found that the 51-inch-tall pool was designed in a

---

[36] *Id.*

[37] *Justice, et al. v. Bestway (USA), Inc., et al.*, No. 4:22-cv-00050-AGF, ECF No. 5 (E.D. Mo. Jan. 18, 2022).

[38] *Id.* at ¶ 2.

way that allowed toddlers to climb into it using a nylon strap wrapped around the pool's exterior —the very design flaw that results in the Defect and the associated risk of drowning at issue here— and ordered Bestway (USA), Inc. to pay $25 million in damages.

72.     Thus, Polygroup knew, or should have known, that the Defect caused the Pools to fail in their regular and intended purpose because they were unsafe, unstable and unsuitable for consumers' and their children's use.

73.     Despite its knowledge, upon information and belief, Polygroup did not remedy or eliminate the Defect in the Pools or remove them from the stream of commerce.

74.     Instead, Polygroup continued to unlawfully advertise the Pools as safe and durable and continued to sell the unreasonably dangerous Pools to consumers.

75.     The Recall, for the reasons stated herein, does not absolve Polygroup of liability, especially given its position as a worldwide leader in the above-ground pool market.

76.     In conjunction with Polygroup's vast experience with above-ground pools, these facts and reports of children's deaths evidence that Polygroup knew, or should have known, of the Defect and the resulting incapability of the Pools to conform to Polygroup's marketing of itself and the Pools as industry leaders in pool safety.

77.     Polygroup had a duty to disclose the Defect and to not conceal the Defect from Plaintiff and Class Members.

78.     Polygroup's failure to disclose, and/or its active concealment of, the Defect places Plaintiff and Class Members and their children at risk of serious injury and/or death.

79.     Had Plaintiff, the Class Members and the consuming public known that the Pools were defective, unsuitable for their marketed and intended use and risked their children's lives, they would not have purchased them.

### III.    The Recall was Untimely and is Inadequate, Ineffective, Creates Further Hazards and was Designed to Fail

80.    As detailed herein, the Recall and corresponding repair kit offered to consumers is wholly inadequate and is designed to fail in that: (1) the rope, by its nature and by its positioning in relation to the Pool and the Pool legs, is wholly inadequate to maintain the structural integrity of the Pool; (2) the instructions for installing the repair kit are prohibitively confusing to reasonable consumers; (3) the Recall fails to offer any monetary relief to Plaintiff and Class Members who purchased the defective Pools; and (4) Polygroup has not removed or destroyed all defective Products available for purchase.

81.    On July 21, 2025, the CPSC announced a voluntary nationwide recall of approximately **5 million** above-ground pool units sold in the United States by Bestway, Intex and Polygroup, which contain the identical Defect (*e.g.*, compression straps on the exterior poles of the above-ground pools that are 48 inches or taller, which pose a drowning hazard). Within this Recall, Polygroup sold 912,000 Pools in the United States and Canada between 2006 and 2025.

82.    However, the Recall is nothing short of perilous due to its inexcusable delay in notice and administration, and the wholly inadequate repair kit. Despite the Defect rendering the Pools unsafe and unsuitable for their intended use, the Pools remained on the market following multiple drowning deaths and near drownings, and today remain on the market after a weak Recall that does not provide proper remedies, includes incredibly complicated and confusing instructions, continues to put consumers and their children at risk and was ultimately designed to fail.

83.    Despite having the capability and expertise to identify and mitigate the Defect, Polygroup failed to redesign the Pools, remove the external strap or issue sufficient consumer warnings for nearly two decades. This delay contributed to the continued availability of defective Pools.

22

84.     As stated by CPSC's Acting Chairman Peter A. Feldmann and Commissioner Douglas Dziak in a July 21, 2025, statement, the Recall was "long-overdue."[39] Further, Chairman Feldmann and Commissioner Dziak of the CPSC summarized the Defect as "a textbook example of a dangerous design flaw, plainly visible and clearly hazardous."[40] Nevertheless, Polygroup continued to manufacture, market and sell the Pools with the Defect.

85.     Polygroup's actions and priorities in delaying the Recall clearly indicate a prioritization of profit over the safety of consumers and children. Polygroup made hundreds of millions of dollars in revenue from sale of the Pools, which were sold nationwide.

86.     Now, with the delayed, ineffective and inadequate Recall, which includes a cut-rate repair kit that adversely impacts the structural integrity of the Pools, Polygroup is able to maintain their large profits at the expense of consumers.

87.     According to the Recall Notice, customers with and without children are instructed to identify if their pool was part of the Recall and submit the model number through the website for approval. If confirmed, the customer was instructed to order a "repair kit" on the next screen.[41]

88.     Although the repair kit is offered at no charge, installation of the repair kit requires a multi-step process.[42] Consumers are required to locate and provide the SKU number of their

---

[39] *See Statement of Acting Chairman Peter A. Feldman and Commissioner Douglas Dziak: Deadly Design in Chinese Pools Triggers Massive Recall; CPSC Leaders Cite Years of Inaction*, https://www.cpsc.gov/About-CPSC/Commissioner/Douglas-Dziak-Peter-A-Feldman/Statement/Statement-of-Acting-Chairman-Peter-A-Feldman-and-Commissioner-Douglas-Dziak-Deadly-Design-in-Chinese-Pools-Triggers-Massive-Recall-CPSC-Leaders-Cite-Years-of-Inaction (last accessed Dec. 1, 2025).

[40] *Id.*

[41] *See* Polygroup Notice Recall; *see also* https://polygrouprecall.com/faq (last accessed Dec 1, 2025).

[42] *See* Polygroup instructional video, https://polygrouprecall.com/repair_kit (last accessed Dec. 1, 2025).

Pool, request the kit from Polygroup and wait for delivery before undertaking repairs. The repair process itself imposes substantial burdens. These corrective measures require significant time and effort and often result in out-of-pocket costs, including potential labor costs for consumers unable to complete the repairs themselves.

89.     As Polygroup admits in the Recall Notice, it does not have technicians available to assist with installation of the repair kit, despite the required multi-step installation process.[43]



*Image 5[44]*

90.     The so-called repair kit consists of a mere rope that allegedly substitutes for the compression straps to maintain the Pool's structural integrity, along with a "pulley" and plastic "C-shaped holders" designed to be placed at the base of each leg of the Pool frame *after removal*

---

[43]     *See* Polygroup instructional video, https://polygrouprecall.com/repair_kit (last accessed Dec. 1, 2025).

[44]     Polygroup Repair Kit guide illustrations, https://polygrouprecall.com/repair_kit.

*of the compression strap*.[45] According to the Recall Notice, "[t]he [compression] strap maintains structural integrity and helps the legs of the [P]ool remain upright. *The strap should only be cut after the repair kit is installed*."[46]

91.     A compression strap holds objects together by applying tension and pressure, providing stability to whatever it is applied. The "compression straps" that are subject to the Defect are aptly named because they help to hold the Pools in their intended shape (*i.e.*, to support the significant weight from water held in the Pools that exert outward force against the Pool walls). Here, the Pools were designed with a compression strap that wraps around the Pools, near the mid-section, to help maintain the structural integrity by supporting the critical load that the water exerts on the Pools' walls.

92.     The Recall parameters instruct consumers to remove this structural compression strap in favor of a rope that wraps around the *bottom* of the Pool. By doing so, this creates a longer unsupported length in the Pool walls. For products under these types of loads—where the significant water weight is held by the Pools' walls and columns—a longer unsupported length lowers the load the Pools' components can withstand. Removing the compression strap in the mid-section of the Pool in favor of a rope at the bottom of the Pool creates a longer, unsupported length. This change in position adversely impacts the structural integrity of the Pools because an increase in the unsupported length of a structural member (the Pool walls and columns) creates greater deflection under a certain load. In other words, an increased unsupported (or unbraced) length makes the Pools more flexible and less stable, decreases the Pools' outer structure's load-bearing capacity and increases its susceptibility to deflection or even buckling. Thus, the rope that

---

[45] *Id.* (emphasis added).

[46] *Id.* (emphasis added).

consumers are instructed to install around the bottom of the Pools *decreases* the strength of the Pools' outer structure, making the Pools less capable of withstanding the outward force from the water.

93.     By removing the compression strap—an essential structural component designed to hold the Pools in their intended shape under substantial force—and replacing it with a rope that lacks the necessary tensile rigidity and appropriate placement, Polygroup's Recall remedy not only fails to fix the Defect, it *creates further hazards*. The increased flexibility and decreased stability of the wall structure make the Pools more susceptible to catastrophic failure, including sudden outward bowing or wall collapse. This is an unreasonable and foreseeable risk introduced solely by the Recall remedy itself.

94.     Remarkably, prior to the Recall, the set-up instructions for the Pools confirms that the support poles should remain perpendicular to the ground to prevent them from sliding around. In an instructional video for setting up the Pools on Amazon.com, Polygroup states that:

> Carefully slide the legs through the liner belt and snap them to each T-fitting. You'll want to make sure the legs are perpendicular to the ground to prevent the pool liner from sliding around. Connect a leg every other t-fitting and then connect the rest.[47]

95.     Yet, the repair kit fails to ensure the support poles stay perpendicular to the ground because, as detailed herein, it lacks the necessary tensile rigidity and appropriate placement.

96.     Furthermore, ultraviolet rays from the sun, particularly direct sunlight to which the rope will be exposed, can cause a breakdown of the fibers that make up the rope, which can weaken the fibers over time, making them prone to fraying. The rope is also likely to loosen over time, and require constant tensioning or could even result in premature failure. Instructions on the

---

[47] https://www.amazon.com/live/video/09a0413abaf94342b6528a779674639e (last accessed Dec. 1, 2025).

importance of and how to ensure continued tension of the rope are not provided in the Recall Notice or repair kit instructions, making it more likely that the "fix" proposed by Polygroup will only result in failure of the Pools.

97.     Polygroup's failure to provide technicians to assist with installation of the repair kit also furthers the likelihood of failure of the Recall. As evidenced by Plaintiff's experience, the instructions provided, Image 5, *supra*, place the onus of ensuring the structural integrity of the Pools upon the consumer in a spectacularly convoluted and intricate manner—the result of which is a very low likelihood that a reasonable consumer could properly install the repair kit as instructed. Given the confusing instructions provided to install the repair kit and the likelihood that consumers will be unable to follow the installation instructions, Polygroup knew, or should have known, that it needed to provide consumers with support in installing the repair kit. However, in continuing its pattern of prioritizing profits over the structural integrity of its Pools and the safety and wellbeing of its consumers and their children, Polygroup refuses to provide consumers with the option to schedule a technician to assist with the installation. Instead, Polygroup provides consumers with an 800 number and an email address—neither of which provide reasonable support to consumers.

98.     A study conducted by Kids in Danger found that product recalls generally have a low level of participation when the recall includes cognitive overload, requires significant time and effort, or offers a repair (versus a refund which has higher participation). Participation also decreases when consumers are asked to repair, deconstruct and/or physically destroy parts of the

product and then to continue using them in this destructed form rather than receiving a safe replacement product.[48]

99.     As noted by a study prepared for the CPSC, response rates for recalls are significantly reduced when it involves cognitive or task overload, and when they do not adequately motivate consumers to participate.[49] Yet, when children's lives are literally at stake, Polygroup thinks confusing instructions, an 800 number and an email address is all it needs to do.

100.    Polygroup's design of the Recall instructions, as well as its choice to require the surgical removal of parts of the Pools by their consumers—who trusted Polygroup to sell them a Product safe and suitable for their and their children's use—renders the Recall's ability to inspire participation a dismal prospect at best. Furthermore, Polygroup's failure to offer consumers with a monetary refund further curtails the Recall's effectiveness resulting in a Recall that is inherently stunted and designed to fail.

101.    Furthermore, even following the Recall, Polygroup has not removed or destroyed all defective Pools available for purchase, exposing unknowing families and their children to the Defect. Below is an example of how some websites still advertised and sold the Recalled Pools with the Defect following the Recall:

---

[48] New KID Report and Consumer Survey Reveal Need for Improvements in Children's Product Recall Process, Kids In Danger, Press Release, (September 12, 2024) https://kidsindanger.org/wpcontent/uploads/2024/09/Recall-Effectiveness-and-Survey-Report-PressRelease.pdf#:~:text=%5BChicago%2C%20IL%5D%20%E2%80%93%20Kids%20In%20Danger%20%28KID%29%2C%20a,new%20reports%20looking%20to%20better%20assess%20recall%20effectiveness and https://kidsindanger.org/wp-content/uploads/2024/09/KID-ConsumerRecall-Survey-Report.pdf (last accessed Oct. 9, 2025).

[49] *Recall Effectiveness Research: A Review and Summary of the Literature on Consumer Motivation and Behavior*, (July 2003), CPSC.gov, https://www.cpsc.gov/s3fs-public/pdfs/foia_RecallEffectiveness.pdf, at page 25 (last accessed Dec. 1, 2025).



*Image 6*[50]

102.    Polygroup intentionally chose the route more profitable for its business and assumingly less damaging to its branding and advertised commitment to safe and durable Pools.

103.    Further, it is well known that product recalls generally have a low level of participation when consumers are not provided with a full remedy:

> Generally, firms should offer full remedy to achieve high recall effectiveness. While this seems like an obvious suggestion, our data shows that firms do not always follow that suggestion, even when the product and defect are the same. This is particularly puzzling as research also indicates that offering full remedy is the

---

[50] The Funsicle website was selling a round, 48in. Funsicle above-ground pool for $649.99. As shown in the image, the compression straps are external to the vertical poles on the pool wall, displaying the hazard. The arrows in the image were included to demonstrate the Defect. https://funsicle.com/products/funsicle-14-ft-oasis-designer-pool-double-rattan (last accessed August 22, 2025).

dominant strategy to preserve customer satisfaction after a product recall (Mafael *et al*., 2022) and protects firm reputation after the recall (Germann *et al*., 2014).[51]

104.    Despite (1) the knowledge that full remedies lead to higher recall rates, (2) the serious risk the Defect presents, and (3) the additional risks the repair kit presents, Polygroup offered a minimal remedy in its Recall, ensuring lower participation rates that put more consumers and their children at risk as the Pools remain in homes throughout the country.

105.    Polygroup's refusal to provide refunds, replacements or professional repairs underscores their ongoing disregard for consumer safety and demonstrates that the Recall remedy fails in its essential purpose.

106.    A recall does not moot economic loss claims where the remedy is inadequate, incomplete or fails to restore product value. Polygroup's Recall remedy is materially inadequate, leaving consumers with unsafe, unusable and valueless Pools.

107.    This class action seeks to hold Polygroup accountable for their dangerous design, decades of concealment and their knowingly inadequate Recall remedy.

108.    Polygroup acted with reckless disregard and conscious indifference to known, life-threatening risks—risks to children.

## IV.    The Unconscionability and Failure of Essential Purpose of the Warranties

109.    Polygroup expressly warranted via Owner's Manuals, advertisements, pamphlets, brochures, circulars, samples and models that the Pools are fit for the ordinary purpose for which they are sold.

---

[51] Sascha Raithel, *et al*., *Product recall effectiveness and consumers' participation in corrective actions, Journal of the Academy of Marketing Science* (Aug. 19, 2023) (online at https://link.springer.com/article/10.1007/s11747-023-00967-x).

110.     Prior to the point of sale, Polygroup also warrants that its Pools are safe and durable, as evidenced by its advertisements and warning in the Owner's Manuals regarding the removal of the ladder and objects adjacent to the Pools when not in use.

111.     Moreover, Polygroup's Pools are covered by the warranty of merchantability, which guarantees that a seller who deals in particular goods as their occupation promises that the goods sold are fit for their ordinary purpose for which they are intended to be used.

112.     Polygroup clearly intended its warranties to apply directly to these consumers who depend on Polygroup to provide safe and durable Pools.

113.     Polygroup manifests its intent that its warranties apply to Plaintiff and Class Members as third-party beneficiaries in its product literature. The warranty begins on the date of the consumers' purchases and excludes commercial, non-residential use.

114.     However, despite these warranties, as described herein, the Pools contain a uniform Defect prior to and at the time of purchase, causing them to commonly and consistently fail in their primary purpose.

115.     Polygroup knew, or should have known, of the Defect and of the dangers posed by its Pools prior to and at the time of sale of the Pools to consumers, including from (a) at least two child drownings in the Polygroup pools in 2011 and 2014, (b) its design of the Pools, (c) knowledge of industry pool safety guidance and recommendations, (d) receipt of CPSC complaints, (e) prior wrongful death litigation with the similarly designed Bestway pool, and (f) warranty claims made directly to Polygroup.

116.     Plaintiff and Class Members, on the other hand, had no way of knowing of the Defect or the dangers presented by the Pools prior to purchase.

31

117.     The express warranties relating to the Pools are collectively and individually the result of oppression and are so one-sided and overly harsh that they are both procedurally and substantively unconscionable.

118.     Polygroup was in a superior position to know of, remedy, and disclose the Defect in its Pools to Plaintiff and Class Members, who could not have known of their defective nature at the time of purchase.

119.     There was a substantial disparity between the parties' bargaining power such that Plaintiff was unable to derive a substantial benefit from these express warranties.

120.     A disparity existed because Polygroup was aware that the Pools contained the Defect, while Plaintiff and Class Members had no notice or ability to detect said Defect, and had no reason to believe such a Defect existed due to Polygroup's marketing of itself and the Pools as industry leaders in pool safety.

121.     Polygroup abused the special relationship it created with consumers through its marketing and through its designing, manufacturing, marketing and selling the Pools as safe and durable. Consumers had no choice other than to trust Polygroup's representations and thus accept the terms of the 90-day warranties.

122.     Polygroup knew Plaintiff and Class Members had no notice or ability to detect the Pools' uniform Defect, and Polygroup knew that Plaintiff and Class Members would bear the cost of remedying or replacing the Pool.

123.     Polygroup knew of the Defect at the time of sale, while Plaintiff and Class Members had no ability to discover the Defect at the time of sale.

124.     Polygroup was in breach of the warranties at the time Plaintiff and Class Members purchased the Pools because they were defective when they came off the assembly line. Thus, at

the time the defective Pools were sold to consumers, Polygroup was already in violation of its warranties.

125.    Polygroup sold the Pools knowing that they were not capable of being repaired or replaced with non-defective Pools.

126.    Plaintiff and Class Members would have negotiated better terms in the purchase of the Pools had they been aware of the Defect or would not have purchased them at all.

127.    Polygroup sold the Pools with knowledge of the Defect and of the fact that the Pools failed to conform to Polygroup's safety and marketing representations, and failed to be safe and suitable for the Pools' foreseeable and intended purpose and use.

128.    The terms of the express warranties unreasonably favor Polygroup over Plaintiff and Class Members.

129.    In addition, the express warranties failed in their essential purpose in that: (1) the Defect existed at the time the Pools left the manufacturing facility; and (2) Polygroup failed to disclose its knowledge of the Defect at any time and even when contacted by customers about the Pools.

130.    Accordingly, recovery by Plaintiff and Class Members is not restricted to the promise in any express warranties, and they seek all remedies that may be allowed.

## V.    <u>Injury to the Public at Large, the Potential for Future Harm and the Need for Injunctive Relief</u>

131.    Polygroup's wrongful conduct harms the public-at-large. Namely, by misrepresenting the Pools as safe and durable and by failing to disclose that the Pools contain a uniform Defect, which exposes consumers and their children to the risk of serious injury and death, the harm extends to all Class Members and consumers who may purchase the Pools.

132. In addition, because, as described, Polygroup continues to encourage consumers to use the Pools, Polygroup's actions pose an ongoing risk to the public.

133. As such, a public injunction is necessary to enjoin Polygroup's continued harm of consumers and the public-at-large.

134. Similarly, should Polygroup not be enjoined from its unlawful and deceptive conduct, Plaintiff and Class Members face the potential for irreparable future harm as a result of continuing to use the Pools which are not safe or durable but instead either contain the original uniform Defect or contain a new defect from the purported repair—both of which continue to expose consumers and their children to the risk of serious injury and death.

## **TOLLING AND ESTOPPEL OF THE STATUTE OF LIMITATIONS**

135. Polygroup continuously manufactured, marketed and sold the defective Pools to unsuspecting customers. At all relevant times, it continuously represented that the Pools were fit for their intended use.

136. By continuously repeating these false representations and failing to disclose that the Pools contain the Defect, Polygroup engaged in a continuing wrong sufficient to render inapplicable any statute of limitations that Polygroup might seek to apply.

137. As the designer and manufacturer of the Pools, Polygroup had actual knowledge since at least the 2011 and 2014 drowning deaths in the Polygroup Pools that the Pools are defectively designed.

138. Thus, at all relevant times, Polygroup indisputably possessed continuous knowledge of the Defect, and yet Polygroup knowingly continued to allow the sale of the Pools. Plaintiff's and other Class Members' claims are therefore not time-barred.

139.     Further, the Recall Notice and the repair kit instructions amount to continued false representations. They mislead consumers into believing the repair kit is an adequate remedy and makes the Pools compliant with Polygroup's representations about the safety of the Pools when, in reality, the repair kit introduces additional hazards that present risks of harm to consumers and their children.

140.     Moreover, even after the Recall, there is no evidence that news of the Polygroup Recall Notice or Defect reached all Pool owners.

141.     Plaintiff and other Class Members could not reasonably discover and could not know facts that would cause a reasonable person to suspect that Polygroup knowingly failed to disclose material information within its knowledge about the Defect to consumers in the United States and elsewhere. Therefore, no potentially relevant statute of limitations applies.

142.     Throughout the time period relevant to this action, Polygroup concealed from, and failed to disclose to, Plaintiff and the other Class Members vital information about the Defect described herein.

143.     Polygroup kept Plaintiff and the other Class Members ignorant of vital information essential to pursue their claims. As a result, neither Plaintiff nor the other Class Members could have discovered the Defect, even upon reasonable exercise of due diligence.

144.     Polygroup had a duty to disclose to Plaintiff and the Class Members the true quality and nature of the Pool and that the Pools have a uniform Defect.

145.     Instead, Polygroup continued to market the Pools as suitable for their intended purpose to further profit from the sale of its popular Pool products and prevent Plaintiff and other Class Members from seeking redress.

146.     Plaintiff and the other Class Members justifiably relied on Polygroup to disclose the true nature of the Pool they purchased and/or owned because the Defect was not discoverable by Plaintiff and the other Class Members through reasonable efforts.

147.     Polygroup's affirmative acts of concealment, including its continued marketing of the defective Pool as safe, reliable and fit for its intended purpose while possessing knowledge of the hazard, further support estoppel and tolling of any applicable limitations period.

### FED. R. CIV. P. 9(b) ALLEGATIONS

148.     Although Polygroup is in the best position to know information about the design, manufacture, distribution and sale of the Pools as well as the facts surrounding the Defect during the relevant timeframe, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

149.     **WHO**: Polygroup made material misrepresentations and/or omissions of fact through its marketing, on its website, product packaging, warranties, Owner's Manuals and labeling, which include statements that the Pools are not defective and are safe and suitable for their intended use.

150.     **WHAT**: Polygroup's conduct here was, and continues to be, fraudulent because it omitted and concealed that the Pools are defective, unsafe and unsuitable for their intended use in that the Pools contain a uniform Defect. Polygroup's employees and representatives made affirmative misrepresentations as a part of Polygroup's marketing of the Pools to Plaintiff and Class Members at the time of purchase regarding the same qualities. Polygroup failed to adequately warn Plaintiff and Class Members that the Pools contained the Defect, were not suitable for their intended use and the Pools' Defect have caused injury and death. Further, Polygroup's conduct has the effect of deceiving Plaintiff and Class Members into believing that the Pools are not

defective, and instead, are suitable for their intended use. Polygroup knew, or should have known, the existence of the Defect is material to the reasonable consumer, including Plaintiff and Class Members, and impacts their purchasing decisions. Yet Polygroup omitted a necessary warning that the Pools are defective and are unsafe and unsuitable for their intended use. Further, Polygroup knew, or should have known, that the Recall Notice and repair kit furthered its deceptive representations as to the safety of the Pools.

151. **WHEN**: Polygroup made material misrepresentations and/or omissions during the putative class periods and at the time Plaintiff and Class Members purchased the Pools, prior to and at the time Plaintiff and Class Members made claims after realizing the Products contained a uniform Defect, prior to and at the time Polygroup disseminated the Recall Notice and the corresponding repair kits and continuously throughout the applicable class periods.

152. **WHERE**: Polygroup's marketing message and omissions were uniform and pervasive, carried through material misrepresentations and omissions on the Pools' labeling and packaging, its website(s), the Recall Notice and the websites of authorized retailers.

153. **HOW**: Polygroup made material misrepresentations of material facts regarding the Pools, including, but not limited to, the existence of the uniform Defect and the associated risks therein; the sufficiency of the Recall remedy; and the further hazards the Recall remedy presents.

154. **WHY**: Polygroup made the material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiff, Class Members and all reasonable consumers to purchase and/or pay a premium price for the Pools, resulting in Polygroup profiting by selling the Pools to hundreds of thousands of consumers.

155.    **INJURY**: Plaintiff and Class Members purchased, paid a premium or otherwise paid more for the Pools, which they would not have done absent Polygroup's misrepresentations and omissions.

## CLASS ACTION ALLEGATIONS

156.    Plaintiff brings this action individually and on behalf of all others similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3), on behalf of herself and the members of the following proposed nationwide class ("Nationwide Class"):

> During the fullest period allowed by law, all persons who purchased a Pool in the United States for personal use and not for resale.

157.    Plaintiff brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3), on behalf of herself and the members of the following proposed multi-state class ("Multi-State Consumer Protection Class"):

> During the fullest period allowed by law, all persons who purchased a Pool in the state of Illinois or any state with similar laws[52] for personal use and not for resale.

---

[52] While discovery may alter the following, Plaintiff asserts that the other states with similar consumer protection laws under the facts of this case include, but are not limited to: Alaska (AS §§ 45.50.471, *et seq*.), Arkansas (Ark. Code §§ 4-88-101, *et seq*.), California (Cal. Bus. & Prof. Code §§ 17200, *et seq*.), Connecticut (Conn. Gen. Stat. §§ 42-110, *et seq*), Delaware (Del. Code tit. 6, §§ 2511, *et seq*.), District of Columbia (D.C. Code §§ 28-3901, *et seq*.), Florida (Fla. Stat. §§ 501.201, *et seq*.), Hawaii (Haw. Rev. Stat. §§ 480-1, *et seq*.), Illinois (815 ICLS §§ 501/1, *et seq*.), Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq*.), Michigan (Mich. Comp. Law §§ 445.901, *et seq*.), Minnesota (Minn. Stat. §§ 325F.67, *et seq*.), Missouri (Mo. Rev. Stat. §§ 407.010, *et seq*.), New Jersey (N.J. Stat. §§ 56:8-1, *et seq*.), New York (N.Y. Gen. Bus. Law. §§ 349, *et seq*. and §§ 350, *et seq*.), Rhode Island (R.I. Gen. Laws §§ 6-13.1-1, *et seq*.), Vermont (Vt. Stat. tit. 9, §§ 2451, *et seq*.), Washington (Wash. Rev. Code §§ 19.86.010, *et seq*.), and Wisconsin (Wis. Stat. §§ 100.18, *et seq*.). *See Langan v. Johnson & Johnson Consumer Companies, Inc*., 897 F.3d 88, 96 (2d Cir. 2018); *Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 201, 204 (W.D.N.Y. 2020); *see also Benson v. Newell Brands, Inc.*, No. 1:19-cv-06836, 2021 WL 5321510, *9-10 (N.D. Ill. Nov. 16, 2021) (certifying a similar multi-state consumer protection class); *id*. at ECF No. 337 (Dec. 1, 2025) (denying motion to decertify the multi-state consumer protection class).

158.     Plaintiff further brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) on behalf of herself and the members of the following class ("Illinois Class"):

> During the fullest period allowed by law, all persons who purchased a Pool in the State of Illinois for personal use and not resale.

159.     Unless otherwise specified, all references in this First Amended Class Action Complaint to "Classes" or the "Class" refer collectively to the Nationwide Class, Multi-State Consumer Protection Class and Illinois Class.

160.     Members of the Nationwide Class, Multi-State Consumer Protection Class and Illinois Class are referred to collectively as the "Class Members."

161.     Excluded from the Class are: (a) any officers, directors or employees, or immediate family members of the officers, directors or employees of Polygroup or any entity in which Polygroup has a controlling interest; (b) any legal counsel or employee of legal counsel for the Polygroup; (c) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members; and (d) any person who has previously settled claims related to the Defect with Polygroup.

162.     This action seeks only injunctive, declaratory and other equitable relief and economic damages; neither the Plaintiff or the Classes seek recovery for personal injury or wrongful death.

163.     Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

164.     **Numerosity**. Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains currently unknown, Polygroup sold nearly one million Pools throughout the United States and

39

upon information and belief, there are thousands, if not hundreds of thousands, of putative Class Members. Moreover, the number of members of the Class may be ascertained from Polygroup's books and records, as well as third-party retailers. Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

165.     **Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist for all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

   a.     Whether the Pools contain the Defect;

   b.     Whether Polygroup knew, or should have known, of the Defect;

   c.     Whether Polygroup had a duty to disclose the Defect to consumers;

   d.     Whether Polygroup's conduct violated the consumer protection statutes as alleged herein;

   e.     Whether Polygroup failed to adequately warn Plaintiff and Class Members that the Pool contained the Defect and a drowning hazard;

   f.     Whether Polygroup's representations and omissions were misleading or deceptive;

   g.     Whether Polygroup omitted or failed to disclose material information to Plaintiff and Class Members regarding the Pools;

   h.     Whether Polygroup concealed from and/or failed to disclose to Plaintiff and Class Members that the Pools contain the Defect;

   i.     Whether the Recall Notice and repair kit representations and omissions were misleading or deceptive;

   j.     Whether Polygroup failed to adequately warn Plaintiff and Class Members that the repair kit presented further hazards to consumers;

   k.     Whether Polygroup breached express and/or implied warranties regarding the Pools;

l.    Whether Polygroup's conduct was unfair or illegal;

m.    Whether Plaintiff and Class Members suffered economic injury;

n.    Whether Polygroup's conduct violates public policy;

o.    Whether Polygroup was unjustly enriched;

p.    Whether Plaintiff and putative members of the Class suffered an ascertainable loss of monies or property or other value as a result of Polygroup's acts and omissions of material facts;

q.    Whether Plaintiff and members of the putative Class are entitled to monetary damages and, if so, the nature of such relief; and

r.    Whether Plaintiff and Class Members are entitled to injunctive, declaratory or other equitable relief including modification of the Recall.

166.    **Typicality.** Plaintiff's claims are typical of those of the absent Class Members in that Plaintiff and the Class Members each purchased and used the Pools, and each sustained damages arising from Polygroup's wrongful conduct as alleged herein. Plaintiff shares the above facts and legal claims or questions with the putative Class Members. Plaintiff and all members of the putative Class are similarly affected by Polygroup's common misconduct as alleged herein. Plaintiff and all members of the putative Class sustained monetary and economic injuries including, but not limited to, ascertainable losses resulting from Polygroup's deceptive representations and omissions concerning the Pool, the existence of the Defect, the risks attributable to the Defect and the Pool's fitness for its intended purpose, as well as the proposed repair's ability to function as intended.

167.    **Adequacy.** Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Class. Plaintiff retained counsel with substantial experience in handling complex, class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and her counsel are committed to the vigorous

prosecution of this action. Plaintiff has no conflicts of interest or interests adverse to those of putative Class.

168.     **Insufficiency of Separate Actions**. Absent a class action, Plaintiff and members of the Class will continue to suffer the describe harm, for which they would have no remedy. Even if individual consumers could bring separate actions, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Polygroup.

169.     **Injunctive/Declaratory Relief**: The elements of Rule 23(b)(2) are met. Polygroup will continue to commit the alleged unlawful practices, and Plaintiff and Class Members will continue to be deceived by Polygroup's representations and omissions regarding the inadequate Recall. Polygroup acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief, public injunctive relief and corresponding declaratory relief are appropriate respecting the Class as a whole. Injunctive relief, and specifically public injunctive relief, are necessary in this action.

170.     Plaintiff further seeks injunctive and declaratory relief requiring Polygroup to cease its unfair, deceptive and unlawful conduct, including a complete recall of the Pools and full reimbursement for the Pools' full purchase price.

171.     Plaintiff also seeks a declaration that the Pools suffer from the Defect and that all warranties cover the Defect, which existed at the time of sale of the Pool to consumers, and which was known to Polygroup and unknown to consumers.

172. Plaintiff and Class Members were harmed and will experience irreparable future harm should Polygroup's conduct not be enjoined because they will continue to use the Pools, which still contain the Defect and present further hazards even if the repair kit is installed as instructed by the Recall.

173. **Superiority**. A class action is superior to any other available method for the fair and efficient adjudication of the present controversy for at least the following reasons:

    a.    The damages suffered by each individual member of the putative Class do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Polygroup's conduct;

    b.    Even if individual members of the Class had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

    c.    The claims presented in this case predominate over any questions of law or fact affecting individual members of the Class;

    d.    Individual joinder of all members of the Class is impracticable;

    e.    Absent a Class, Plaintiff and members of the putative Class will continue to suffer harm as a result of Polygroup's unlawful conduct; and

    f.    This action presents no manageability concerns that would impede its treatment as a class action and, in fact, is the most appropriate and efficient method by which Plaintiff and the members of the putative Class can obtain redress for the harm caused by Polygroup's misconduct.

174. In the alternative, the Class may be certified for the following reasons:

    a.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication concerning individual members of the Class, which would establish incompatible standards of conduct for Polygroup; and

    b.    Adjudications of claims of the individual members of the Class against Polygroup would, as a practical matter, be dispositive of the interests of other members of the putative Class who are not parties

to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests.

## CAUSES OF ACTION

## COUNT I

### VIOLATION OF STATE CONSUMER PROTECTION STATUTES
*(By Plaintiff, individually, and on behalf of the Multi-State Consumer Protection Class)*

175.    Plaintiff, individually, and on behalf of the Multi-State Consumer Protection Class, realleges paragraphs 1 through 174 as if fully set forth here.

176.    Plaintiff and the Multi-State Consumer Protection Class members were injured as a result of Polygroup's violations of the state consumer protection statutes listed in paragraph 157, footnote 52, *supra*. These state consumer protection statutes provide a basis for redress to Plaintiff and the Multi-State Consumer Protection Class based on Polygroup's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

177.    Polygroup's conduct, as alleged above, violates the consumer protection laws of each of the jurisdictions encompassing the Multi-State Consumer Protection Class.

178.    Polygroup's marketing of the Pools violates these prohibitions by deceiving consumers into believing that the Pools are fit for their intended purpose despite the presence of the Defect.

179.    Polygroup engaged in fraudulent, unfair and/or deceptive conduct which creates the likelihood of confusion or misunderstanding in violation of applicable law.

180.    Specifically, Polygroup advertised in a misleading and deceptive manner that the Pools are fit for their intended purpose and did not contain the Defect that presents the associated risks. Polygroup chose to package, label and market the Pools in this way to impact consumer choices, extract price premiums and gain market dominance, as it is aware that all reasonable

44

consumers who purchase the Pools would be impacted by, and would reasonably believe, its false and misleading representations.

181.     Polygroup intended for Plaintiff and Multi-State Consumer Protection Class Members to reasonably rely upon the material misrepresentations concerning the true nature of the Pools.

182.     Polygroup's misrepresentations and other deceptive conduct were likely to deceive and cause misunderstanding and/or, in fact, did cause Plaintiff and Multi-State Consumer Protection Class Members to be deceived about the true nature of the Pool.

183.     Further, despite Polygroup's knowledge of material facts concerning the existence of the serious safety risks posed by the Pools, Polygroup actively concealed the serious safety risks from consumers by failing to disclose the serious safety risks to consumers.

184.     Polygroup knew, or otherwise should have known, that the Pools contained the Defect and posed serious safety risks based upon: (1) Polygroup's own internal testing, data and surveys; (2) Polygroup's Recall; (3) the child drowning deaths in Polygroup Pools with the Defect in 2011 and 2014; (4) the multiple incident reports dated from 2007; and (5) the $25 million lawsuit in 2019 for the drowning of the 2-year-old girl for which Bestway (USA) Inc. was found liable concerning similar above-ground pool models with the same Defect.

185.     Polygroup omitted, concealed and failed to disclose to consumers that the Pools pose serious safety risks to children, including that the Pools' design is inherently defective; unreasonably dangerous; not fit to be used for its intended purpose; and/or is capable of causing serious injury and death to children. Rather than disclose this information, Polygroup marketed the Pools as safe and suitable for their intended purpose.

186.     The facts concealed and/or not disclosed by Polygroup to consumers, including Plaintiff and other Class Members, were material, in part, because they concerned an essential aspect of the Pool, including the intended use and safety. Such facts affect the conduct of purchasers, and a reasonable person would have considered those facts to be important in deciding whether to purchase the Pools. Rather than disclose this information, Polygroup marketed the Pools as complying with safety standards and regulations, with the utmost quality of manufacturing and design.

187.     Furthermore, as described herein, prior to and after distributing the Recall Notice, Polygroup knew that the Recall was wholly inadequate and presented new hazards to consumers and their children. Nonetheless, Polygroup, through its misrepresentations, misleading statements and omissions detailed above, disseminated the inadequate Recall, in order to increase its own profits, and garner market share, while putting the lives of more consumers and their children at risk.

188.     Polygroup intentionally concealed and/or failed to disclose such material facts for the purpose of inducing consumers, including Plaintiff and other Class Members, to purchase the Pools.

189.     As a direct and proximate result of Polygroup's misrepresentations, Plaintiff and Multi-State Consumer Protection Class Members suffered ascertainable losses.

190.     Had they been aware of the true nature of the Pools, Plaintiff and Multi-State Consumer Protection Class Members either would have paid less for the Pools or would not have made the purchases at all.

191.     Pursuant to the above states' unfair and deceptive practices laws, Plaintiff and Multi-State Consumer Protection Class Members are entitled to recover compensatory, restitution,

punitive and special damages, including, but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted by relevant law.

## COUNT II

**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT**
**815 ILCS 505/1, *et seq.* ("ICFA")**
*(By Plaintiff, individually, and on behalf of the Illinois Class)*

192. Plaintiff, individually, and on behalf of the Illinois Class, realleges paragraphs 1 through 174 as if fully set forth here.

193. Plaintiff and Illinois Class Members are "persons" within the context of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1(c).

194. Polygroup is a "person" within the context of the ICFA, 815 ILCS 505/1(c).

195. At all times relevant hereto, Polygroup was engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f).

196. Plaintiff and the proposed Class are "consumers" who purchased the Pools for personal, family or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

197. The ICFA prohibits engaging in any "unfair or deceptive acts or practices … in the conduct of any trade or commerce…." *See* ICFA, 815 ILCS 505/2.

198. The ICFA prohibits any deceptive, unlawful, unfair or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation or the concealment, suppression or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act. *See* 815 ILCS § 505/2.

199.    Plaintiff and the other Illinois Class Members reasonably relied upon Polygroup's representation that the Pools were safe for personal use and did not present a drowning hazard. Additionally, Polygroup concealed the life-threatening Defect even after knowing of prior drowning incidents at its Pools and their competitors' pools of similar build and structure.

200.    Polygroup's conduct, as described herein, took place within the State of Illinois and constitutes unfair or deceptive acts or practices in trade and commerce, violating 815 ICFA 505/1, *et seq.*

201.    Polygroup violated the ICFA by representing that the Pools have characteristics or benefits that they do not have. *See* 815 ILCS 505/2; 815 ILCS 510/2(7).

202.    Polygroup did not intend to sell the Pools as advertised, in violation of 815 ILCS 505/2 and 815 ILCS 510/2(9).

203.    Polygroup engaged in fraudulent and/or deceptive conduct which creates a likelihood of confusion or misunderstanding in violation of 815 ILCS 505/2; 815 ILCS 510/2(3).

204.    Polygroup's deceptive and unfair conduct occurred primarily and substantially in Illinois because:

(a)    Polygroup marketed, promoted, and sold the Pools to Illinois consumers;

(b)    Plaintiff Jamison purchased and used the Pool in Illinois;

(c)    the economic injury was suffered in Illinois; and

(d)    the same misrepresentations and omissions were disseminated uniformly to Illinois consumers.

205.    Polygroup's conduct violates the fundamental Illinois public policy of preventing concealed safety hazards in consumer products.

206. Polygroup violated the ICFA by representing that the Pools were safe, suitable for household use and free of material defects, while concealing the known drowning hazard created by the external compression strap.

207. Polygroup's omissions were material because the Defect presented a life-threatening safety risk to children and rendered the Pools unfit for their ordinary purpose. No reasonable consumer would knowingly purchase a pool containing a latent climbing foothold that enabled unsupervised child access to the pool.

208. Prior to selling the Pools, Polygroup knew, or should have known, of the Defect based on fatal drowning incidents, near-drownings, warranty claims, engineering evaluations and internal safety data. Despite this knowledge, Polygroup failed to warn consumers, redesign the Pools, or issue an adequate recall.

209. Furthermore, as described herein, prior to and after distributing the Recall Notice, Polygroup knew that the Recall was wholly inadequate and created new hazards for consumers and their children. Polygroup also knew that the Recall's design and implementation were inconsistent with industry guidance and standards. Nonetheless, Polygroup, through its misrepresentations, misleading statements and omissions detailed herein, disseminated the inadequate Recall in order to increase its own profits and garner market share, all while putting the lives of more consumers and their children at risk.

210. Plaintiff and Class Members were damaged economically as a proximate result of Polygroup's violations of the ICFA and suffered damages as a direct and proximate result of purchasing the Pools.

211. As a direct and proximate result of Polygroup's violations of the ICFA, as set forth *supra*, Plaintiff and the Illinois Class Members suffered ascertainable losses of money caused by

Polygroup's misrepresentations and material omissions regarding the Defect inherent to the Pools as well as through the inadequate Recall.

212.    Had they been aware of the Pools' Defect or that Polygroup would issue an inadequate Recall, Plaintiff and Class Members either would have paid less for the Pools or would not have purchased them at all.

213.    While the joint CPSC Press Release was placed on July 21, 2025, Polygroup has yet to provide any monetary remedy for their ICFA violations stated herein.

214.    Polygroup's conduct was intentional, malicious and demonstrated a reckless disregard for consumer safety, warranting statutory and punitive damages.

215.    Based on Polygroup's unfair and/or deceptive acts or practices, Plaintiff and the Illinois Class Members are therefore entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs and attorney's fees, under 815 ILCS 505/10a.

## COUNT III

### VIOLATIONS OF THE ILLINOIS DECEPTIVE TRADE PRACTICES ACT
### 815 ILCS 505/1, *et seq.*
### *(By Plaintiff, individually, and on behalf of the Illinois Class)*

216.    Plaintiff individually, and on behalf of the Illinois Class, realleges paragraphs 1 through 174 as if fully set forth here.

217.    The Illinois Deceptive Trade Practices Act, 815 ILCS 505/1, *et seq.* ("UDTPA") prohibits deceptive trade practices in the course of a business, vocation or occupation. 815 ILCS 510/2(a).

218.    In the course of its business, Polygroup, through itself, its agents, employees and/or subsidiaries, violated the Illinois UDTPA by knowingly and intentionally misrepresenting,

omitting, concealing and failing to disclose material facts regarding the reliability, safety and performance of the Pools, as detailed herein.

219.    Specifically, by misrepresenting the Pools as safe and suitable for their marketed and intended use, and failing to disclose and actively concealing the dangers and risk posed by the Defect and through the issuance of a wholly inadequate Recall, Polygroup engaged in one or more of the following unfair or deceptive business practices prohibited by 815 ILCS 510/2(a):

      a.    Representing that the Pools have characteristics, uses, benefits and qualities which they do not have;

      b.    Representing that the Pools are of a particular standard, quality and grade when they are not;

      c.    Advertising the Pools with the intent not to sell them as advertised; and

      d.    Engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding.

815 ILCS 510/2(a)(5), (7), (9) and (12).

220.    Polygroup's unfair or deceptive acts or practices, including misrepresentations, concealments, omissions and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Plaintiff and Class Members, about the true safety and reliability of the Pools, the quality of the Pools and the true value of the Pools.

221.    Polygroup's scheme and concealment of the true characteristics of the Pools were material to the Plaintiff and Class Members, as Polygroup intended.

222.    Had they known the truth, Plaintiff and Class Members would not have purchased Pools or would have paid significantly less for them.

223. Plaintiff and Class Members had no way of discerning that Polygroup's representations were false and misleading, or otherwise learning the facts that Polygroup concealed or failed to disclose.

224. Plaintiff and Class Members did not, and could not, unravel Polygroup's deception on their own.

225. Polygroup had an ongoing duty to the Plaintiff and Class Members to refrain from unfair or deceptive practices under the Illinois UDTPA in the course of its business.

226. Specifically, Polygroup owed the Plaintiff and Class Members a duty to disclose all the material facts concerning the Pools because Polygroup possessed exclusive knowledge, intentionally concealed the true characteristics of the Pools from the Plaintiff and Class Members and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

227. Plaintiff and Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Polygroup's concealment, misrepresentations and/or failure to disclose material information.

228. Polygroup's violations present a continuing risk to the Plaintiff and Class Members, as well as to the general public.

229. Polygroup's unlawful acts and practices complained of above affect the public interest.

230. Pursuant to 815 ILCS 510/3, the Plaintiff and Class Members seek an order enjoining Polygroup's unfair or deceptive acts or practices and any other just and proper relief available under the Illinois UDTPA.

## COUNT IV

### BREACH OF EXPRESS WARRANTY
### 810 Ill. Comp. Stat. 5/2-313, *et seq.*
### *(On behalf of Plaintiff, individually, and on behalf of the Illinois Class)*

231.    Plaintiff, individually, and on behalf of the Illinois Class, realleges paragraphs 1 through 174 as if fully set forth herein.

232.    Illinois adopted the Uniform Commercial Code ("UCC"), including U.C.C. § 2-313, which covers express warranties. *See* 810 Ill. Comp. Stat. 5/2-313.

233.    That section of the UCC provides that "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." U.C.C. § 2-313(1)(a). Further, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the good shall conform to the description." *Id*. § 2-313(1)(b).

234.    Polygroup expressly warranted, in a uniform 90-day written warranty ("Warranty"), that the Pools were free from manufacturing defects and fit for use as above-ground pools. Each Pool was sold with the same or substantially similar written Warranty.

235.    Polygroup further represented—on packaging, in manuals and in product listings— that the Pools were safe, functional above-ground pools suitable for ordinary home use.

236.    Polygroup made representations that the Pools were safe, functional above-ground pools suitable for ordinary home use to induce Plaintiff and Class Members to purchase the Pools, which did in fact induce Plaintiff and Class Members to purchase the Pools.

237.    The Pools did not conform to these express warranties. As alleged, the Pools contain a dangerous design Defect at the time of sale that renders them unsafe and unusable for

their ordinary and warranted purpose. Polygroup's own Recall materials confirm that the Pools, as manufactured and sold, cannot be safely used.

238.    Plaintiff and Class Members have privity of contract with Polygroup through their purchase of the Pools directly from Defendants and/or from an authorized retailer.

239.    The express written Warranty was a material part of the bargain between Polygroup and consumers. At the time it made this express Warranty, Defendants knew of the purpose for which the Pools would be used and designed and intended them to be used for that specific purpose.

240.    At the time of sale, Polygroup knew, or had reason to know, that consumers purchased the Pools for the ordinary purpose of safe, family-use swimming pools, and Plaintiff and Class Members relied on Polygroup's express representations and written Warranty in making their purchases.

241.    Polygroup breached its express Warranty by selling Pools that: (a) contained an undisclosed safety Defect at the time of sale; (b) were not made from merchantable materials or workmanship; and (c) could not be safely used for their intended purpose on the first day of ownership.

242.    Polygroup's Warranty also fails of its essential purpose. Rather than provide refunds, replacements or an effective repair, Polygroup offered consumers an inadequate "repair kit" that leaves the Pools unsafe and unusable. A warranty that offers no practical remedy is unenforceable and entitles Plaintiff and Class Members to all remedies permitted by law.

243.    Had Plaintiff and Class Members known of the Defect and Polygroup's inadequate response to the Defect, they would not have purchased the Pools or would have paid substantially less for the Pools. Under the UCC, they are entitled to recover at least the difference between the value of the Pools as warranted and the value of the Pools as delivered.

244.     Upon information and belief, Polygroup had notice of the Defect well before the Recall, including through warranty claims, consumer complaints, product testing and incident reports dating back years. Despite this knowledge, Polygroup failed to provide an adequate remedy.

245.     As a direct and proximate result of Polygroup's breach of express warranty, Plaintiff and Class Members suffered damages, including economic loss, overpayment, loss of use and the inability to safely use the Pools as warranted.

**COUNT V**

**BREACH OF IMPLIED WARRANTY**
**810 Ill. Comp. Stat. 5/2-314, *et seq.***
***(On behalf of Plaintiff, individually, and on behalf of the Illinois Class)***

246.     Plaintiff, individually, and on behalf of the Illinois Class, realleges paragraphs 1 through 174 as if fully set forth herein.

247.     Illinois adopted the UCC, including U.C.C. § 2-314, which covers the implied warranty of merchantability. *See* 810 Ill. Comp. Stat. 5/2-314.

248.     That section provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." U.C.C. § 2-314(1).

249.     Defendant is, and at all relevant times was, a merchant involved in the design, manufacture, distribution and sale of the Pools.

250.     The Pools are "goods" under the applicable UCC provisions.

251.     The law imposes a duty requiring manufacturers or sellers of a product to ensure that the products are merchantable and reasonably fit for the ordinary purposes for which such a product is used, and that the product is acceptable in trade for the product description. This implied

55

warranty of merchantability is part of the basis of the bargain between Polygroup and purchasers, including Plaintiff and the Class Members.

252.    Polygroup knew, or had reason to know, that consumers purchased the Pools for ordinary household swimming and recreational use and relied on Polygroup's skill and judgment in providing Pools safe for that ordinary purpose.

253.    Polygroup entered into agreements with authorized retailers and distributors to sell the Pools to Plaintiff and Class Members and intended consumers—not retailers—to be the ultimate beneficiaries of those sales.

254.    Polygroup impliedly warranted that the Pools were of merchantable quality, fit for their ordinary purposes and free from defects that would render them unsafe or unfit for normal use. These warranties formed part of the basis of the bargain for Plaintiff and Class Members.

255.    The Pools breached the implied warranty of merchantability because they were not fit for their ordinary purpose of providing a reasonably safe above-ground swimming environment. The design Defect—an external strap creating an accessible foothold—rendered the Pools unsafe, unmerchantable and unfit for use at the time of sale.

256.    As acknowledged in the Recall, Plaintiff and Class Members were required to discontinue use of the Pools due to the life-threatening drowning hazard related to the Defect. A product that cannot be safely used for its intended purpose cannot be merchantable.

257.    The Defect created significant and unreasonable safety risks, particularly to young children, making the Pools unsuitable for normal household use and further breaching the implied warranty of merchantability.

258.    Because the Recall remedy is untimely and inadequate and introduces additional structural risks, providing Polygroup an opportunity to cure the breach would be futile.

259.    Plaintiff and Class Members had sufficient direct dealings with Polygroup or its authorized retailers to establish contractual privity, or, in the alternative, privity is not required because Plaintiff and Class Members are the intended beneficiaries of Polygroup's implied warranties. Retailers were mere conduits.

260.    It was reasonably foreseeable that consumers—not retailers—would rely on Polygroup's warranties, safety representations and omissions when purchasing the Pools.

261.    Polygroup further impliedly warranted that the Pools would conform to its safety representations and affirmations of fact. The Pools did not conform to these affirmations because they contained a dangerous, undisclosed design Defect.

262.    As a result of the Defect, the Pools failed to meet the basic minimum level of quality required for merchantability and failed to conform to the statements on Polygroup's labeling, packaging, website and marketing.

263.    Polygroup failed to warn Plaintiff and Class Members that the Pools contained the Defect that made them unsafe, unfit and likely to cause serious injury or death.

264.    Polygroup, therefore, breached the implied warranty of merchantability because the Pools were defective at the time they left Polygroup's control.

265.    Any attempt by Polygroup to limit or disclaim implied warranties is unconscionable and unenforceable because Polygroup possessed superior and exclusive knowledge of the Defect and consumers had no meaningful choice or ability to negotiate warranty terms.

266.    A gross disparity in bargaining power existed between Polygroup and consumers. Polygroup knew, or should have known, that the Pools were defective when sold while consumers did not.

267.    Contrary to the implied warranties, the Pools were not fit for their ordinary and intended purposes at the time of sale and remained defective throughout their useful life.

268.    The Recall remedy fails in its essential purpose because it does not restore the product to a safe, merchantable condition, instead introducing additional risks and burdens to consumers.

269.    As a direct and proximate result of Polygroup's breach of implied warranties, Plaintiff and Class Members suffered economic damages, including overpayment, loss of the benefit of their bargain and diminished product value. Plaintiff seeks all available damages, including costs, interest and attorney's fees.

## COUNT VI

### UNJUST ENRICHMENT/QUASI CONTRACT
### (By Plaintiff, individually, and on behalf of the Illinois Class)

270.    Plaintiff, individually, and on behalf of the Illinois Class, realleges paragraphs 1 through 174 as if fully set forth herein.

271.    Plaintiff and the putative Class Members conferred a benefit on Polygroup by purchasing the Pools—payments that Polygroup knowingly accepted while aware of the Pools' Defect and unfitness for their intended use.

272.    Polygroup either knew, or should have known, that the payments rendered by Plaintiff and Class Members were given with the expectation that the Pools had the qualities, characteristics and suitability for the use represented and warranted by Polygroup. As such, it would be inequitable for Polygroup to retain the benefit of the payments under these circumstances.

273.    By its wrongful acts and omissions described above, including selling the Pools, which contained both a Defect and were inoperative for the intended use, Polygroup was unjustly

enriched at the expense of Plaintiff and putative Class Members. The Pools could not even be assembled and filled with water, as they would inherently become a drowning hazard.

274. Furthermore, as described herein, prior to and after distributing the Recall Notice, Polygroup knew that the Recall was wholly inadequate and presented new hazards to consumers and their children. Polygroup also knew that the Recall's design and implementation were inconsistent with industry guidance and standards. Nonetheless, Polygroup, through its misrepresentations, misleading statements and omissions detailed in this First Amended Class Action Complaint, disseminated the inadequate Recall, in order to increase its own profits, and garner market share, while putting the lives of more consumers and their children at risk.

275. Polygroup's wrongful conduct directly caused Plaintiff's detriment and resulted in Polygroup's unjust enrichment, as the benefit it received flowed directly from the misconduct alleged in this First Amended Class Action Complaint.

276. Polygroup unjustly profited from its unlawful, unfair and deceptive conduct at the expense of Plaintiff and the putative Class Members. It would be inequitable and contrary to principles of justice for Polygroup to retain the profits, benefits and other compensation obtained through the sale of the Pools, and as retained through the issuance of a wholly inadequate Recall, as such enrichment was directly tied to the misconduct alleged herein.

277. Polygroup was unjustly enriched by retaining revenue from Plaintiff's and Class Members' purchases of the Pools. Such enrichment is unjust and inequitable because Polygroup knowingly manufactured, marketed and sold defective Pools, while omitting material facts, causing Plaintiff and Class Members to purchase Pools they otherwise would not have purchased had the truth been disclosed.

278.    Polygroup continued to manufacture the Pools with the Defect even after knowing—and concealing—at least two incidents endangering the health and wellbeing of consumers and their children that occurred over two decades ago. Even after these known incidents, Polygroup continued to tout the safety of its Pools, considerably profiting for decades.

279.    Polygroup's conduct allows it to knowingly realize substantial revenue from selling the Pools as well as issuing an inadequate Recall at the expense of, and to the detriment of, Plaintiff and Class Members, and Polygroup's benefit and enrichment. Polygroup's retention of these benefits violates fundamental justice, equity and good conscience principles.

280.    Under common law principles of unjust enrichment and quasi-contract, it is inequitable for Polygroup to retain the benefits conferred by Plaintiff's and Class Members' overpayments.

281.    Plaintiff and Members of the Class seek disgorgement of all profits resulting from such overpayment.

## COUNT VII

### COMMON LAW FRAUD
*(By Plaintiff, individually, and on behalf of the Nationwide Class, or in the alternative, the Illinois Class)*

282.    Plaintiff, individually, and on behalf of the Nationwide Class, or in the alternative, the Illinois Class, realleges paragraphs 1 through 174 as if fully set forth herein.

283.    Polygroup's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing the safe and durable marketing related to the Pools, when in fact the Pools contain the Defect.

284.    Polygroup knowingly, willfully, fraudulently and/or recklessly concealed and suppressed material facts regarding the Pools.

285.     As detailed herein, Polygroup made false or misleading statements and omission to Plaintiff and Class Members regarding the safety of the Pools. These uniform and pervasive representations and omissions were made through Polygroup's marketing of itself and the Pools as industry leaders in pool safety, including on the Pools themselves, labels and packaging materials, the websites of Polygroup and its authorized retailers and other promotional materials for the Pools.

286.     Polygroup's representations were false and misleading because the Pools contain the Defect and because of the associated risks to consumers and their children, including injury and death.

287.     As described herein, prior to and after distributing the Pools into the consumer marketplace, Polygroup knew that the Pools contained the Defect and presented the associated risks to consumers and their children, including injury and death. Nonetheless, Polygroup, through its misrepresentations, misleading statements and omissions detailed herein, continued to sell the Pools in the United States, in order to increase its own profits, and garner market share, while putting the lives of more consumers and their children at risk.

288.     Polygroup knew the representations and omissions were false and intended that Plaintiff and Class Members rely on them.

289.     These misrepresentations and omissions were material to Plaintiff's and Class Members' decision to acquire the Pools. Plaintiff and members of the Classes justifiably relied on Polygroup's misrepresentations of material facts and omissions regarding the Pools, as described herein.

290.     Polygroup's conduct was further fraudulent because Polygroup failed to disclose the Defect associated with the Pools. Specifically, Polygroup failed to adequately warn Plaintiff

and Class Members that the Pools contained the Defect, were not safe or durable and could cause and had caused children to suffer injury and death.

291.    Polygroup has a duty to disclose the truth regarding the safety of the Pools, because the safety of the Pools has a direct impact on the health and safety of the children who utilize them. This duty arose from the fact that Polygroup: had exclusive and/or far superior knowledge and access to knowledge regarding the safety and durability of the Pools; affirmatively and intentionally concealed material facts from Plaintiff and Class Members; and knew that the Pools were not safe for their marketed and intended use.

292.    Polygroup's misrepresentations and omissions of material facts made to Plaintiff and members of the Classes occurred prior to Plaintiff and members of the Classes purchasing the Pools.

293.    Polygroup intended that its misrepresentations and omissions of material fact would deceive or mislead Plaintiff and members of the Classes and induce them to purchase the Pools.

294.    Plaintiff and members of the Classes justifiably relied on Polygroup's misrepresentations and omissions of material facts regarding the Pools, as described herein.

295.    Furthermore, as described herein, prior to and after distributing the Recall Notice, Polygroup knew that the Recall Notice was wholly inadequate and presented new hazards to consumers and their children. Polygroup also knew that the Recall's design and implementation were inconsistent with industry guidance and standards. Nonetheless, Polygroup, through its misrepresentations, misleading statements and omissions detailed herein, disseminated the inadequate Recall, in order to increase its own profits, and garner market share, while putting the lives of more consumers and their children at risk.

296. Polygroup's conduct showed malice, motive and a reckless disregard of the truth such that an award of punitive damages is appropriate. Because Polygroup's deceptive and unfair conduct is ongoing, injunctive relief is necessary and proper.

297. Polygroup's misrepresentations and omissions of material facts directly and proximately caused the damages suffered by Plaintiff and members of the Classes.

298. As a result of Polygroup's misrepresentations and omissions of material facts, Plaintiff and members of the Classes were damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests that this Court:

a.  Declare that this action is a proper class action, certifying the Classes as requested above, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

b.  Award Plaintiff and Class Members compensatory, statutory, actual and/or monetary damages, including interest, in an amount to be determined at trial;

c.  Declare that Polygroup must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits it received from the sale of the Pools;

d.  Order Polygroup to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Classes;

e.  Award punitive damages where permitted by statute, in an amount to be determined at trial, due to Polygroup's willful and reckless disregard for the safety of consumers despite its knowledge of the Defect; and

f.  Order such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all claims so triable.


DATED: December 8, 2025           Respectfully submitted,

                                    */s/ Rachel Soffin*

                                    Rachel Soffin (FL Bar No. 18054)
rsoffin@pwfirm.com
Mailing Address:
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

Melissa S. Weiner
mweiner@pwfirm.com
Ryan T. Gott
rgott@pwfirm.com
**PEARSON WARSHAW, LLP**
328 Barry Avenue S., Suite 200
Wayzata, Minnesota 55391
Telephone: (612) 389-0600
Facsimile: (612) 389-0610

Russell Busch (IL Bar No. 6329500)
**BRYSON HARRIS SUCIU**
**& DEMAY PLLC**
900 W. Morgan St.
Raleigh, NC 27603
Tel: (630) 796-0903
rbusch@brysonpllc.com

Nick Suciu III
**BRYSON HARRIS SUCIU**
**& DEMAY PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
Email: nsuciu@brysonpllc.com

Trenton R. Kashima
**BRYSON HARRIS SUCIU**
**& DEMAY PLLC**
402 West Broadway, Suite 1760

San Diego, CA 92101
Tel: (619) 810-7047
Email: tkashima@brysonpllc.com

Kevin Laukaitis
María del los Ángeles Lugo Colom
Daniel Tomascik
**LAUKAITIS LAW LLC**
954 Avenida Ponce de Leon
Suite 205, #10518
San Juan, PR 00907
Tel: (215) 789-4462
Klaukaiti@laukaitislaw.com
mcolom@laukaitislaw.com
dtomascik@laukaitislaw.com

Mason A. Barney
Leslie Pescia
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (212) 532-1091
mbarney@sirillp.com
lpescia@sirillp.com

*On behalf of Plaintiff and the proposed Classes*