## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| BRANDI JAMISON, individually and on behalf of all others similarly situated,<br><br>           Plaintiff,<br><br>vs.<br><br>POLYGROUP NORTH AMERICA, INC. and POLYGROUP SERVICES N.A. INC.,<br><br>           Defendants. | Case No.: 1:25-CV-10222<br><br>Hon. Jeremy C. Daniel |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO POLYGROUP NORTH AMERICA, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................1

BACKGROUND ...................................................................................................2

I. The Pools Were Marketed and Sold as Safe and Suitable for Children and Families, Despite Containing a Dangerous Defect and Were Later Subject to a Long-Overdue, Deficient and Inadequate Recall.........................................2

II. Polygroup's Recall is Wholly Deceptive, Untimely, Inadequate and Ineffective ...................................................................................................3

ARGUMENT .........................................................................................................4

I. Plaintiff Has Standing Under Federal Rule of Civil Procedure 12(b)(1)................4

   A. Plaintiff Has Standing to Bring Claims for All Recalled Pools ..................4

   B. Plaintiff Has Standing to Seek Injunctive Relief .........................................5

   C. Plaintiff Has Standing to Bring Claims on Behalf of Non-Illinois Residents ...................................................................................................7

II. Plaintiff Adequately Alleges Her Claims Under Rule 12(b)(6) .............................7

   A. Plaintiff Meets the Rule 9(b) Pleading Standard Where Applicable ..........7

     1. Plaintiff Sufficiently Alleges Actionable Misrepresentations and Omissions.......................................................................................9

     2. Plaintiff Alleges She Relied Upon Defendant's Misrepresentations in the Purchase of Her Pool and In Attempting to Install the Repair Kit..............................................11

     3. Plaintiff Sufficiently Alleges That Polygroup Had Longstanding Knowledge of the Defect .........................................12

     4. Plaintiff Alleges Defendant's Intent that Plaintiff Rely on its Deception ...........................................................................13

   B. Plaintiff Sufficiently Alleges Her ICFA Claims Based on *Unfair Conduct* ...................................................................................................14

   C. Plaintiff Sufficiently Alleges Her UDTPA Claim ......................................14

   D. Plaintiff Sufficiently Pled Her Warranty Claims........................................15

     1. Plaintiff Complied with the Pre-Suit Notice Requirement ...........15

     2. Plaintiff's Express Warranty Claim is Properly Pled...................16

     3. Plaintiff's Implied Warranty Claim is Properly Pled ...................18

   E. Plaintiff Sufficiently Pleads Unjust Enrichment ........................................19

III. Plaintiff May Seek Damages Regardless of Polygroup's Deceptive, Delayed, Ineffective and Insufficient Recall..........................................19

CONCLUSION....................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                             **Page(s)**

*Andrews v. Carbon on 26th, LLC,*
   272 N.E.3d 439 (Ill. 2025) ........................................................................................15, 16

*Azimi v. Ford Motor Co.,*
   977 F. Supp. 847 (N.D. Ill. 1996) .........................................................................................8

*Barnes v. Unilever U.S. Inc.,*
   No. 21 C 6191, 2023 WL 2456385 (N.D. Ill. Mar. 11, 2023) ................................14

*Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n,*
   377 F.3d 682 (7th Cir. 2004) ...........................................................................................20

*Bell v. Publix Super Mkts., Inc.,*
   982 F.3d 468 (7th Cir. 2020) ...........................................................................................10

*Benson v. Newell Brands, Inc.,*
   No. 19 C 6836, 2020 WL 1863296 (N.D. Ill. Apr. 14, 2020)..................................7

*Burton v. Hodgson Mill, Inc.,*
   No. 16-cv-1081-MJR, 2017 WL 1282882 (S.D. Ill. Apr. 6, 2017) ........................10

*Camasta v. Jos. A. Bank Clothiers, Inc.,*
   761 F.3d 732 (7th Cir. 2014) ...........................................................................................12

*Carroll v. S.C. Johnson & Son, Inc.,*
   No. 17-cv-05828, 2018 WL 1695421 (N.D. Ill. Mar. 29, 2018) ..............................5

*Corley v. Rosewood Care Ctr., Inc.,*
   142 F.3d 1041 (7th Cir. 1998) ...........................................................................................8

*Cromley v. Bd. of Educ. of Lockport,*
   699 F. Supp. 1283 (N.D. Ill. 1988) ....................................................................................7

*Custom Automated Mach. v. Penda Corp.,*
   537 F. Supp. 77 (N.D. Ill. 1982) ......................................................................................17

*Davis v. G.N. Mortg. Corp.,*
   396 F.3d 869 (7th Cir. 2005) ...........................................................................................11

*Elward v. Electrolux Home Prods., Inc.,*
   214 F. Supp. 3d 701 (N.D. Ill. 2016) ...............................................................................18

*Evitts v. Daimler Chrysler Motors Corp.,*
   834 N.E.2d 942 (Ill. App. 2005) ......................................................................................17

*Fares v. Char-Broil LLC*,
No. 24-C-4878, 2025 WL 1191729 (N.D. Ill. Apr. 24, 2025)..........................................14, 19

*Floorcoverings, Intern., Ltd v. Swan*,
No. 00 C 1393, 2000 WL 528480 (N.D. Ill. Apr. 25, 2000)................................................8

*Fullerton v. Corelle Brands, LLC*,
No. 18-cv-4152, 2019 WL 4750039 (N.D. Ill. Sept. 30, 2019)................................8, 9, 11

*Garber v. Amazon.com, Inc.*,
380 F. Supp. 3d 766 (N.D. Ill. 2019) ................................................................19

*Gomez v. Ill. State Bd. of Educ.*,
811 F.2d 1030 (7th Cir. 1987) ........................................................................7

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983).....................................................................................12

*Interlease Aviation Invs. II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*,
262 F. Supp. 2d 898 (N.D. Ill. 2003) ...............................................................8

*Jett v. Warrantech Corp.*,
No. 18-cv-1366-SMY, 2020 WL 525045 (S.D. Ill. Jan. 30, 2020) .............................13

*Kahn v. Walmart Inc.*,
107 F.4th 585 (7th Cir. 2024) ....................................................................8, 14

*Lipinski v. Martin J. Kelly Oldsmobile, Inc.*,
759 N.E.2d 66 (Ill. App. 2001) .....................................................................10

*Muehlbauer v. Gen. Motors Corp.*,
431 F. Supp. 2d 847 (N.D. Ill. 2006) ..............................................................20

*Nevarez v. DynaCom Mgmt., LLC*,
No. 23-cv-5428, 2024 WL 1579393 (N.D. Ill. Apr. 11, 2024)...................................4

*Petri v. Gatlin*,
997 F. Supp. 956 (N.D. Ill. 1997) .................................................................12

*Plotts v. Am. Honda Motor Co., Inc.*,
No. 22-cv-04529, 2023 WL 4843342 (C.D. Cal. Jun. 9, 2023)..................................6

*Powell v. McCormack*,
395 U.S. 486 (1969)...................................................................................19

*R&L Grain Co. v. Chi. E. Corp.*,
531 F. Supp. 201 (N.D. Ill. 1981) .................................................................18

*Redmon v. Whirlpool Corp.*,
No. 20 C 6626, 2020 WL 9396529 (N.D. Ill. Apr. 28, 2020)................................17

*Reid v. Unilever U.S., Inc.*,
964 F. Supp. 2d 893 (N.D. Ill. 2013) .........................................................13, 14, 15

*Rivera v. Am. Honda Motor Co. Inc.*,
No. 24 CV 12883, 2025 WL 1309536 (N.D. Ill. May 5, 2025).........................6, 20

*In re Rust-Oleam Restore Mktg., Sales Pracs. & Prods. Liab. Litig.*,
155 F. Supp. 3d 772 (N.D. Ill. 2016) ..............................................................15

*Saika v. Ocwen Loan Servicing, LLC*,
357 F. Supp. 3d 704 (N.D. Ill. 2018) ..............................................................14

*Shirley v. Reynolds Consumer Prods., LLC*,
636 F. Supp. 3d 907 (N.D. Ill. 2022) ................................................................6

*Singer v. Sunbeam Prods., Inc.*,
No. 15 C 1783, 2016 WL 1697777 (N.D. Ill. Apr. 28, 2016)............................17

*Sloat v. Camfil USA, Inc.*,
No. 1:23-cv-05125 (N.D. Ill. Apr. 10, 2024) .....................................................7

*Smith v. Loyola Univ. Med. Ctr.*,
No. 1:23-cv-15828, ECF No. 45 (N.D. Ill. July 9, 2024) (Daniel, J.) ................19

*Spector v. Mondelez Int'l, Inc.*,
178 F. Supp. 3d 657 (N.D. Ill. 2016) ................................................................8

*Stella v. LVMH Perfumes & Cosmetics USA, Inc.*,
564 F. Supp. 2d 833 (N.D. Ill. 2008) ..............................................................13

*Stotts v. Comty. Unit Sch. Dist. No. 1*,
230 F.3d 989 (7th Cir. 2000) ..........................................................................19

*Thomas v. Walmart Inc.*,
720 F. Supp. 3d 650 (N.D. Ill. 2024) ............................................................4, 19

*Toulon v. Cont'l Cas. Co.*,
877 F.3d 725 (7th Cir. 2017) ..........................................................................10

*Vanzant v. Hill's Pet Nutrition, Inc.*,
934 F.3d 730 (7th Cir. 2019) ............................................................................8

*Wigod v. Wlls Fargo Bank, N.A.*,
673 F.3d 547 (7th Cir. 2012) ..........................................................................13

iv

*Willard v. Tropicana Mfg. Co., Inc.*,
    577 F. Supp. 3d 814 (N.D. Ill. 2021) ................................................................................10

*Womick v. Kroger Co.*,
    No. 3:21-CV-0574-NJR, 2025 WL 2106158 (S.D. Ill. July 28, 2025)....................................7

*Workman v. Deere & Co.*,
    No. 4:24-cv-04245-SLD, 2025 WL 2783558 (C.D. Ill. Sept. 30, 2025) ..............................20

**Statutes & Other Authorities**

Uniform Commerical Code § 2-607 ............................................................................................16

Uniform Commerical Code § 2-719 ............................................................................................17

Federal Rule of Civil Procedure 8(a) ..................................................................................7, 8, 14

Federal Rule of Civil Procedure 9(b)..............................................................................7, 8, 9, 12

Federal Rule of Civil Procedure 12(b)(6) ....................................................................................7

Federal Rule of Civil Procedure 23 ........................................................................................4, 7

**Publicly Available Sources**

https://polygrouprecall.com/ ...............................................................................................1, 5

https://store-
    yc2jtzprko.mybigcommerce.com/content/vspfiles/assets/manuals/2025/Pool/
    Pool%20 Repair%20Kit%20Instructions_ ..........................................................................5

https://www.cpsc.gov/Recalls/2025/Polygroup-and-other-manufacturers-recall-
    poolsafter-drownings ........................................................................................................1

Plaintiff Brandi Jamison ("Plaintiff"), by and through her undersigned counsel, respectfully submits this memorandum in opposition to Defendant Polygroup North America, Inc.'s ("Defendant" or "Polygroup") Motion to Dismiss ("Motion" or "Mot.").[1]

## INTRODUCTION

This proposed class action involves 912,000 dangerously defective above-ground pools that were designed, manufactured, marketed, and sold by Polygroup with a safety defect ("Pool(s)") and later subject to a delayed, deficient, and inadequate recall (the "Recall").[2] ECF No. 34, First Amended Complaint ("FAC"), ¶ 1. Now, more than a decade after two separate reported deaths in a Polygroup Pool, which involved a 3-year-old boy and a 2-year-old girl (*id*. at ¶ 15), and at least seven additional deaths and numerous near drownings of children in pools subject to the Recall, Polygroup concedes through its deficient Recall Notice that the Pools contain compression straps located external to the Pools' vertical support Poles (the "Defect"), which create a drowning hazard and prevent the Pools from being safely used as sold (*id*. at ¶ 7):



**What exactly is the issue?**

Affected products have compression straps that wrap around the pool on the outside of the supporting poles. A child may use the compression straps as a foothold to gain access to the pool, posing a drowning hazard.

Each Pool, including Plaintiff's Pool, was sold with the Defect and associated drowning hazard for vulnerable children, as shown below. *Id.* at ¶¶ 8-9, n.7-9.

---

[1] Defendant attempts to dispose of Plaintiff's claims against Polygroup Services N.A. Inc. ("Polygroup Services") in a footnote, asserting it "is the former name of Polygroup and does not exist under the laws of any state." Mot. at 1, n.1. As alleged, "Defendant Polygroup Services N.A. Inc. is a Delaware corporation with a principal place of business in Bentonville, Arkansas." FAC ¶ 42. Also, as stated herein, Plaintiff sufficiently pleads allegations against Polygroup Services.

[2] *See* https://www.cpsc.gov/Recalls/2025/Polygroup-and-other-manufacturers-recall-poolsafter-drownings ("CPSC Press Release") and https://polygrouprecall.com/ ("Recall Notice").



Through the Recall, **Polygroup fails to offer any monetary remedy or provide a defect-free replacement pool** despite the availability of similar pools without the Defect. *Id.* at ¶¶ 8, 9, 11, 15, 65. Instead, without any professional assistance, Polygroup instructs consumers to cut off the compression strap and replace it with a rope at the bottom of the Pool. *Id.* at ¶ 11. While Polygroup maintains the rope is a convenient solution ensuring the structural integrity of the Pool, this representation is a farce as detailed in **nearly thirty paragraphs in the FAC**. *Id.* at ¶¶ 80-108.

Plaintiff's FAC follows significant investigation regarding the Recall, the Defect, Polygroup's longstanding knowledge of the Defect and Polygroup's misrepresentations and failure to disclose the Defect for more than a decade until it issued the delayed and deficient Recall.

## BACKGROUND

**I.**    **The Pools Were Marketed and Sold as Safe and Suitable for Children and Families, Despite Containing a Dangerous Defect and Were Later Subject to a Long-Overdue, Deficient and Inadequate Recall**

Prior to the Recall, Polygroup marketed the Pools as durable and safe for the intended use of children and adults, with a simple and convenient set-up. *Id.* at ¶¶ 47-58. For example, on Amazon.com, where Plaintiff purchased her Pool for $971.99, Polygroup marketed the Pools as "perfect for families," "reliable over an extended period of time," "made to last," with a "structure [that] will remain sturdy" and as having a quick and easy setup. *Id.* at ¶¶ 30, 56.

Polygroup's representations and omissions of the Pool's safety and suitability for its intended purpose, including its structural integrity, are reinforced by representations and omissions

in Polygroup's owner's manual, where Polygroup fails to notify consumers of the Defect. *Id.* at ¶¶ 3, 14, 59, 109-110, 284. Polygroup's misrepresentations and omissions led reasonable consumers to believe that if they followed the instructions in the manual, any drowning hazard would be eliminated, but it was not. *Id.* Contrary to these representations, when sold, the Pools were neither safe for families and children, nor reliable. *Id.* at ¶ 60. Further, with the Recall, the Pools are not structurally sound, made to last or convenient to set up. *Id.* at ¶¶ 34, 38, 80-108.

Polygroup was able to charge a premium price for the Pools, which were sold for up to $1,000.00, due to its marketing and its failure to disclose the Defect and drowning hazard. *Id.* at ¶¶ 23-24. Now, with the delayed, ineffective and inadequate Recall, Polygroup is able to maintain its large profits at the expense of consumers. *Id.* at ¶¶ 87, 92.

## II.     <u>Polygroup's Recall is Wholly Deceptive, Untimely, Inadequate and Ineffective</u>

As detailed in nearly thirty paragraphs in the FAC, the Recall is nothing short of perilous due to its inexcusable delay and inadequate repair kit. *Id.* at ¶¶ 80-108. Plaintiff also alleges the Recall Notice itself includes deceptive representations because it misleads consumers to believe the repair kit is an adequate remedy when, in reality, it introduces additional hazards. *Id*. at ¶ 39. The repair kit consists of a mere rope that allegedly substitutes the compression strap to maintain the Pool's structural integrity, along with a "pulley" and plastic "C-shaped holders" to be placed at the base of each Pool leg after removal of the compression strap. *Id.* at ¶ 90. Removing the compression strap in the midsection of the Pool in favor of a rope at the base of the Pool creates a longer, unsupported length of the pool frame, which makes the Pools more flexible and less stable, decreases the Pools' outer structure's load-bearing capacity and increases its susceptibility to deflection or buckling. *Id.* Further, direct sunlight to which the rope is exposed can cause a breakdown of the rope fibers, making it prone to fraying and likely to loosen over time. *Id.* at ¶ 96.

Instructions on ensuring continued tension of the rope are not provided in the Recall Notice, making it more likely that the "fix" will fail. *Id.* Further, as shown by Plaintiff's experience, Polygroup's refusal to provide technicians to install the repair kit furthers the likelihood of failure of the Recall. *Id.* at ¶ 34.

Polygroup's Recall remedy is materially inadequate, leaving consumers with unsafe, unusable Pools worth less than they paid for the Pools. *Id.* at ¶ 26. Polygroup's refusal to provide refunds, replacements or professional repair underscores its ongoing disregard for consumer safety and demonstrates that the Recall remedy is inadequate. *Id.* at ¶ 25.

## **ARGUMENT**

## I.      **Plaintiff Has Standing Under Federal Rule of Civil Procedure 12(b)(1)**

Plaintiff has standing to bring claims for (1) all Pools subject to the Recall, (2) injunctive relief due to the ongoing harm caused by the Defect and inadequate Recall, and (3) on behalf of consumers nationwide and under the consumer protection laws of the multi-state class. Where, as here, the defendant brings a facial challenge to standing, "the Court accepts all material factual allegations as true and construes all reasonable inferences in the plaintiff's favor." *Nevarez v. DynaCom Mgmt., LLC*, No. 23-cv-5428, 2024 WL 1579393, at *2 (N.D. Ill. Apr. 11, 2024).

### A.      **Plaintiff Has Standing to Bring Claims for All Recalled Pools**

As this Court found in *Thomas v. Walmart Inc.*, "the 'prevailing view' in this District" holds that whether a named plaintiff "may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue but depends rather on meeting the prerequisites of Rule 23 governing class actions." 720 F. Supp. 3d 650, 658 (N.D. Ill. 2024) (Daniel, J.). "These courts have postponed ruling on whether the allegations of absent class members are "substantially similar" to the plaintiffs' until the plaintiffs move for class certification." *Id.* Here, this issue is

even more acute given the uniform nature of the Defect and alleged Recall remedy, which are bolstered by Polygroup's Recall admissions:

> Polygroup is voluntarily recalling above-ground pools 48 inches and taller that contain compression straps running externally on the outside of the vertical legs of the pool. The compression strap that surrounds the outside of the pool legs may create a foothold, which could allow a child access to the pool, posing a potential drowning risk.[3]

Further, in the Recall Notice, Polygroup confirms the repair kit uniformly applies to all Pools: "NOTE: This kit is applicable for pools sold under Funsicle, Summer Waves, Summer Escapes and other brands supplied by Polygroup."[4] Thus, there is no question that Plaintiff's claims on behalf of all consumers who purchased the Pools should proceed past the pleading stage.

## B.    Plaintiff Has Standing to Seek Injunctive Relief

Polygroup's argument that Plaintiff lacks standing to seek injunctive relief because she is now aware of the Defect intentionally misses the point and oversimplifies Plaintiff's allegations. Plaintiff plainly alleges that Polygroup continues to encourage use of the Pools, continues to disseminate misleading Recall communications and failed to ensure removal of defective Pools from the marketplace, leaving consumers with no choice but to accept the Recall offer, which introduces additional hazards. FAC ¶¶ 30-34, 38, 80–106, 134, 172. Without the injunctive and declaratory relief requested, including modification of the Recall Notice and Recall remedy, "Polygroup will continue to commit the alleged unlawful practices, and Plaintiff and class members will continue to be deceived by Polygroup's representations and omissions regarding the inadequate Recall." *Id.* at ¶¶ 29, 169-72. *Carroll v. S.C. Johnson & Son, Inc.*, No. 17-cv-05828,

---

[3] *See* https://polygrouprecall.com/.
[4]    https://store-yc2jtzprko.mybigcommerce.com/content/vspfiles/assets/manuals/2025/Pool/Pool%20Repair%20Kit%20Instructions_USA_Funsicle_A4_EN_V03.pdf.

2018 WL 1695421, at *3-4 (N.D. Ill. Mar. 29, 2018) (finding plaintiff had standing to pursue injunctive relief where defendant continued to deceptively label and advertise the products).

In *Rivera v. American Honda Motor Company Inc.*, the court discussed a prior ruling in the same case (prior to transfer to this District) where injunctive relief survived dismissal because of the "plausible threat of future harm posed by the persistence of the defect in their vehicles." No. 24 CV 12883, 2025 WL 1309536, at *5 (N.D. Ill. May 5, 2025) (citing *Plotts v. Am. Honda Motor Co., Inc.*, No. 22-cv-04529, 2023 WL 4843342, at *5 (C.D. Cal. Jun. 9, 2023)). In *Plotts*, like here, Honda failed to provide consumers with adequate repairs or replacement parts, which created an ongoing threat of future injury from the defect, conferring plaintiffs standing for injunctive relief. 2023 WL 4843342, at *5 (upholding claim for injunctive relief where defendant "replaced defective [parts] with defective parts," ensuring recurrence of the problem).

Although the court in *Rivera* ultimately dismissed the injunctive relief claims, it recognized the holding in *Plotts* and dismissed the claim only on the basis that the plaintiff no longer owned her vehicle and thus no longer faced a likelihood of future harm. 2025 WL 1309536, at *5. Here, Plaintiff still owns the subject Pool and can no longer use it because of the Defect and inadequate Recall. FAC ¶ 38. As in *Plotts*, and recognized in *Rivera*, this imminent risk of future harm provides standing to support claims for injunctive relief.

Moreover, contrary to Polygroup's argument that Plaintiff lacks standing to seek injunctive relief because she is aware of the Defect, courts in this District have found that where class members exist who have yet to discover a defendant's harm, a plaintiff "may pursue her claim [notwithstanding] loss of her personal stake." *Shirley v. Reynolds Consumer Prods., LLC*, 636 F. Supp. 3d 907, 914 (N.D. Ill. 2022) (collecting cases).

### C.    Plaintiff Has Standing to Bring Claims on Behalf of Non-Illinois Residents

Plaintiff has standing to bring claims on behalf of a multi-state consumer protection class and a nationwide class for common law fraud. Polygroup's premature argument to the contrary is not actually about standing; it is about whether Plaintiff can satisfy the requirements of Rule 23. *See* Mot. at 6. *See Sloat v. Camfil USA, Inc*., No. 1:23-cv-05125, ECF No. 22, at p. 14 (N.D. Ill. Apr. 10, 2024) (Daniel, J.); *Womick v. Kroger Co.*, No. 3:21-CV-0574-NJR, 2025 WL 2106158, at *11-12 (S.D. Ill. July 28, 2025) ("[t]his is fundamentally a question of whether [the named plaintiff] may adequately represent a multi-state class whose unnamed members assert claims under the laws of various states—an inquiry governed by Rule 23's requirements of adequacy, typicality, and commonality, not by constitutional standing."); *Benson v. Newell Brands, Inc*., No. 19 C 6836, 2020 WL 1863296, at *4 (N.D. Ill. Apr. 14, 2020) (same).

## II.    Plaintiff Adequately Alleges Her Claims Under Rule 12(b)(6)

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Cromley v. Bd. of Educ. of Lockport*, 699 F. Supp. 1283, 1285 (N.D. Ill. 1988). If, when viewed in the light most favorable to plaintiff, the complaint fails to state a claim upon which relief can be granted, only then may the court dismiss the case. *Gomez v. Ill. State Bd. of Educ*., 811 F.2d 1030, 1039 (7th Cir. 1987). Whether Rule 9(b) or Rule 8(a) applies to Plaintiff's claims is irrelevant, as Plaintiff meets both, although Rule 9(b) does not apply to all of Plaintiff's claims.

### A.    Plaintiff Meets the Rule 9(b) Pleading Standard Where Applicable

The only claims that Rule 9(b)'s heightened pleading standard apply—and to which Defendant moved for dismissal under such standard—are: (1) common law fraud; (2) ICFA claim

premised upon the deceptive prong; and (3) UDTPA claim premised upon fraud.[5] Therefore, Defendant's arguments in Sections B(1)(i)-(iv) are limited to these claims. To satisfy Rule 9(b), the complaint, "must show not just the mere possibility of a fraud, but that fraud is a 'necessary or probable inference from the facts alleged.'" *Spector v. Mondelez Int'l, Inc*., 178 F. Supp. 3d 657, 672 (N.D. Ill. 2016); *Vanzant v. Hill's Pet Nutrition, Inc*., 934 F.3d 730, 738 (7th Cir. 2019). In ruling on a motion to dismiss pursuant to Rule 9(b), courts "read the complaint generously and draw all inferences in favor of [the] plaintiffs." *Interlease Aviation Invs. II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 914 (N.D. Ill. 2003). Moreover, "[i]t is well established in this Circuit that a party may be excused from Rule 9(b)'s requirement of pleading with particularity if the information that he is required to plead rests exclusively within the defendants' control or is otherwise unavailable to him." *Corley v. Rosewood Care Ctr., Inc*., 142 F.3d 1041, 1051 (7th Cir. 1998).

For claims subject to Rule 9(b), the "[c]laims ... must state the identity of the person making the misrepresentation ["*who*"], the time ["*when*"], place ["*where*"] and content of the misrepresentation ["*why*"], and the method by which the misrepresentation was communicated ["*how*"]." *Azimi v. Ford Motor Co.*, 977 F. Supp. 847, 853 (N.D. Ill. 1996) (citing *Uni\*Quality, Inc. v. Infotronx, Inc*., 974 F.2d 918, 923 (7th Cir. 1992) (the pleading requirements for common law fraud under Rule 9(b) are identical to those under the ICFA.)); *Floorcoverings, Intern., Ltd v.*

---

[5] The following claims are subject to Rule 8(a):(1) ICFA based on the unfair prong; (2) UDTPA based on non-fraudulent conduct; (3) breach of express warranty; (4) breach of implied warranty; and (5) unjust enrichment/quasi contract. Further, the various state consumer protection laws implicated do not require Plaintiff to meet the Rule 9(b) pleading standard. *Fullerton v. Corelle Brands, LLC*, No. 18-cv-4152, 2019 WL 4750039, at \*9 (N.D. Ill. Sept. 30, 2019). Rule 8(a) requires only that Plaintiff allege only enough facts to "nudge[ ] their claims across the line from conceivable to plausible." *Kahn v. Walmart Inc.*, 107 F.4th 585, 594 (7th Cir. 2024) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

*Swan*, No. 00 C 1393, 2000 WL 528480, at *4 (N.D. Ill. Apr. 25, 2000) ("In order to fulfill the requirements of Rule 9(b) [for a UDTPA claim sounding in fraud], a plaintiff must allege the "who, what, when, and where" of the alleged fraud.").[6]

Plaintiff's FAC far exceeds Rule 9(b)'s requirements for each claim as she alleged: **WHO**: Polygroup. FAC ¶¶ 39-44, 149. **WHAT**: Polygroup deceptively marketed and sold the Pools to Plaintiff and class members with uniform material misrepresentations and omissions regarding the Pools' safety and suitability for their intended purpose, including ***over ten pages detailing the ineffectiveness of the Recall with*** technical analysis showing Polygroup misleads consumers into believing the repair kit is an adequate remedy when it is prohibitively confusing and introduces additional hazards, as further detailed in allegations of Plaintiff's personal experience. *Id.* at ¶¶ 5-13, 34-38, 49-60, 80-108, 139, 150. **WHEN/WHERE**: Polygroup made these material misrepresentations and omissions at the time of purchase, on the Pools' labeling and packaging, its website(s), authorized retailer websites and through the Recall Notice. *Id.* at ¶¶ 17, 37, 49-56, 134, 151-52. **HOW/WHY**: Polygroup acted deceptively to induce reasonable consumers to pay more for the Pools than they otherwise would have had they known of the dangerous Defect, causing them economic injuries. *Id.* at ¶¶ 153-54.

1.    Plaintiff Sufficiently Alleges Actionable Misrepresentations and Omissions

Lacking legal grounds to dismiss Plaintiff's claims, Defendant resorts to misconstruing and attacking the sufficiency of Plaintiff's factual allegations. Mot. at 8-10. Defendant's argument only highlights the fact intensive nature of this inquiry, which is not proper for resolution at the

---

[6] To the extent a plaintiff alleges an omissions theory under the ICFA's deceptive prong, the UDTPA or common law fraud, under Rule 9(b) the standard to state a fraudulent omission claim is more relaxed than the typical fraud claim. *Fullerton,* 2019 WL 4750039, at *9 (citing *McKee v. Gen. Motors LLC*, 376 F. Supp. 3d 751, 760-61 (E.D. Mich. 2019). To plead fraudulent omission, Plaintiff must only allege details regarding the who, what, when, where and how. *Id.*

pleading stage "because the determination of whether or not a reasonable consumer could be misled is an intricate question of fact that is best informed by a pool of members of the community." *Burton v. Hodgson Mill, Inc.*, No. 16-cv-1081-MJR, 2017 WL 1282882, at *6 (S.D. Ill. Apr. 6, 2017). The Seventh Circuit instructs that the reasonable consumer standard is an issue of fact rather than law. *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 479 (7th Cir. 2020).

Deceptive conduct "creates a likelihood of deception or has the capacity to deceive." *Id*. (quoting *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001)). To determine the likelihood of deception, "[c]ourts apply a 'reasonable consumer' standard," and consider "the totality of the information made available to the plaintiff." *Id*. (quoting *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 673 (7th Cir. 2015). Under Illinois law, omitting or concealing a material fact is deceptive conduct. *Lipinski v. Martin J. Kelly Oldsmobile, Inc*., 759 N.E.2d 66, 70 (Ill. App. 2001). "A material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information on which a buyer would be expected to rely in making a decision [regarding] whether to purchase the product." *Id*., *accord Toulon v. Cont'l Cas. Co*., 877 F.3d 725, 740 (7th Cir. 2017). With either an affirmative misrepresentation or omission, the dismissal of such claims for failure to plausibly allege that a reasonable consumer would likely be deceived is appropriate only in rare situations. *See Willard v. Tropicana Mfg. Co., Inc.*, 577 F. Supp. 3d 814, 831 (N.D. Ill. 2021).

The FAC is replete with allegations identifying Defendant's affirmative misrepresentations and omissions regarding the Pools' safety and suitability for their intended purpose. *See e.g*., FAC ¶¶ 5-13, 34-38, 49-60, 80-108, 139, 150-52. At this stage, Plaintiff adequately alleges that Defendant's misrepresentations and omissions at the time of purchase on the Pools' labeling and packaging, its website(s), authorized retailer websites and through the Recall Notice created a

likelihood of deception or had the capacity to deceive reasonable consumers, and which raises a question of fact precluding dismissal. *Id.* Plaintiff also alleges Polygroup included safety representations and omissions in the Pools' Owner's Manuals, which include a section titled "Safety Care for Children – Drowning Risk," but which failed to provide proper warning or notice regarding the Defect and drowning hazard. This leads reasonable consumers to believe that if they follow the safety instructions, any drowning hazard will be eliminated. *Id.* at ¶ 59. However, these representations are false and deceptive and omit material information regarding the Defect.

Therefore, at the pleading stage, Plaintiff sufficiently alleges that she, and other reasonable consumers, believed the exact message that Defendant's marketing intended to convey: its Pools are safe and suitable for their intended purpose. *See Fullerton*, 2019 WL 4750039, at *8-10.

2.      Plaintiff Alleges She Relied Upon Defendant's Misrepresentations in the Purchase of Her Pool and In Attempting to Install the Repair Kit

Plaintiff alleges that she considered Polygroup to be a reputable company with a strong reputation for producing safe and reliable pools for family use and believed that her Pool would be no different. FAC ¶¶ 36-37. Plaintiff alleges that she purchased the Pool on Amazon.com, and that she relied on Polygroup's representations therein that the Pool was safe for family use. *Id.* at ¶ 37. Plaintiff further alleges that at the time of her purchase, she was unaware of the Defect and associated drowning hazard. *Id.* She further alleges that she used the Pool as instructed—including relying upon and following the safety representations in the Owner's Manual—and that she was unaware of the Defect until Polygroup's delayed and deficient Recall Notice, on or around July 22, 2025. *Id.* at ¶¶ 31, 49-60; *see also Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005) (The "allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff."). Nothing more is required at this stage of the litigation.

Further, Plaintiff alleges that Polygroup's Recall itself is an affirmative misrepresentation. FAC ¶¶ 80-108. Plaintiff alleges that she relied upon the Recall as an adequate remedy for the Defect in attempting to install the repair kit. *Id*. at ¶¶ 34-38. However, the repair kit is not an adequate remedy as it was untimely, ineffective, creates further hazards and was designed to fail. *Id*. at ¶¶ 80-108 ("the Recall Notice and the repair kit instructions amount to continued false representations. They mislead consumers into believing the repair kit is an adequate remedy and makes the Pools compliant with Polygroup's representations about the safety of the Pools when, in reality, the repair kit introduces additional hazards that present risks of harm to consumers and their children.").

3.  Plaintiff Sufficiently Alleges That Polygroup Had Longstanding Knowledge of the Defect

Defendant inappropriately casts its argument about its knowledge of its fraudulent misrepresentations and omissions regarding the Defect in terms of its intent. Mot. at 11-12. Plaintiff will address this argument in proper context. As stated above, Rule 9(b) "ordinarily requires describing the who, what, when, where, and how of the fraud." *Camasta v. Jos. A. Bank Clothiers, Inc*., 761 F.3d 732, 737 (7th Cir. 2014). However, "knowledge . . . may be alleged generally." Fed. R. Civ. P. 9(b). And "Rule 9(b)'s requirements may be relaxed when specific details are within the defendants, exclusive knowledge or control." *Petri v. Gatlin*, 997 F. Supp. 956, 974 (N.D. Ill. 1997). Further, "proof of scienter required in fraud cases is often a matter of inference from circumstantial evidence," or even a lower burden of proof. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 391 n.30 (1983).

Plaintiff overwhelmingly alleges that Polygroup was aware of its fraudulent misrepresentations and omissions regarding the Defect, and that it knew or should have known that the Defect caused the Pools to fail in their regular and intended purpose because they were

unsafe and unsuitable for consumers' and their children's use. Polygroup knew or should have known of the nine children that drowned in pools with the same or similar Defect between 2007 and 2022. FAC ¶ 18, 49-50, 63, 72. Defendant knew or should have known about the two actual **drowning incidents associated with the Defect in Polygroup Pools in 2011 and 2014**. *Id*. at ¶¶ 18-19, 64. Further, Polygroup knew or should have known about the wrongful death lawsuit relating to the Defect filed against its competitor, Bestway (USA), in 2019. *Id*. at ¶¶ 69-71.

Notably, Defendant does not credibly argue it was unaware of the Defect, only that Plaintiff did not properly allege it was aware of the Defect. However, Plaintiff's allegations regarding Defendant's knowledge are adequately plead and Defendant is entitled to dispute these allegations in the discovery phase of this litigation. *See Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 916 (N.D. Ill. 2013) (upholding allegations that defendant knew product could cause hair loss "when consumers began to post complaints on the internet"); *Stella v. LVMH Perfumes & Cosmetics USA, Inc.*, 564 F. Supp. 2d 833, 836 (N.D. Ill. 2008) (declining to dismiss claim where plaintiff alleged defendant was aware of lead as an ingredient in lipstick and failed to inform consumers).

### 4. Plaintiff Alleges Defendant's Intent that Plaintiff Rely on its Deception

"[A] 'claim for 'deceptive' business practices does not require proof of intent to deceive.'" *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. 2012). "It is enough to allege that the defendant committed a deceptive or unfair act and intended that the plaintiff rely on that act." *Id.*; *see also id.* at 575 n.13 (collecting cases). Plaintiff alleges Defendant made misrepresentations and omissions about the Pools with the intent that Plaintiff and Class Members rely on the deception. FAC ¶¶ 181, 199. Plaintiff thus satisfies this element of her fraud claims. *See, e.g.*, *Jett v. Warrantech Corp.*, No. 18-cv-1366-SMY, 2020 WL 525045, at *5 (S.D. Ill. Jan. 30, 2020).

**B.      Plaintiff Sufficiently Alleges Her ICFA Claims Based on *Unfair Conduct***

For the aforementioned reasons, Plaintiff has sufficiently pled her ICFA claim based on Polygroup's deceptive conduct. For those and the following reasons, Plaintiff also sufficiently alleged her ICFA claim based on Polygroup's *unfair* conduct. ICFA claims premised on unfair conduct are subject to the less-stringent pleading standard under Rule 8(a). *Fares v. Char-Broil LLC,* No. 24-C-4878, 2025 WL 1191729, at *5 (N.D. Ill. Apr. 24, 2025) (citation omitted).

To determine if a practice is *unfair* under the ICFA, courts ask: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and/or] (3) whether it causes substantial injury to consumers." *See Kahn*, 107 F.4th at 602 (citing *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 417-18 (Ill. 2002). Conduct is immoral, unethical, oppressive or unscrupulous if it "leave[s] the consumer with little choice except to submit to it." *Saika v. Ocwen Loan Servicing, LLC*, 357 F. Supp. 3d 704, 715 (N.D. Ill. 2018) (citation omitted). That is exactly what Polygroup has done here, starting with the sale of a knowingly defective product, and continuing with the belated and insufficient Recall, which leaves consumers with no choice but to accept the defunct remedy. FAC ¶¶ 80-108. *See Fares*, 2025 WL 1191729, at *6 ("plaintiffs' allegations that Char-Broil put the products into the marketplace without adequate testing [were] sufficient to state a claim for unfair conduct violative of ICFA"); *Barnes v. Unilever U.S. Inc*., No. 21 C 6191, 2023 WL 2456385 at *3 (N.D. Ill. Mar. 11, 2023) ("allegations that Unilever put adulterated and therefore dangerous products into the marketplace without adequate testing or screening…are sufficient to state a claim for an unfair practice violative of the ICFA.").

**C.      Plaintiff Sufficiently Alleges Her UDTPA Claim**

As *Reid v. Unilever U.S., Inc*. notes, "[w]hile the Illinois [UDTPA] "primarily focuses on acts between competitors, a cause of action under [UDTPA] can be stated and injunctive relief is

obtainable by an individual consumer where that consumer can allege facts that he likely would be damaged by the defendant's conduct in the future." 964 F. Supp. 2d at 918. Plaintiff alleges Polygroup's failure to honor its warranty to cure the Defect with the repair kit is not only inadequate, it presents further hazards. FAC ¶¶ 64-66. Thus, until an adequate remedy is provided, Plaintiff is stuck with an unsafe and unusable pool. *See* Sec. I(B), *infra*.

    **D.    Plaintiff Sufficiently Pled Her Warranty Claims**

        1.    <u>Plaintiff Complied with the Pre-Suit Notice Requirement</u>

Plaintiff provided adequate notice of her warranty claims, and whether and to what extent notice is sufficient is a question of fact not suitable for dismissal. *In re Rust-Oleum Restore Mktg., Sales Pracs. & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 799 (N.D. Ill. 2016). As alleged, Plaintiff provided Polygroup with notice of its troublesome conduct *via* service upon Polygroup's registered agents of service on August 25, 2025, detailing the Defect, the inadequacy of the Recall, Plaintiff's experience with the Pool and the Recall, and a demand for relief. ECF No. 1, ¶ 27. Further, on December 8, 2025, Plaintiff amended her complaint to add both her breach of express and implied warranty claims. *Compare* ECF No. 1, ¶¶ 152-265 *with* FAC ¶¶ 231-69. There are no magic words for notification of misconduct. "[N]otification of breach of warranty is sufficient if it lets the seller know that the particular "transaction is still troublesome and must be watched" and that is exactly what Plaintiff did here. *In re Rest-Oleum,* 155 F. Supp. 3d at 799 (citing *Connick v. Suzuki Motor Corp.*, 174 Ill.2d 482, 492-95 (Ill. 1996) (court found only that the seller must be "*somehow* apprised of the trouble with the particular product purchased by a particular buyer.").

Even if this notice was improper, as the Illinois Supreme Court found in *Andrews*, notice is excused when a wholesaler has "actual knowledge of a defect of the particular product." 272 N.E.3d at 446 (citing *Connick*, 174 Ill.2d at 492). As alleged in an entire section of the FAC:

> Polygroup knew, or should have known, of the Defect and of the dangers posed by its Pools prior to and at the time of sale of the Pools to consumers, including from (a) at least two child drownings in the Polygroup pools in 2011 and 2014, (b) its design of the Pools, (c) knowledge of industry pool safety guidance and recommendations, (d) receipt of CPSC complaints, (e) prior wrongful death litigation, and (f) warranty claims made directly to Polygroup.

FAC ¶¶ 12-14, 61-79. Polygroup was also aware of the Defect in Plaintiff's Pool because the Recall includes Plaintiff's Pool and Plaintiff registered for a repair kit. *Id.* at ¶¶ 62-72. Thus, Plaintiff gave Polygroup both notice and an opportunity to cure the Defect, just as UCC § 2-607 requires. *See Andrews*, *supra*, at 446-47 ("there is no Illinois caselaw holding, as a matter of law, that a seller must have the opportunity to observe or inspect the defect to have actual knowledge of the defect. Actual knowledge can arise from any number of sources.").

### 2. Plaintiff's Express Warranty Claim is Properly Pled

Polygroup argues Plaintiff has not established an affirmation of fact sufficient to give rise to an express warranty. Mot. at 14. Yet Polygroup acknowledges Plaintiff's allegation that the warranty includes a guarantee that the Pools were free from defects and fit for use as above-ground pools at the time of purchase. *Id.* (citing FAC ¶ 234). Plaintiff also alleges the material terms of the written warranty: "a 90-day written warranty" that the Pools were "free from manufacturing defects." FAC ¶ 234. These concrete allegations go beyond the type of puffery (*i.e.*, that a product is "premium" or "perfect") alleged in the cases cited by Polygroup. (citing *Corwin v. Conn. Valley Arms, Inc.*, 74 F. Supp. 3d 883 (N.D. Ill. 2014)). Strangely, Polygroup also argues that there was no breach of warranty because it guaranteed "the repair or replacement of Above Ground Pools for one (1) year from the date of purchase" and that it "provided a repair for the alleged defect through the Recall." Mot. at 15. But Polygroup ignores Plaintiff's detailed allegations that the Pools were <u>defective at the point of sale</u> (*see* FAC ¶¶ 4, 18, 20) and that Polygroup had longstanding knowledge of the Defect, yet it failed to provide an adequate remedy or redesign the

Pools. *Id.* at ¶¶ 70-130. Accordingly, Plaintiff specifically alleges the "unconscionability and failure of essential purpose of the warranties." *Id.* at ¶¶ 109-130. Polygroup fails to address these claims and forfeits the point. *Singer v. Sunbeam Prods., Inc.*, No. 15 C 1783, 2016 WL 1697777, at *4 (N.D. Ill. Apr. 28, 2016).

Under Illinois law, "express warranties of limited duration cover only defects that become apparent during the warranty period." *Evitts v. Daimler Chrysler Motors Corp.*, 834 N.E.2d 942, 950 (Ill. App. 2005). But "a contractual clause 'may be unenforceable if it is either procedurally or substantively unconscionable.'" *Singer*, 2016 WL 1697777, at *4. This includes limitations on the duration of a warranty. *Singer*, 2016 WL 1697777, at *4 (citing *Evitts*, 834 N.E.2d at 949). "A determination of unconscionability may 'turn on a showing of acts of bad faith such as concealments, misrepresentations, [or] undue influence.'" *Singer*, 2016 WL 1697777, at *4 (citing *Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 647 (Ill. 2011)). Thus, allegations that a defendant knew of a material defect in their product, but failed to disclose it, are sufficient to establish a one-year limitation on the warranty was unconscionable at the pleading stage. *Id.*; *see also* FAC ¶ 15.

Additionally, under UCC § 2-719, "limited remedy of repair and replacement fails of its essential purpose when it is inadequate to provide the buyer with goods which conform to the contract within a reasonable time." *Custom Automated Mach. v. Penda Corp.*, 537 F. Supp. 77, 83 (N.D. Ill. 1982); *Redmon v. Whirlpool Corp.*, No. 20 C 6626, 2020 WL 9396529, at *5 (N.D. Ill. Apr. 28, 2020) ("[I]t is unusual for a remedy to fail of its essential purpose, but this typically occurs when a contract's primary remedy is repair or replacement of defective parts, and this remedy fails to put the goods in their warranted condition."). Here, as in *Redmon*, Plaintiff alleges the Recall repair kit fails in its essential purpose because it adversely affects the structural integrity of the Pools and does not put the Pools in their warranted condition. FAC ¶¶ 64-66.

3.      Plaintiff's Implied Warranty Claim is Properly Pled

Polygroup attacks Plaintiff's implied warranty claims on the basis that Polygroup was not in privity with Plaintiff, who purchased her Pool from Amazon.com. Mot. at 15-16. Again, Polygroup misrepresents both the law and underlying facts of the case. Illinois law provides for an "third-party beneficiary exception to privity, which applies 'where the manufacturer knew the identity, purpose and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements.'" *Elward v. Electrolux Home Prods., Inc*., 214 F. Supp. 3d 701, 705 (N.D. Ill. 2016). For example, in *R&L Grain Co. v. Chi. E. Corp.*, the manufacturer was aware of the remote customer's requirement that the grain bin safely store grain during the most severe Wisconsin winters, and the manufacturer delivered the grain bin to meet that requirement. 531 F. Supp. 201, 203-04, 208 (N.D. Ill. 1981). The court held that the alleged facts indicated that the remote customer was the third-party beneficiary of the contract between the seller and the manufacturer. *Id.* at 208. Polygroup knew consumers, such as Plaintiff, would be the ultimate user of the Pools because it provided warranties to the end-user. FAC ¶¶ 112-13. Polygroup also knew of customers' requirement that their Pools be safe and durable but delivered a defective Pool. This is confirmed by the Recall, which was intended to be a *direct communication with consumers*, and which confirmed the Pools fell short of minimum safety standards.

Further, "given that the privity inquiry is fact-intensive," courts within this District have held that similar allegations are sufficient to survive a motion to dismiss. *See, e.g.*, *Elward*, 214 F. Supp. 3d at 705-06. While Polygroup contends that Plaintiff must prove some "direct" dealings, this requirement is satisfied. Plaintiff purchased her Pool from Amazon.com, where manufacturers often sell their own products. FAC ¶ 30. As this a court has found in another case, Amazon.com requires its sellers to "provide Amazon customers with customer service that is 'at least as

responsive and available and offers at least the same level of support as the most favorable customer services'" and "seller provides the product description displayed to the buyer." *Garber v. Amazon.com, Inc*., 380 F. Supp. 3d 766, 771-72 (N.D. Ill. 2019).

### E. Plaintiff Sufficiently Pleads Unjust Enrichment

Polygroup mischaracterizes Plaintiff's ICFA and UDTPA claims as rooted solely in fraud. They are not. As this Court has held, because Plaintiff's unjust enrichment claim "rises and falls" with her ICFA and UDTPA claims, which are adequately pled here, the Court should consider them in their proper scope. *Smith v. Loyola Univ. Med. Ctr.*, No. 1:23-cv-15828, ECF No. 45 (N.D. Ill. July 9, 2024) (Daniel, J.); *Thomas*, 720 F. Supp. 3d at 666. Nevertheless, Plaintiff alleges that, due to Polygroup's deceptive and unfair conduct it unjustly retained payments of up to $1,000.00 per Pool by reasonable consumers who purchased the Pool in reliance on Polygroup's deception to their detriment as the Pools are dangerous and unusable as sold and remain so despite the Recall. FAC ¶¶ 1-18, 23, 80-108, 205, 272-77; *Fares*, 2025 WL 1191729, at *23.

### III. Plaintiff May Seek Damages Regardless of Polygroup's Deceptive, Delayed, Ineffective and Insufficient Recall

Polygroup misconstrues Plaintiff's well-pled allegations including that its Recall fails to offer monetary compensation or a non-defective replacement pool, and instead, presents consumers with a prohibitively confusing repair kit, which presents additional hazards. FAC ¶¶ 80-108. "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). A case is not moot when it "ha[s] an actual, ongoing controversy extend[ing] throughout the pendency of the action." *Stotts v. Comty. Unit Sch. Dist. No. 1*, 230 F.3d 989, 990 (7th Cir. 2000). Courts in this District have declined to apply prudential mootness in voluntary recall cases, like this one, where a plaintiff seeks relief exceeding a recall remedy. In *Rivera*, the court declined to dismiss as moot

claims involving a vehicle's speaker defect where the plaintiff alleged the no cost recall repair failed to remediate his claim for diminution in value damages. 2025 WL 1309536, at *3-4. Despite the repair fixing the speakers, the plaintiff argued the defect nevertheless diminished the value of her vehicle such that she paid more than she would have had she known of the defect. *Id*. Thus, the court rejected the defendant's argument that the plaintiff's claims were moot. *Id*.

Indeed, Plaintiff's claims are stronger than those in *Rivera*, as she alleged: (1) she suffered economic damages in the form of overpayment; and (2) the Recall does not offer an adequate repair for a variety of reasons. FAC ¶¶ 80-108; *see also Workman v. Deere & Co.,* No. 4:24-cv-04245-SLD, 2025 WL 2783558, at *6 (C.D. Ill. Sept. 30, 2025) (rejecting prudential mootness arguments where voluntary recall overseen by CPSC did not fully remediate the loss); *Muehlbauer v. Gen. Motors Corp*., 431 F. Supp. 2d 847, 854 (N.D. Ill. 2006) (claims not mooted when a plaintiff claimed a recall repair was "both inadequate and incomplete and does not represent a return of any benefit"). Plaintiff adequately alleges the total failure of the Recall in remedying her harm such that it does not moot her well-pled claims. Polygroup's out of circuit cases fail to prove otherwise. *See Workman*, 2025 WL 2783558, at *7 (declining to look to out of circuit caselaw and instead, relying on *Rivera*). For these reasons, this Court should reject Polygroup's attempt to foreclose her case because the Recall is "nothing short of perilous due to its inexcusable delay in notice and administration, and the wholly inadequate repair kit." FAC ¶ 82.

## CONCLUSION

For the reasons stated above, the Court should deny Polygroup's Motion in its entirety. If, however, the Court grants the Motion in any other respect, Plaintiff respectfully requests leave to amend to cure any deficiencies identified by the Court. *See Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 690 (7th Cir. 2004).

Dated: February 19, 2026       By:   */s/ Rachel Soffin*

Rachel Soffin (FL Bar No. 18054)
rsoffin@pwfirm.com
**PEARSON WARSHAW, LLP**
Mailing Address:
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

Melissa S. Weiner
mweiner@pwfirm.com
Ryan T. Gott
rgott@pwfirm.com
**PEARSON WARSHAW, LLP**
328 Barry Avenue S., Suite 200
Wayzata, Minnesota 55391
Telephone: (612) 389-0600
Facsimile: (612) 389-0610

Russell Busch (IL Bar No. 6329500)
**BRYSON HARRIS SUCIU**
**& DEMAY PLLC**
900 W. Morgan St.
Raleigh, NC 27603
Tel: (630) 796-0903
rbusch@brysonpllc.com

Nick Suciu III
**BRYSON HARRIS SUCIU**
**& DEMAY PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
Email: nsuciu@brysonpllc.com

Trenton R. Kashima
**BRYSON HARRIS SUCIU**
**& DEMAY PLLC**
402 West Broadway, Suite 1760
San Diego, CA 92101
Tel: (619) 810-7047
Email: tkashima@brysonpllc.com

Kevin Laukaitis
Daniel Tomascik
**LAUKAITIS LAW LLC**
954 Avenida Ponce de Leon
Suite 205, #10518
San Juan, PR 00907
Tel: (215) 789-4462
Klaukaiti@laukaitislaw.com
dtomascik@laukaitislaw.com

Mason A. Barney
Leslie Pescia
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (212) 532-1091
mbarney@sirillp.com
lpescia@sirillp.com

*Attorneys for Plaintiff and the Proposed Class*