**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BRANDI JAMISON,
       Plaintiff

    v.

POLYGROUP NORTH AMERICA,
INC. and POLYGROUP SERVICES
N.A., INC.,
       Defendants

No. 25 CV 10222

Judge Jeremy C. Daniel

## MEMORANDUM OPINION AND ORDER

The plaintiff, a consumer who purchased an above-ground pool that has since been recalled, filed this putative class action against the companies that designed, manufactured, and marketed the pool. She alleges fraud and other claims under state consumer protection laws, alleging generally that the defendants are liable for leading consumers to believe that the defendants' products were safe, despite the design defect that caused the recall. The defendants move to dismiss the complaint in its entirety. For the reasons stated in this order, the defendants' motion is granted in part and denied in part.

## BACKGROUND

This matter is before the Court on Defendants Polygroup North America, Inc. and Polygroup Services N.A., Inc.'s (collectively "Polygroup") motion to dismiss the first amended complaint (R. 34 ("FAC")). (R. 39.) The following facts are taken from the FAC and presumed true for purposes of resolving the present motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Polygroup designs, manufactures, distributes, and markets above-ground pools in North America. (FAC ¶¶ 39–40, 42–43.)[1] Between 2006 and 2025, Polygroup manufactured and sold above-ground pools, which included the "Summer Waves," "Summer Escapes," "Funsicle," "Sand n Sun," and "Blue Wave" models. (*Id.* ¶ 52.) Polygroup marketed these pools by stating, for example, "Polygroup's outdoor recreational brand, Funsicle, offers best-selling above ground pools for any space, lifestyle or family size." (*Id.* ¶ 53.)

Polygroup and the U.S. Consumer Product Safety Commission ("CPSC") issued a voluntary recall for these pools on July 21, 2025. (*Id.* ¶ 5.) The recall was due to a design defect consisting of "compression straps located external to the Pools' vertical support poles," which "created an accessible foothold for children to climb into the Pool, posing a drowning hazard." (*Id.* ¶ 8.) The FAC includes the below image demonstrating the alleged defect:



---

[1] For ECF filings, the Court cites to the page number(s) in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

(*Id.*) This defect was associated with nine drowning incidents and three near-drowning incidents between 2007 and 2022 where children used the compression straps to enter pools. (*Id.* ¶¶ 12, 63–64.)

Polygroup did not recall the pools in their entirety or offer monetary compensation to consumers. (*Id.* ¶ 11.) Rather, it offered repair kits with instructions for users to repair their pools themselves. (*Id.*) According to the FAC, the repair kit "is wholly inadequate to maintain the structural integrity of the Pool" and "the instructions for installing the repair kit are prohibitively confusing." (*Id.* ¶ 80.)

Plaintiff Brandi Jamison purchased the "Funsicle" model pool from Amazon.com on June 22, 2023. (*Id.* ¶ 30.) She registered with Polygroup to receive a repair kit after learning of the recall on or around July 22, 2025. (*Id.* ¶¶ 32–33.) She attempted to use the kit but was unable to do so successfully because "the repair kit video and instructions . . . were confusing." (*Id.* ¶ 34.) The plaintiff "relied on Polygroup's representations that the Pool was safe for family use and was unaware of the Defect and associated hazard in the Pool at the time of purchase." (*Id.* ¶ 37.) "Had [she] known, prior to purchase, of the Defect and Polygroup's response to the Defect . . . she would not have purchased the Pool or would have paid less for it." (*Id.* ¶ 35.)

The plaintiff brings this action individually and on behalf of others similarly situated.[2] (*Id.* ¶ 156.) She alleges the following counts: various state consumer protection statutes (Count I), the Illinois Consumer Fraud and Deceptive Trade

---

[2] Jurisdiction is proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.* (Count II), the Illinois Deceptive Trade Practices Act (IDTPA), 815 ILCS 510/1 *et seq.* (Count III), breach of express warranty, 810 ILCS 5/2-313 *et seq.* (Count IV), breach of implied warrant, 810 ILCS 5/2-314 *et seq.* (Count V), unjust enrichment (Count VI), and common law fraud (Count VII). (FAC ¶¶ 175–298.) She seeks damages as well as declaratory and injunctive relief.

## LEGAL STANDARD

Where, as here, the defendant raises a facial challenge to the Court's subject-matter jurisdiction under Rule 12(b)(1), the defendant "contend[s] that [a] complaint lacks sufficient factual allegations to establish [jurisdiction]." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). To determine whether a complaint sufficiently pleads facts establishing the Court's jurisdiction, "courts apply the same analysis used to review whether a complaint adequately states a claim." *Id.*

"[A] motion to dismiss for failure to state a claim tests the sufficiency of the complaint . . . ." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 n.4 (7th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court "constru[es] the complaint in the light most favorable to the plaintiffs, accepting as true all well-pleaded facts, and drawing reasonable inferences in the plaintiffs' favor." *McReynolds*, 694 F.3d at 879.

## ANALYSIS

### I. STANDING

The Court first evaluates Polygroup's standing arguments because they go to the Court's jurisdiction. *See Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1057 (7th Cir. 2018). A plaintiff must establish standing by showing that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Polygroup argues that the plaintiff "lacks standing to bring claims (1) arising from products she did not purchase; (2) for injunctive relief; and (3) brought on behalf of a nationwide class and under consumer protection laws of states other than Illinois." (R. 40 at 10.)

For the first category, Polygroup points out that the "FAC implicates five different Polygroup products, but Plaintiff only purchased one." (*Id.* at 11.) Polygroup argues this means the plaintiff lacks standing to bring claims based on products she did not purchase. (*Id.*) However, Polygroup also recognizes that "there is no controlling approach within this District" regarding how to address standing in these circumstances. (*Id.*) This Court previously addressed this issue in *Thomas v. Walmart Inc.*, 720 F. Supp. 3d 650 (N.D. Ill. 2024). There the Court adopted an approach that "sidestep[s] the [standing] issue altogether": "whether the named plaintiffs 'may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue but depends rather on meeting the prerequisites of Rule 23 governing class actions.'" *Id.* at 658 (quoting *In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 722 (N.D. Ill. 2016)). Polygroup's arguments in reply illustrate why

this approach is appropriate here. It relies on differences between the product the plaintiff purchased and the other five products, such as how they were marketed and where they were sold. (R. 49 at 9–10.) These issues bear on Rule 23's commonality inquiry, and they are better suited for resolution at the class-certification stage. *See* Fed. R. Civ. P. 23(a)(2), (b)(3).

Next is Polygroup's argument that the plaintiff lacks standing to seek injunctive relief. "[A] plaintiff must demonstrate standing for each form of relief sought." *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 890 (7th Cir. 2013). "Class representatives must have standing with respect to their requested relief—they cannot rely on putative class members to establish standing." *In re Herbal Supplements Mktg. & Sales Litig.* (*In re Herbal*), No. 15 C 5070, 2017 WL 2215025, at *7 (N.D. Ill. May 19, 2017) (St. Eve, J.) (citing *Lewis v. Casey*, 518 U.S. 343, 357 (1996), and *Simic v. City of Chicago*, 851 F.3d 734, 740 (7th Cir. 2017)). Polygroup argues that the plaintiff herself lacks standing to seek prospective relief because she is "plainly aware of the alleged risk" and "does not allege that she will or must purchase a Polygroup pool again in the future." (R. 40 at 12.) The plaintiff maintains that there is "an ongoing threat of future injury from the defect" to herself, and she relies on harms that additional class members may suffer. (*See* R. 46 at 11–12.) These are insufficient to support injunctive relief. In consumer fraud class actions, claims for injunctive relief have been found sufficient where there were "allegations that the plaintiffs intended to or were likely to purchase products again." *Thomas*, 720 F. Supp. 3d at 659 (collecting cases); *see also In re Herbal*, No. 15 C 5070, 2017 WL

2215025, at *8 (finding no standing to pursue injunctive relief where the "Plaintiffs make clear in their complaint that they would not have purchased the Affected Products had they known the truth about them"). The FAC alleges that Polygroup deceived the plaintiff and that, had she known what she knows now, "she would not have purchased the Pool or would have paid less for it." (FAC ¶ 35.) And given her allegations that she is aware of the product's condition, any argument that the plaintiff herself faces a threat of future harm is implausible. Because the FAC alleges only past harm, the Court finds that the plaintiff lacks standing to pursue injunctive relief.

Polygroup's last standing argument is that the plaintiff lacks standing to bring claims on behalf of non-Illinois residents under non-Illinois consumer protection statutes. (R. 40 at 13.) Like the plaintiff's allegations about the Polygroup products that she did not purchase, this issue too is best left to the class-certification stage. It is essentially a question of whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Deciding whether the plaintiff may pursue the claims on behalf of a putative class is therefore premature. *See In re Herbal*, No. 15 C 5070, 2017 WL 2215025, at *6–7 (reaching the same conclusion).

For these reasons, the court dismisses the plaintiff's request for injunctive relief but otherwise rejects Polygroup's request to dismiss based on lack of standing.

7

## II. FAILURE TO STATE A CLAIM

### A. Fraud Allegations (Counts II, III, & VII)

Polygroup argues that the FAC does not meet Rule 9(b)'s heightened pleading standard and that, as a result, the claims based on fraud must be dismissed: common law fraud (Count VII), ICFA (Count II), and IDTPA (Count III). (R. 40 at 14.) Averments of fraud must be "state[d] with particularity." Fed. R. Civ. P. 9(b). This "requires plaintiffs to plead with particularity the 'who, what, when, where, and how' of the fraud." *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth*, 99 F.4th 928, 944 (7th Cir. 2024). Polygroup makes four arguments for dismissing these claims, each of which the Court addresses in turn.

Under Illinois law, a fraud claim must allege "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement;" and resulting damage. *Doe v. Dilling*, 888 N.E.2d 24, 35–36 (Ill. 2008). ICFA and IDTPA claims require similar allegations. *See Capiccioni v. Brennan Naperville, Inc.*, 791 N.E.2d 553, 558 (Ill. App. Ct. 2003) (ICFA); *Miche Bag, LLC v. Be You, LLC*, No. 11 C 720, 2011 WL 4449683, at *6 (N.D. Ill. Sept. 26, 2011) (IDTPA). Any distinctions are discussed below to the extent they are relevant.

### 1. Misrepresentation or Omission

Polygroup argues that the FAC fails to identify a misrepresentation or omission because (1) it relies on non-actionable "generic advertising statements," and (2) there is no "special relationship" permitting a fraud-by-omission theory. (R. 40 at 15–16.)

8

The cases Polygroup cites do not mention "generic advertising statements" as a category of non-actionable statements. Rather, they ask whether the alleged misrepresentation is "puffery." *See, e.g., Pickens v. Mercedes-Benz USA, LLC*, No. 20 C 3470, 2021 WL 5050289, at *4 (N.D. Ill. Nov. 1, 2021) (collecting cases). Puffery consists of "exaggerations reasonably expected of a seller as to the degree of quality of his or her product, the truth or falsity of which cannot be precisely determined." *Barabara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 926 (Ill. 2007). It "in the usual sense signifies meaningless superlatives that no reasonable person would take seriously, and so it is not actionable as fraud." *Id.* (quoting *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999)). Examples include the following phrases: "quality replacement part," "high-quality," "expert workmanship," "custom quality," "perfect," "magnificent," "comfortable," and "picture perfect." *Id.* "Puffing involves expressing opinions, not asserting something as fact." *Id.* at 926–27 ("Our precedent disallowing such actions premised on puffery is based on the sound reasoning that no reasonable consumer would rely on such an implicit assertion as the sole basis for making a purchase.").

The plaintiff identifies several parts of the FAC that include "affirmative misrepresentations and omissions regarding the Pools' safety and suitability for their intended purpose." (R. 46 at 16 (citing FAC ¶¶ 5–13, 34–38, 49–60, 80–108, 139, 150–52).) Much of these paragraphs do not allege any specific statement, let alone misrepresentation, by Polygroup. For example, paragraph 150, the plaintiff's attempt to identify the "WHAT" of the fraud for purposes of Rule 9(b), states merely that

9

"Polygroup's employees and representatives made affirmative misrepresentations as a part of Polygroup's marketing of the Pools." Of the statements the FAC does allege, none of them specifically concern the allegedly dangerous feature. Instead, the FAC relies on statements about the product as a whole, such as that it is "for any space, lifestyle or family size." (FAC ¶ 53.)

From these, the plaintiff argues that Polygroup "intended to convey" the message that "its Pools are safe and suitable for their intended purpose." (R. 46 at 17.) This is not an actionable representation of a verifiable fact. Other courts have found statements that a product is "safe," without more, are statements of opinion, not fact.[3] Whether a product is "safe" in the abstract is not a black or white determination. Safety is a matter of degree; for example, manufacturers have a duty under Illinois law "to design *reasonably safe* products," not simply *safe* products.

---

[3] *See, e.g.*, *Warren v. Boehringer Ingleheim Pharms. Inc.*, No. 16 C 1326, 2017 WL 3970666, at *8 (S.D. Ind. Sept. 8, 2017 ("Even if the Manufacturers' materials . . . expressly state that [the product] was 'safe' . . . that does not rise from a 'general opinion' to a 'representation, statement of alleged fact or promise' . . . ."); *Toshner v. Goodman*, No. 18 C 2005, 2024 WL 473616, at *6 (E.D. Wis. Feb. 7, 2024) (finding statements that products were "super safe" were "qualitative statements, opinions, or sales puffery"); *Bietsch v. Sergeant's Pet Care Prods., Inc.*, No. 15 C 5432, 2016 WL 1011512, at *4 (N.D. Ill. Mar. 15, 2016) (permitting claim where representations contained "reference to . . . recognized standards suggest[ing] . . . claims are tested and verifiable"); *O'Connor v. Ford Motor Co.*, 567 F. Supp. 3d 915, 963 (N.D. Ill. 2021) ("car owner's vague allegations that manufacturer represented that the car's headrests were safe . . . were insufficient" (citing *Costa v. FCA US LLC*, 542 F. Supp. 3d 83 (D. Mass. 2021)); *Brown v. Abbott Lab'ys, Inc.*, No. 10 C 6674, 2011 WL 4496154, at *6 (N.D. Ill. Sept. 27, 2011) ("The plaintiffs did not allege that Ford made any specific representations concerning the risk of rollover, and the court dismissed as puffery Ford's statements that the vehicle was 'very safe' and 'America's Most Trustworthy.'" (citing *In re Ford Motor Co. E-350 Van Prods. Liability Litig.*, No. 03 C 4558, 2008 WL 4126264 (D.N.J. Sept. 2, 2008)); *Milford v. Roehl Transp.*, No. 22 C 879, 2023 WL 2503495, at *7 (E.D. Wis. Mar. 14, 2023) (finding statements that a training will provide "valuable experience, training and information concerning the competent, safe, and efficient operation of tractor/trailers" to be "the sorts of opinions that are not covered by the DTPA").

*Salerno v. Innovative Surveillance Tech., Inc.*, 932 N.E.2d 101, 111 (Ill. App. Ct. 2010) (emphasis added). Apart from general "convey[ances]" that its product was safe, (R. 46 at 17), the plaintiff identifies nothing that amounts to a statement of a verifiable fact.

The argument "that Polygroup's Recall itself is an affirmative misrepresentation," (*id.* at 18), is similarly unpersuasive. The plaintiff equates the repair kit and instructions with the "false representation" that "the repair kit is an adequate remedy" when it actually "introduces additional hazards." (*Id.* (citing FAC ¶¶ 80–108).) The plaintiff's theory infers vague assertions about the product's safety from the simple fact that Polygroup issued a recall and a repair kit. This does not amount to a statement of a verifiable fact.

The plaintiff also relies on the theory that Polygroup is liable for "omissions regarding the Pools' safety and suitability for their intended purpose." (*Id.* at 16.) Under this theory, "a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Moore v. Pendavinji*, 260 N.E.3d 111, 120 (Ill. App. Ct. 2024) (quoting *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996)). Polygroup argues that the FAC does not "show the special relationship required to prove fraud by omission." (R. 40 at 16.) The plaintiff does not respond to this argument, and it is therefore waived. *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014). However, the plaintiff's ICFA claim is treated differently in this respect. The ICFA applies explicitly to the "suppression or omission of any material fact," 815 ILCS 505/2, and it "does not

require a plaintiff to plead the existence of a common law duty." *White v. DaimlerChrysler Corp.*, 856 N.E.2d 542, 548 (Ill. App. Ct. 2006). The FAC pleads that Polygroup "omitted, concealed and failed to disclose to consumers that the Pools pose serious safety risks to children" due to the defect, (FAC ¶ 185), and this is sufficient to allege an omission to support an ICFA claim. But because this applies to the ICFA claim only, Counts III and VII are dismissed. The Court addresses Polygroup's remaining arguments as they relate to the ICFA claim.

### 2.     Reliance

Polygroup next argues that the plaintiff does not sufficiently plead that she relied on any allegedly deceptive conduct. Under the ICFA, "a complaining party is not required to establish reliance, either actual or reasonable, to state a claim." *Cozzi Iron & Metal, Inc. v. U.S. Off. Equip., Inc.*, 250 F.3d 570, 576 (7th Cir. 2001). Even so, "plaintiffs must prove that each and every consumer who seeks redress actually saw and was deceived by the statements [or omissions] in question." *Barabara's Sales, Inc.*, 879 N.E.2d at 927. According to Polygroup, the plaintiff never alleges in the FAC that "she saw any of the statements made by Polygroup on the Funsicle website" or "that she reviewed any owner's manual for the Pool she purchased," instead citing the manual for a different pool. (R. 40 at 17.) The FAC states that the plaintiff "used the Pool as instructed" and "relied on Polygroup's representations that the Pool was safe." (FAC ¶¶ 31, 37.) These allegations are close to the line, but construing all facts in the plaintiff's favor, they provide enough for the Court to reasonably infer that the plaintiff saw the owner's manual for her pool.

### 3. Knowledge of the Alleged Defect

Polygroup also moves to dismiss because the plaintiff "fails to allege facts to plausibly support that Polygroup was aware of a defect when she purchased her Pool." (R. 40 at 18.) Rule 9(b)'s heightened pleading standard "does not extend to states of mind which may be pleaded generally . . . ; nevertheless, the complaint must still afford a basis for believing that plaintiffs could prove scienter." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007) (citation modified). The plaintiff alleges that she purchased Polygroup's product in June 2023. (FAC ¶ 30.) She further alleges that at least twelve drowning or near-drowning instances involving the defect occurred between 2007 and 2022. (*Id.* ¶¶ 63–65.) The Court can reasonably infer from this allegation that Polygroup would have learned of at least one of these instances. At the motion to dismiss stage, this is enough to allege knowledge of the alleged defect.

### 4. Intent

Last is the ICFA's intent requirement. *See* 815 ILCS 505/2 ("with intent that others rely upon the concealment"). Intent too is a state of mind which may be pleaded generally, albeit plausibly. *Tricontinental Indus., Ltd.*, 475 F.3d at 833. Polygroup argues the plaintiff "fails to allege any intent to deceive or conceal information," and in fact alleges that "Polygroup does disclose that pools present a risk of drowning if used improperly or unsupervised." (R. 40 at 19 (emphasis omitted).) But the ICFA requires "intent that others rely upon the concealment," § 505/2, not intent to deceive or conceal. "[A] claim for 'deceptive' business practices under the Consumer Fraud Act does not require proof of intent to deceive. It is enough to allege that the

13

defendant committed a deceptive or unfair act and intended that the plaintiff rely on that act." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. 2012) (citation modified). The plaintiff has done so. Accordingly, Polygroup's motion to dismiss is denied as to Count II.

### B. IDTPA Claim (Count III)

Polygroup makes the additional argument for dismissing the IDTPA claim that the plaintiff cannot maintain this claim absent the prospect of "forward-looking injunctive relief." (R. 40 at 20.) The Court notes only that it dismisses the plaintiff's claim for injunctive relief and her IDTPA claim for the reasons stated above.

### C. Warranty Claims (Counts IV & V)

#### 1. Pre-Suit Notice

Polyroup's first argument for dismissing the warranty claims is that the FAC fails to allege compliance with the pre-suit notice requirement. (*See* R. 40 at 20–21.) For breach of warranty claims under Illinois law, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." 810 ILCS 5/2-607. Generally, a buyer "must directly notify the seller of the troublesome nature of the transaction or be barred from recovering for a breach of warranty." *Connick*, 675 N.E.2d at 589. There are two exceptions: "a buyer can fulfill the notice requirement *without* giving direct notice to the seller where 'the seller has actual knowledge of the defect of the particular product,'" or "a consumer buyer who has suffered personal injuries from a defective product can satisfy the notice requirement simply by filing a complaint alleging a

14

breach of warranty against the seller." *Andrews v. Carbon on 26th, LLC*, 272 N.E.3d 439, 445 (Ill. 2025) (quoted source omitted). Only the first exception is relevant here.

The "actual knowledge" exception applies where the seller was "aware of the problems with the *specific* [product] purchased by the plaintiffs." *Id.* This is because "it is essential that the seller be notified that *this particular transaction* is troublesome and must be watched." *Id.* (citation modified). Thus, the question is whether Polygroup was aware of the defect with the plaintiff's pool prior to her filing suit. According to the FAC, the plaintiff registered for a repair kit after she learned of the recall in July 2025. (FAC ¶¶ 32–34.) This is sufficient to show that Polygroup was aware of the issues with the plaintiff's particular product prior to her filing suit in August 2025.

**2.       Express Warranty (Count IV)**

For the reason articulated above that the plaintiff fails to identify any affirmative misrepresentation, her express warranty claim is dismissed. A breach of express warranty claim requires an "affirmation of fact or promise made by the seller to the buyer which relates to the goods." 810 ILCS 5/2-313(a). Apart from the generalized representations that its product was "safe" (discussed above), the plaintiff points to the "written warranty . . . that the Pools were 'free from manufacturing defects.'" (R. 46 at 22 (quoting FAC ¶ 234).) But the alleged defect is a design defect, not a manufacturing defect. (*See* FAC ¶ 4 ("This action arises from the dangerous design and prolonged concealment of a known defect . . . ."); *see also Blue v. Env't Eng'g, Inc.*, 828 N.E.2d 1128, 1137 (Ill. 2005) ("A manufacturing  defect differs from a design defect in that the former occurs in only a small percentage of units in a

15

product line, whereas the latter arises when the specific unit conforms to the intended design but the intended design itself, or its sale without adequate instructions or warnings, renders the product not reasonably safe."). There is no "affirmation of fact or promise" that Polygroup allegedly breached, § 5/2-313(a), so Count IV is dismissed.

### 3. Implied Warranty (Count V)

Polygroup moves to dismiss the plaintiff's implied warranty claim based on lack of privity. In Illinois, an implied warranty "gives a buyer of goods a potential cause of action only against his immediate seller," meaning "the entity from which he purchased" the product. *Jensen v. Bayer AG*, 862 N.E.2d 1091, 1099 (Ill. App. Ct. 2007) (quoting *Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 807 N.E.2d 1165 (Ill. App. Ct. 2004)). The plaintiff alleges that she purchased Polygroup's product from Amazon.com, not Polygroup. (FAC ¶ 30.) However, she relies on the "third-party beneficiary exception to privity, which applies 'where the manufacturer knew the identity, purpose and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements.'" *Elward v. Electrolux Home Prods., Inc.*, 214 F. Supp. 3d 701, 705 (N.D. Ill. 2016) (quoting *Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403, 412 (Ill. App. Ct. 1980)); (R. 46 at 24). The plaintiff argues this exception applies because "Polygroup knew consumers, such as Plaintiff, would be the ultimate user of the Pools . . . [and] also knew of customers' requirement that their Pools be safe and durable." (R. 46 at 24.) However, "the third-party-beneficiary exception does not contemplate such a mundane relationship between manufacturer and end consumer." *Gurrola v. Ford Motor Co.*, 774 F. Supp. 3d 959, 978 (N.D. Ill. 2025). Rather, the "exception is about the

16

requirements of a particular customer, not the requirements of consumers generally." *Id.* The FAC, a putative class action, alleges a relationship between Polygroup and consumers generally, not the plaintiff specifically. The third-party beneficiary exception therefore does not apply, and Count V is dismissed.

### D. Unjust Enrichment (Count VI)

Next is the plaintiff's unjust enrichment claim. "Unjust enrichment is not an independent cause of action" but a "condition that may be brought about by unlawful or improper conduct as defined by law." *Gagnon v. Schickel*, 983 N.E.2d 1044, 1052 (Ill. App. Ct. 2012) (quoting *Alliance Acceptance Co. v. Yale Ins. Agency, Inc.*, 648 N.E.2d 971 (Ill. App. Ct. 1995)). "[A] plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Id.* (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)). "[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011); *see also Smith v. Loyola Univ. Med. Ctr.*, No. 23 C 15828, 2024 WL 3338941, at *9 (N.D. Ill. July 9, 2024) (declining to dismiss an unjust enrichment claim tied to a live ICFA claim).

Because the Court denies Polygroup's motion to dismiss as to the ICFA claim, there is a related claim to which the plaintiff's unjust enrichment claim is tied. Because the ICFA claim stands, so too does the unjust enrichment claim. Polygroup's

17

citation to *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, does not change this outcome. (*See* R. 40 at 23–24.) Polygroup specifically cites the Seventh Circuit's holding that "the mere violation of a consumer's legal right to know about a product's risks, without anything more, cannot support a claim that the manufacturer unjustly retained the revenue from the product's sale to the consumer's detriment." (*Id.* (quoting *Cleary*, 656 F.3d at 520).) The "anything more" the Seventh Circuit was referring to includes "alleg[ations] [of] personal damages, deception, or reliance." *Cleary*, 656 F.3d at 519. The plaintiffs in *Cleary* expressly disclaimed that they were alleging such circumstances. *Id.* As the Seventh Circuit explained, "if the revenue was obtained by deceiving the plaintiffs, or even if the revenue was obtained by an inadvertent misrepresentation relied upon by the plaintiffs, the defendants' retention of the revenue might conceivably be to the plaintiffs' detriment." *Id.* Those are the allegations in this case, so the unjust enrichment claim may proceed. Polygroup's motion is therefore denied as to Count VI.

### III.    PRUDENTIAL MOOTNESS

Finally, Polygroup moves to dismiss based on "prudential mootness" because "a no-cost, CPSC-administered recall issued to resolve an alleged defect . . . eliminate[d] [the] plaintiff's injury based on purported overpayment." (R. 40 at 24.) As Polygroup recognizes, the Seventh Circuit has not adopted a "prudential mootness" doctrine beyond observing that, "at least in close cases, mootness can be in part a prudential doctrine." *EEOC v. Flambeau, Inc.*, 846 F.3d 941, 950 (7th Cir. 2017); (R. 40 at 24 n.11). But that was in a case where neither damages nor injunctive relief were on the table, and the parties therefore had no "serious stake in [the case's

18

outcome." *Flambeau, Inc.*, 846 F.3d at 946–51. Here, damages are on the table, and the FAC plausibly alleges that Polygroup's attempted remedy was ineffective and caused additional hazards. (*See* FAC ¶¶ 90 (alleging the repairs "*decrease*[] the strength of the Pools' outer structure").) There is a live controversy, so the Court will not dismiss based on mootness, whether prudential or constitutional.

**CONCLUSION**

The defendants' motion to dismiss [39] is granted in part and denied in part. The motion is granted as to Counts III, IV, V, VII, and the claim for injunctive relief. The motion is denied in all other respects. Any amended complaint is due on or before April 30, 2026. The defendants shall respond to the operative complaint on or before May 21, 2026.

Date: April 16, 2026

_____
JEREMY C. DANIEL
United States District Judge